# IN THE UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

No. 26-777

## JOAQUIN MARIO VALENCIA-TRUJILLO,

Plaintiff-Appellant,

v.

## UNITED STATES OF AMERICA,

Defendant-Appellee

On Appeal from the United States District Court

for the Eastern District of New York

Case No. 1:25-mc-03439-RER

Hon. Ramon E. Reyes, Jr., District Judge

-

-

# PLAINTIFF-APPELLANT'S OPENING BRIEF

Joaquin Mario Valencia-Trujillo, pro se

Reg No 02450-748

FCI Oakdale II

P.O. Box 5010

Oakdale, Louisiana 71463

# TABLE OF CONTENTS

Jurisdictional Statement ............................................................ 8

Issues Presented ................................................................... 10

Statement of the Case ............................................................. 12

Summary of Argument ............................................................. 20

Argument I: The district court erred by failing to conduct the required First
Amendment and common-law access analysis for the §
5K1.1 cooperation-related sentencing documents .................. 22

Argument II: The district court abused its discretion by failing to make
specific, document-by-document findings adequate for appellate review ...... 30

Argument III: The district court abused its discretion by failing to consider
narrower alternatives to complete sealing ............................. 37

Argument IV: The district court erred in denying Appellant's Rule 59(e)
motion where the court's own order first revealed the § 5K1.1 character of
the sealed documents ............................................................. 45

Argument V: The district court undervalued Appellant's particularized need because the May 1, 2006 New York seizure was central to the Florida prosecution theory ......................... 53

Argument VI: At minimum, the district court should have considered limited in camera findings or court-prepared summaries of the PSR materials relevant to the May 1, 2006 seizure ......................... 61

Conclusion ......................... 68

Certificate of Compliance ......................... 70

Certificate of Service ......................... 71

# TABLE OF AUTHORITIES

## CASES

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) ... 55

*Brady v. Maryland*, 373 U.S. 83 (1963) ............... 21, 42, 56, 58, 65

*DiBlasio v. Drake Beam Reynolds Inc.*, 123 F.3d 818 (2d Cir. 1997) ......... 53

*Giglio v. United States*, 405 U.S. 150 (1972) ..................... 42, 65

*In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987) ................ 27, 30

*Kale v. NYU Medical Center*, No. 99 Civ. 13455, 2008 WL 190765 (S.D.N.Y. Jan. 15, 2008) ........................................ 47

*Legeros v. Pyramid Cos. of Onondaga*, 434 F.3d 110, 2(4) Cir. 2006) ........ 20, 22, 23, 24, 25, 26, 27, 29, 30, 31, 33, 34, 37, 38, 41, 48, 50, 53, 56, n8

Napue v. Illinois, 360 U.S. 264 (1959) . . . . . . . . . . . . . . 21, 42, 56, 58, 65

Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978) . . . . . . 20, 38, 50, 58

Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (Press-Enterprise I)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 27, 36, 37, 38, 48

Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (Press-Enterprise II)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 27, 36, 37, 38, 48

Strandlof v. CNE Group, Inc., 70 F.3d 255 (2d Cir. 2013) . . . . . . 44, 56, 48, 51

United States v. Amodeo, 44 F.3d 141 (2d Cir. 1995) (Amodeo I)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Amodeo, 71 F.3d 1044 (2d Cir. 1995) (Amodeo II)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 33, 34, 55, 59

United States v. Glamour Industries Inc., 711 F.2d 1165 (2d Cir. 1983)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 53, 59, 61, 62, 64, 65, 67, 69

United States v. Doe Co., 763 F.3d 335 (2d Cir. 2014) . . ..      38, 33

United States v. Greenwood, 145 F.4th 248 (2d Cir. 2025) . .    .. ........8, 29

Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245 (2d Cir. 1992) .........    .. .............      56

## RULES AND STATUTES

Fed. R. App. P. 4(a)(5)     . ...............    .....8, 18

Fed. R. Civ. P. 5(b) ...... .    ............    ................    passim

28 U.S.C. § 1291      .   . .................... .....8

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The Second Circuit generally has jurisdiction over appeals from denials of motions to intervene in a sealed. *United States v. Greenwood*, 145 F.4th 248, 253 (2d Cir. 2025).

On February 25, 2026, the district court entered its Memorandum and Order granting in part and denying in part Appellant's motion to unseal. SPA-2. Appellant filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e). A-224. While that motion remained pending, Appellant filed his original Notice of Appeal on March 27, 2026, identifying the February 25, 2026 order, the February 18, 2026 docket order referenced in the original Notice of Appeal, and the then-pending Rule 59(e) motion. A-283

On May 11, 2026, the district court denied Rule 59(e) relief SPA-11. On May 23, 2026, the Second Circuit docket reflected an order lifting the stay entered under Federal Rule of Appellate Procedure 4(a)(4) in Appeal No. 26-777. A certified order was issued on June 5, 2026 and was later docketed in EDNY as A-292, stating that the stay of the appeal was lifted and identifying USCA No. 26-777.

Because the United States is a party, the civil appeal deadline is 60 days from entry of the order being appealed. Appellant filed an Amended Notice of Appeal, docketed as A-287 on June 18, 2026 and entered June 19, 2026, expressly appealing the May 11, 2026 Memorandum and Order denying Rule 59(e) relief, SPA-11, together with the February 25, 2026 Memorandum and Order, SPA-1. On June 19, 2026, the district court transmitted the electronic index to the second on appeal to the Second Circuit reflecting the Amended Notice of Appeal. This appeal, Second Circuit No. 26-777, therefore encompasses both the February 25, 2026 Memorandum and Order and the May 11, 2026 Rule 59(e) denial.

## ISSUES PRESENTED

1. Whether the district court erred by keeping § 5K1.1 cooperation-related judicial documents sealed without applying the required First Amendment and common-law access framework.

2. Whether the district court abused its discretion by failing to make specific, document-by-document findings for I CT Nos. 136, 147, 352, 195, and 196.

3. Whether the district court abused its discretion by failing to consider narrower alternatives, including redactions, summaries, in camera findings, or sealed appellate review.

4. Whether the district court erred in denying Rule 59(e) reconsideration where its own order first revealed that several sealed entries were § 5K1.1 cooperation-related documents.

5. Whether the district court undervalued Appellant's particularized need, given that the May 1, 2000 New York seizure was allegedly used as a charge predicate in the Florida prosecution.

6. Whether at minimum, the district court should have conducted limited in camera findings or prepared summaries of the relevant USR cooperation parties.

## STATEMENT OF THE CASE

### A. Nature of the Proceeding

This appeal arises from an Eastern District of New York miscellaneous proceeding in which Joaquin Mesa Valencia-Trujillo, proceeding pro se, moved to intervene and unseal certain judicial records in United States v. Dorado, et al., No. 00-cr-04535, a closed criminal matter in the Eastern District of New York involving the May 1, 2004 seizure of approximately 1,115 kilograms of cocaine in New York.

The records sought include sealed cooperation and sentencing materials related to four Dorado defendants—Lucatero Martinez, Carlos Echeverry, Carlos Ruiz, and Raymond Barron Gutierrez, as well as limited portions of their presentence reports concerning offense conduct and cooperation. Appellant sought these materials because the May 1, 2004 New York seizure was used by the prosecution in his separate Middle District of Florida criminal case, and the sealed Dorado materials may show whether the four New York defendants implicated him as a source or co-conspirator, or instead identified others.

This appeal does not ask this Court to decide the merits of Appellant's Florida conviction. The issue is narrower: whether the EDNY district court properly applied the First Amendment and common-law right-of-access framework before keeping judicial cooperation and sentencing documents sealed, and whether the court should have considered redactions, summaries, in camera findings, or other narrower alternatives to wholesale sealing.

## B. The May 1, 2000 New York Seizure and the Dorado Defendants

The underlying EDNY Dorado case involved the May 1, 2000 seizure of approximately 1,118 kilograms of cocaine in New York and the arrest and prosecution of individuals connected to that seizure. The relevant Dorado defendants for this appeal are Giovanni Martinez, Carlos Echeverry, Carlos Ruiz, and Raymond Ramon Gutierrez.

Appellant contends that these four defendants were directly connected to the May 1, 2000 seizure and later cooperated with the government. He further contends that their statements, cooperation materials, § 5K1.1 filings, and PSR offense-conduct sections may show that they did not identify him as a source, owner, or co-conspirator in the New York seizure.

that fact matters because Appellant maintains that the May 1, 2080 New York seizure was not a collateral event in his Florida case. Rather, he contends it was used by the Florida prosecution as a major evidentiary component of the government's theory, including with respect to conspiracy counts and continuing criminal enterprise predicates.

## C. Appellant's Motion to Intervene and Unseal

On April 7, 2025, Appellant filed a pro se motion to intervene and unseal in EDNY Case No. 1-25-mc-01479. He requested access to sealed judicial documents and limited PSR cooperation information related to the four Dorado defendants.

His request was not a generalized request to inspect old criminal records. It was tied to a specific date, a specific seizure, specific defendants, and a specific post-conviction theory: whether the original EDNY cooperation materials and related records show that the persons arrested in connection with the May 1, 2080 New York seizure did not implicate him, or identified others instead.

The government opposed the motion. It argued, among other things, that the materials implicated privacy and cooperation concerns, and that Appellant had not shown a sufficient need for PSR disclosure.

Appellant replied that the cooperation of the relevant defendants was already known, that the records were judicial documents subject to a presumption of access, and that any legitimate privacy or safety concerns could be addressed through redactions, summaries, in camera findings, court-prepared summaries, or other tailored remedies.

**B. The District Court's February 25, 2026 Memorandum and Order**

On February 25, 2026, the district court granted the motion in part and denied it in part. SPA-1.

The court identified the disputed sealed Dorado documents as follows:

1. ECF No. 136, a letter requesting postponement of sentencing.

2. ECF No. 147, a letter response to a §K1.1 letter.

3. ECF No. 152, a §K1.1 sentencing letter.

4. ECF No. 195, a § 5K1.1 sentencing letter.

5. ECF No. 196, a § 5K1.1 sentencing letter,

6. ECF No. 261, an application by Appellant's trial attorney to unseal plea transcripts.

7. ECF No. 262, a letter opposing ECF No. 261.

8. ECF No. 263, an administrative duplicate filed by the court; and

9. ECF No. 264, a court-endorsed copy of ECF No. 262 denying the application to unseal

The court allowed disclosure of ECF Nos. 261 through 264. But the court kept ECF Nos. 136, 147, 152, 195, and 196 sealed and denied access to the requested PSR materials

The appeal challenges the portions of the order keeping ECF Nos. 136, 147, 152, 195, and 196 sealed and denying the limited PSR request. The core error is that the district court identified several documents as § 5K1.1 cooperation-related sentencing documents but did not conduct the required First Amendment and common-law access analysis with specific document-by-document findings and did not adequately consider narrower alternatives to total sealing

## F. The Rule 59(e) Motion

Appellant filed a Rule 59(e) motion to alter or amend the order. A-229. The motion argued that the district court's own February 25, 2026 order newly identified several sealed docket entries as § 5K1.1 or § 5K1.1-related cooperation materials. Before that order, the public docket did not reveal the substantive character of those sealed entries.

Appellant argued that this mattered because § 5K1.1 cooperation-related sentencing materials are judicial documents carrying at least a significant presumption of access under First Amendment and common-law principles. He also argued that the court undervalued his particularized need by treating the May 1, 2060 seizure as if it were only a tangential or isolated event, despite his contention that the Florida prosecution used that seizure as a central part of its trial theory.

The government opposed reconsideration, arguing that Appellant had not identified new evidence or overlooked law sufficient to alter the order. A-284

Appellant replied that the new information came from the court's own order: the public identification of ECF Nos. 147, 152, 198, and 199 as § 3K1.1 or § 3K1.1-related materials. A-386.

On May 13, 2026, the district court denied Rule 59(e) relief. SPA-13. Notably, the court acknowledged in the Rule 59(e) order that its original February 25, 2026 order "did not explicitly explain that the First Amendment right of access attached to the 3K1.1 memoranda." SPA-14.

## F. Notice of Appeal and Amended Notice of Appeal

Appellant filed his original Notice of Appeal on March 27, 2026, while the Rule 59(e) motion remained pending before the district court. A-283. The Notice of Appeal identified the February 25, 2026 Memorandum and Order, the February 18, 2026 docket order referenced in the Notice of Appeal, and the then-pending Rule 59(e) motion.

On May 21, 2026, the Second Circuit docket reflected an order lifting the stay entered under Federal Rule of Appellate Procedure 4(a)(4) in Appeal No. 26-777. A certified order was issued on June 5, 2026 and was later docketed in EDNY as

A-202, stating that the stay of the appeal was lifted and identifying USCA No. 26-777. After the district court denied Rule 59(e) on May 11, 2026, Appellant filed an Amended Notice of Appeal, docketed as A-203 on June 18, 2026 and entered June 19, 2026, expressly appealing the May 13, 2026 Rule 59(e) denial, SPA-11, together with the February 25, 2026 Memorandum and Order, SPA-1. The district court transmitted the electronic index to the record on appeal to the Second Circuit on June 19, 2026. The appeal proceeds from both the February 25, 2026 Memorandum and Order and the May 13, 2026 Rule 59(e) denial.

## G. Appellant's Diligent Pursuit of Related Records

Appellant has a concrete post-conviction need for the sealed Dorado materials and has pursued related records diligently through available legal channels. That diligence and the particularized need it reflects, is addressed in Argument V below.

## SUMMARY OF ARGUMENT

The district court recognized that several sealed filings were § 5K1.1 or cooperation-related sentencing documents. These documents are judicial documents carrying at least a significant presumption of access. Once the court identified them as such, it was required to apply the First Amendment and common-law access framework set out in Lugosch, Amodeo, Press-Enterprise, and Nixon.

The court did not make the specific, document-by-document findings required for continued sealing. It treated multiple sealed entries collectively, despite the fact that each document may carry a different access presumption, contain different information, and implicate different countervailing interests.

The court also failed to adequately consider narrower alternatives to wholesale sealing, including redacted disclosure, court-prepared summaries, in camera findings, sealed appellate review, or disclosure of non-sensitive content only.

The Rule 5K1 denial compounded the error because the court's own order first revealed that several sealed entries were § 5K1.1 cooperation-related documents.

Appellant could not have specifically argued for access to SDNY materials before the court publicly identified them as such.

Finally, Appellant showed particularized need. The May 1, 2009 New York seizure was allegedly used by the Florida prosecution as a major part of the trial theory. If the Dorado cooperation materials show that the four New York defendants did not implicate him, or identified others, those materials may materially support his post-conviction Brady/Napue theory. At minimum, that showing required the SDNY court to consider redaction, summaries, or limited in camera findings.

## ARGUMENT I

## THE DISTRICT COURT ERRED BY FAILING TO CONDUCT THE REQUIRED FIRST AMENDMENT AND COMMON-LAW ACCESS ANALYSIS FOR THE § 5K1.1 COOPERATION-RELATED SENTENCING DOCUMENTS.

### A. Standard of Review

This Court reviews de novo whether the district court applied the proper legal standard governing public access to judicial documents. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). The district court's ultimate decision to seal or unseal documents is reviewed for abuse of discretion, but a district court abuses its discretion when it rests its decision on an error of law, fails to make the findings required by governing precedent, or does not provide a record sufficient for appellate review.

## B. The Sealed § 5K1.1 Cooperation Materials Are Judicial Documents Carrying a Significant Presumption of Access.

The district court's February 23, 2026 Memorandum and Order identified several sealed filings in United States v. Dorado, et al., No. [illegible], as § 5K1.1 or § 5K1.1-related sentencing materials. Specifically, the court identified ECF No. 117 as a response to a § 5K1.1 letter, and ECF Nos. 157, 195, and 199 as § 5K1.1 sentencing letters. ECF No. 155, identified as a letter requesting postponement of sentencing, is similarly a judicial document submitted in connection with the sentencing proceedings and subject to the same access analysis. These were not private agency notes or unrelated investigative memoranda. They were filed sentencing materials submitted to a federal court in connection with criminal sentencing proceedings.

Under Lugosch and Amodeo, the threshold question is whether the materials are judicial documents. A judicial document is one that is relevant to the performance of the judicial function and useful in the judicial process. United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) (Amodeo I). Sentencing submissions, including cooperation-related sentencing materials submitted for the court's consideration,

are judicial documents because they bear directly on the court's exercise of Article III sentencing authority.

Once a document is a judicial document, the court must determine the weight of the presumption of access and balance that presumption against specific countervailing interests. Lugosch, 435 F.3d at 119-20; United States v. Amodeo, 71 F.3d 1044, 1048-51 (2d Cir. 1995) (Amodeo II). Where the First Amendment right of access applies, sealing requires specific, on-the-record findings demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. Lugosch, 435 F.3d at 120.

Appellant does not argue that every § 5K1.1 document must automatically be unsealed. The argument is narrower: once the district court identified the sealed documents as § 5K1.1 or cooperation-related sentencing materials, it was required to conduct the proper First Amendment and common-law access analysis before continuing to seal them. It did not do so.

The § 5K1.1 and related cooperation sentencing materials are Appellant's strongest target for access precisely because of what they are. Unlike presentence reports, which are prepared for the sentencing court's internal use and are not treated as

public documents under the common law, see United States v. Channer Industries, Inc., 711 F.2d 1164, 1171 (2d Cir. 1983), the § 5K1.1 letters and related sentencing submissions were filed with, and used by, the sentencing court in the exercise of its Article III authority. They are judicial documents carrying a presumption of access under Lugosch and Amodeo. ECF Nos. 147, 152, 195, and 196 fall squarely within that category. Appellant seeks access to these materials and related sealed sentencing material, not out of curiosity, but to answer a specific factual question central to his post-conviction need—whether the Dorado cooperators implicated Appellant in the May 1, 2009 New York seizure, failed to implicate him, or identified others. For that reason, the § 5K1.1 cooperation materials—not the presentence reports addressed in Argument VI—are the real access issue in this appeal.

## C. The District Court Acknowledged That Its Original Order Did Not Explicitly Explain That the First Amendment Right of Access Attached.

The Rule 59(e) order contains a critical admission. In denying reconsideration, the district court stated:

> *The Court acknowledges that its Order did not explicitly express that the First Amendment right of access attached to the [XX] memorandum.* SPA 24, Memorandum and Order, Case No. 1:25-cv-01478-RER (E.D.N.Y. Mar. 11, 2026).

That acknowledgment matters. The February 28 order kept the § 3511 materials sealed without explicitly applying the First Amendment access framework. Although the Rule 59(e) order later attempted to clarify that the First Amendment right was qualified rather than absolute, the court still did not conduct the required document-by-document analysis, did not make specific findings for each sealed filing, and did not explain why redactions, summaries, in camera findings, or sealed appellate review would be inadequate alternatives to complete sealing.

A post-hoc attempt to supply the missing First Amendment analysis in a Rule 59(e) denial cannot substitute for the specific, on-the-record findings that the original sealing order was required to contain. Lugosch, 435 F.3d at 124. The proper remedy is vacatur and remand for that analysis to be conducted in the first instance.

D. Generalized Privacy Concerns Were Insufficient Without Specific Findings and Narrow Tailoring.

The district court relied on privacy interests of the Decade defendants and other persons. Privacy interests can be legitimate. But the existence of privacy interests does not end the analysis. Under Lugosch, Amodeo, and Press-Enterprise, the court still had to make specific findings showing why continued sealing was essential and narrowly tailored.

The court did not explain, document by document, what specific privacy interest justified continued sealing of each filing. Nor did the court explain why those interests could not be protected through redaction, court-prepared summaries, in camera findings, or sealed appellate review. Instead, the court treated the § 3500 materials collectively and concluded that privacy interests outweighed access. Blanket or collective sealing orders without particularized findings are presumptively improper under Second Circuit precedent. In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987).

That was insufficient. Each sealed filing may contain different information, implicate different privacy concerns, and be susceptible to different remedies. A collective sealing determination does not provide the findings required for

meaningful appellate review. United States v. Erie Cty., 763 F.3d 235, 239 (2d Cir. 2014).

## E. The Failure to Apply the Proper Access Framework Was Prejudicial Because Appellant Demonstrated a Concrete, Particularized Need.

Appellant's request was not a fishing expedition. The sealed Dorado materials concern the May 1, 2000 New York cocaine seizure, the same seizure Appellant contends was used against him in his separate Florida prosecution. The requested § 5K1.1 and cooperation-related materials may reveal whether the Dorado defendants implicated Appellant, failed to implicate him, or identified others in connection with that seizure. This particularized need did not eliminate the court's ability to protect legitimate privacy or safety interests. But it did require the court to conduct the proper access analysis and consider narrower alternatives before refusing disclosure entirely. The particularized need is developed fully in Argument V below.

## F. Vacatur and Remand Are Required.

This Court has jurisdiction over this appeal from the denial of a motion to unseal. United States v. Greenwood, 155 F.4th 248, 253 (2d Cir. 2025). Because the district court failed to explicitly apply the First Amendment right-of-access framework in its original order, failed to make specific document-by-document findings, and failed to consider less restrictive alternatives to continued sealing, the order should be vacated as to ECF Nos. 135, 117, 152, 195, and 149.

This Court should remand with instructions for the district court to conduct the required First Amendment and common-law analysis under Lugosch and Amodeo, make specific findings as to each sealed document, and consider redacted disclosure, court-prepared summaries or content findings, a sealed appendix for appellate review, or disclosure of non-sensitive information as alternatives to complete sealing.

## ARGUMENT II.

## THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO MAKE SPECIFIC, DOCUMENT-BY-DOCUMENT FINDINGS ADEQUATE FOR APPELLATE REVIEW.

### A. Standard of Review

This Court reviews a district court's sealing determination for abuse of discretion. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120, 124 (2d Cir. 2006). A district court abuses its discretion when it keeps judicial documents sealed without making specific, on-the-record findings sufficient to permit meaningful appellate review. Id. at 124; In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987).

### B. Second Circuit Law Requires Specific Findings for Each Sealed Judicial Document.

Once a court determines that a filing is a judicial document, it must assess the weight of the presumption of access and balance that presumption against specific countervailing interests. *Lugosch*, 435 F.3d at 119-20; *United States v. Amodeo*, 71 F.3d 1044, 1048-51 (2d Cir. 1995) (*Amodeo II*). That balancing must be specific enough to allow this Court to determine whether sealing was justified. Sealing orders must be sufficiently specific to permit meaningful appellate review. *United States v. Erie Cty.*, 763 F.3d 235, 239 (2d Cir. 2014).

The requirement of specificity is not a technical formality. It is the mechanism that permits appellate review. A reviewing court cannot determine whether sealing was narrowly tailored if the district court does not identify the particular interest supporting sealing, the document to which that interest applies, the weight of the access presumption for that document, and why lesser alternatives would not suffice.

Blanket or collective sealing determinations are especially problematic where the sealed materials are not identical. Different documents may have different degrees of relevance to the judicial function, different levels of sensitivity, different privacy implications, and different redaction possibilities. Second Circuit precedent

therefore requires specific, on-the-record findings rather than broad conclusions. In re New York Times Co. 828 F.2d 110, 116 (2d Cir. 1987).

### C. The District Court Treated Five Distinct Sealed Filings Collectively.

The sealed filings at issue were not one document. They were five separate docket entries:

1. ECF No. 139, a letter requesting postponement of sentencing;
2. ECF No. 147, a letter response to a § 5K1.1 letter;
3. ECF No. 152, a § 5K1.1 sentencing letter;
4. ECF No. 195, a § 5K1.1 sentencing letter; and
5. ECF No. 199, a § 5K1.1 sentencing letter.

These documents were not interchangeable. ECF No. 139 was identified as a sentencing postponement letter. ECF No. 147 was identified as a response to a § 5K1.1 letter. ECF Nos. 152, 195, and 199 were identified as § 5K1.1 sentencing letters. Each document therefore required its own access analysis.

The district court did not make individualized findings explaining why each of these five filings had to remain sealed in full. It did not identify what specific privacy or safety interest applied to each document. It did not explain whether each document contained information that could or could not be redacted. It did not distinguish between a sentencing scheduling letter, a response to a § 5K1.1 letter, and the § 5K1.1 letters themselves. Instead it treated the documents collectively and concluded that privacy interests outweighed access. That was insufficient under Lugosch and Amodeo II.

## D.   The Lack of Document-Specific Findings Prevents Meaningful Appellate Review.

The absence of document-specific findings prevents this Court from determining whether continued sealing was justified as to any individual filing. The absence of document-specific findings independently constitutes an abuse of discretion. DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997)

ECF No. 136 was described as a letter requesting postponement of sentencing. A scheduling-related sentencing letter may carry different access and privacy considerations than a substantive cooperation memorandum. If it contains only

scheduling matters the justification for complete sealing may be minimal. If it contains cooperation-related information the district court needed to say so and explain why redaction or partial disclosure was inadequate.

ECF No. 147 was described as a response to a § 5K1.1 letter, not the § 5K1.1 letter itself. That distinction matters. A response may contain different information, may have been submitted by a different party, may have played a different role in sentencing, and may implicate different privacy concerns than the government's cooperation letter. The district court did not analyze that distinction.

ECF Nos. 182, 193, and 199 were each identified as § 5K1.1 sentencing letters. But even those three documents required individualized review. They presumably concerned different defendants, different cooperators, different sentencing proceedings, and potentially different third-party information. The court could not properly seal all three through a single generalized privacy conclusion.

Without individualized findings this Court is left to guess which information justified sealing, which privacy interests applied to which document, whether those interests were compelling, and whether redactions or summaries could have protected them. That is precisely what Lugosch forbids.

### E. The Rule 59(e) Order Did Not Cure the Problem.

The Rule 59(e) order did not supply the missing document-by-document analysis. Although the court clarified that the First Amendment right of access attached to the § 3K2.1 memorandum, it again relied generally on privacy interests of the Nevada defendants and other persons. It did not make separate findings for ECF Nos. 135, 147, 182, 195, and 199. It did not explain what specific information in each document justified continued sealing. It did not address whether each document could be redacted, summarized, subject to in camera findings, or placed in a sealed appendix for appellate review.

The Rule 59(e) order therefore compounded rather than cured the problem. A later clarification that the First Amendment right applies does not satisfy the requirement of specific document-by-document findings.

### F. Vacatur and Remand Are Required.

.

:

Because the district court failed to make specific document-by-document findings for ECF Nos. 118, 147, 152, 198, and 199, this Court lacks a sufficient record to review whether continued sealing was justified as to any individual filing. This Court should vacate the sealing orders as to those five documents and remand with instructions for the district court to conduct a separate analysis for each sealed document, identify the specific countervailing interests that apply to each, determine the weight of the access presumption for each, and explain why continued sealing, or a lesser alternative including redactions, summaries, or consent findings, or a sealed appendix, is narrowly tailored and appropriate as to that specific document.

## ARGUMENT III

## THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER NARROWER ALTERNATIVES TO COMPLETE SEALING.

### A. Standard of Review

This Court reviews a district court's failure to consider alternatives to sealing for abuse of discretion. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006). A district court abuses its discretion when it imposes complete sealing without first considering and explaining why less restrictive alternatives would be inadequate. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 13-14 (1986); Lugosch, 435 F.3d at 120.

### B. Governing Law Requires Consideration of Narrower Alternatives Before Complete Sealing.

The First Amendment and common-law access frameworks do not permit a court to choose between full public disclosure and complete sealing without first considering the range of intermediate remedies available. Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984) (Press-Enterprise I); Press-Enterprise II, 478 U.S. at 13-14. Where a legitimate countervailing interest exists, the court must consider whether that interest can be protected through means less restrictive than wholesale sealing. Bagesch, 435 F.3d at 1179; Nixon v. Warner Communications, Inc., 435 U.S. 589, 602-03 (1978).

This requirement is not discretionary. It is a mandatory step in the sealing analysis. A court that skips directly from identifying a countervailing interest to imposing complete sealing, without explaining why narrower alternatives are inadequate, has not completed the analysis that Bagesch and Press-Enterprise require. The failure to consider alternatives is itself an independent ground for reversal, separate from the failure to make document-by-document findings addressed in Argument II.

## C. The District Court Did Not Consider Any Narrower Alternative to Complete Sealing.

The district court's February 25, 2026 Memorandum and Order and its May 11, 2026 Rule 59(e) denial both concluded that privacy interests of the 13 deceased defendants and other persons justified continued sealing of ECF Nos. 136, 147, 152, 193, and 199. Neither order addressed whether any alternative to complete sealing could adequately protect those interests.

The court did not consider or address:

- Redacted disclosure to Appellant, sealing any cooperation-identifying details while disclosing non-sensitive content such as offense conduct dates, seizure facts, and sentencing scheduling information.

- Court-prepared summaries detailing the relevant facts from each document without exposing protected cooperation specifics.

- In camera findings by the district court identifying what information could and could not be disclosed.

- A sealed appendix for appellate review, permitting this Court to evaluate the documents without public disclosure, or

- Partial disclosure of non-sensitive content only, separating scheduling or procedural information from substantive cooperation details.

The record contains no discussion of any of these alternatives. The court moved directly from identifying privacy interests to imposing complete sealing, without explaining why each available alternative was inadequate.

## D. The Binary Choice Between Full Disclosure and Complete Sealing Was Legally Inadequate.

The governing framework does not present a binary choice. Press-Enterprise I, 464 U.S. at 510; Hagestad, 438 F.3d at 1209. Courts have inherent authority to fashion intermediate remedies that honor both the presumption of access and legitimate countervailing interests. Nixon v. Warner Communications, 435 U.S. at 602-03.

The five documents at issue present obvious candidates for intermediate remedies. ECF No. 136, identified as a sentencing postponement letter, may contain scheduling or procedural information if it carries no cooperation sensitivity whatsoever. If so, complete sealing of that document is plainly overbroad. ECF No. 147, a response to a § 3K1.1 letter, may contain portions that identify a cooperating defendant by name alongside portions that contain only legal argument or procedural history. Redaction of identifying information while disclosing the remainder would address the privacy concern without wholesale suppression.

ECF Nos. 152, 195, and 109, the § 5K1.1 sentencing letters may similarly contain header information, offense conduct descriptions, or sentencing date references that carry no cooperation sensitivity, alongside substantive cooperation details that legitimately warrant protection. The court could have reviewed each document, identified the sensitive portions, redacted those portions, and disclosed the remainder. It did not. The failure to engage in that analysis, even summarily, was an abuse of discretion.

Even if the § 5K1.1 and related cooperation materials cannot be disclosed in full, redaction does not defeat Appellant's need. Appellant does not seek sensitive cooperation details for their own sake. He seeks the information content necessary to determine whether the Dorado cooperators identified Joaquin Mario Valencia-Trujillo, failed to identify him, or identified others in connection with the May 1, 2030 seizure. The district court could redact names, addresses, safety-sensitive details, and unrelated cooperation specifics while still disclosing or summarizing whether Appellant was named, not named, or whether others were identified. That is precisely why complete sealing was overbroad and why the court was required to consider redacted disclosure, court-prepared summaries, or in camera findings before denying access outright.

Appellant is not demanding an all-or-nothing remedy. If the district court believes full disclosure of the § 5K1.1 and related cooperation materials would reveal sensitive information, it can instead issue a court-prepared summary or sealed in camera findings. Such a summary would not need to disclose names, addresses, cooperation details, law enforcement techniques, or unrelated third-party information. It would need only to answer the narrow access question relevant to Appellant's particularized need: whether the Donado cooperators identified Appellant, failed to identify him, or identified others in connection with the May 1, 2009 New York cocaine seizure. This approach protects privacy and safety interests while still giving Appellant meaningful access to the information necessary to evaluate his Brady / Giglio / Napue and actual-innocence claims. It also avoids turning this appeal into a request for immediate full unsealing. The relief Appellant seeks remains vacatur and remand for the district court to conduct the proper analysis and reconsider this and other narrowly tailored alternatives.

**E.   Appellant's Pro Se Status Makes the Alternatives Analysis Especially Important.**

Appellant is proceeding pro se from federal custody. Counsel-only access, a remedy sometimes available in complex civil litigation, is not presently a viable

stake but said nothing about why redactions, summaries, in camera findings, or partial disclosure would be inadequate.

That silence confirms the error. If the court had a reasoned basis for concluding that no alternative short of complete sealing would protect the Dorado defendants' privacy interests, it was required to say so. It did not.

## C. Vacatur and Remand Are Required.

Because the district court failed to consider any narrower alternative to complete sealing, the sealing orders as to ECF Nos. 136, 147, 152, 195, and 198 must be vacated. On remand the district court should be instructed to consider and specifically address, for each sealed document, whether redacted disclosure to Appellant, court-prepared summaries, in camera findings with sealed results, a sealed appendix for appellate review, or partial disclosure of non-sensitive content could adequately protect any legitimate countervailing interest, and to explain on the record why any alternative short of sealing is inadequate.

# ARGUMENT IV

## THE DISTRICT COURT ERRED IN DENYING APPELLANT'S RULE 59(e) MOTION WHERE THE COURT'S OWN ORDER FIRST REVEALED THE § 5K1.1 CHARACTER OF THE SEALED DOCUMENTS.

### A. Standard of Review

This Court reviews the denial of a Rule 59(e) motion for abuse of discretion. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). A district court abuses its discretion when it applies an incorrect legal standard overlooks controlling authority, or reaches a conclusion that cannot be supported on the record before it. *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

### B. Governing Law on Rule 59(e) Reconsideration.

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) is appropriate where the movant demonstrates either that the court overlooked controlling decisions or facts that might materially have influenced its

earlier decision, or that reconsideration is necessary to correct a clear error or prevent manifest injustice. Mendez, 79 F.3d at 287; Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

Rule 59(e) also permits reconsideration where necessary to correct clear error or prevent manifest injustice. Here, the court's own order revealed the § 5K1.1 character of the sealed documents and exposed the need for the specific First Amendment and common-law access analyses that had not been made explicit in the original order.

## C. The Court's Own February 25, 2026 Order First Revealed the § 5K1.1 Character of the Sealed Documents.

Before the district court issued its February 25, 2026 Memorandum and Order, the public docket in United States v. Donato, et al., No. 00-cr-00535, reflected only that ECF Nos. 136, 147, 152, 195, and 199 were sealed. The docket did not describe the substantive character of those entries. A pro se litigant reviewing the public docket had no basis to know that these entries were § 5K1.1 sentencing letters or cooperation-related materials.

The February 25, 2026 order was the first document to publicly identify ECF Nos. 157, 182, 198, and 199 as § 5K1.1 or § 5K1.1-related cooperation sentencing materials. The district court itself acknowledged this in the Rule 59(e) denial, stating that the identification of the sealed documents as § 5K1.1 letters was "new to Valencia-Trujillo." SPA-13.

That acknowledgment is significant. The court conceded that Appellant did not have access to that characterization before the February 25 order. The court simultaneously kept those documents sealed without conducting the specific First Amendment access analysis that applies to § 5K1.1 sentencing materials. The Rule 59(e) motion asked the court to correct that error once the § 5K1.1 character of the documents was on the record.

## II.    The Court Applied the Wrong Legal Framework to Its Own Acknowledgment.

Despite acknowledging that the § 5K1.1 characterization was new to Appellant, the court denied reconsideration on the ground that this was not the type of new evidence contemplated by the relevant case law. SPA-13. The court relied on Kuhn v. NYU Medical Center, No. 08 Civ. 13455, 2008 WL 787765 (S.D.N.Y. Jan. 15,

2008), for the proposition that reconsideration requires newly discovered evidence of the type that was previously unavailable.

That framework misses the point of Appellant's argument. Appellant was not claiming that the documents themselves were newly discovered. He was arguing that the court's own order generated a new legal predicate, the public identification of those documents as § 5K1.1 materials, that made a specific First Amendment access argument possible for the first time.

Before the February 25 order, Appellant could argue only that sealed judicial documents carry a general presumption of access. After the February 25 order, Appellant could argue specifically that § 5K1.1 cooperation sentencing materials are judicial documents carrying at least a significant presumption of access under Lugosch and Amodeo II, and that the court had not applied the correct framework to that specific category of documents. That is a qualitatively different and stronger argument, one that the court's own order made possible.

Applying the newly discovered evidence standard to that situation was legal error. The correct question under Shrader was whether the court's own February 25 order contained controlling facts or legal determinations that it properly considered on

reconsideration, might materially have influenced the outcome. The answer was yes.

## E. The Court's Response Conflated Its Own Internal Knowledge With What Was Available to a Pro Se Litigant.

The court's Rule 59(e) denial stated that it had analyzed whether to unseal the documents knowing they were § 3509.1 letters, and therefore the § 3509.1 characterizations did not constitute new evidence warranting reconsideration SPA-13.

That reasoning conflates two distinct things: what the court knew internally when it issued the February 25 order, and what was available to Appellant as a pro se litigant reviewing a sealed public docket.

The court may have known the documents were § 3509.1 materials when it issued the February 25 order. But Appellant did not know that. The public docket did not disclose it. The government's filings did not disclose it. Nothing in the public record prior to February 25, 2026 told Appellant that those specific docket entries

were compelled sentencing materials subject to a heightened access presumption under Leigasch and Amodeo II.

A pro se litigant cannot be expected to make a specific legal argument about a specific category of sealed document before the court publicly identifies what that document is. The court's conflation of its own internal knowledge with Appellant's available information was a legal error that rendered the Rule 59(e) denial an abuse of discretion.

## E. The Rule 59(e) Denial Also Failed to Cure the Underlying Access Error.

Even setting aside the threshold reconsideration question, the Rule 59(e) denial did not cure the access-law error identified in Arguments I and II. Although the court clarified in the Rule 59(e) order that the First Amendment right of access attached to the § 5K1.1 memoranda, it still did not conduct a document-by-document First Amendment analysis for each of the five sealed entries, did not make specific findings explaining why private interests outweighed the presumption of access as to each individual document, and did not consider or address whether redacted disclosure, court-prepared summaries, in camera findings, or a sealed appendix would adequately protect legitimate interests while honoring the right of access.

A Rule 59(e) denial that attempts to retroactively supply a missing legal framework while still failing to conduct the required analysis does not serve the purposes of reconsideration. It compounds the original error by creating an incomplete record at two levels rather than one.

## G. Vacatur and Remand Are Required.

The district court abused its discretion by denying Appellant's Rule 59(e) motion where the court's own February 24, 2026 order first publicly identified the sealed documents as § 3K1.1 or cooperation-related materials, creating a specific legal predicate for the access argument Appellant raised on reconsideration, and where the court applied the wrong legal framework by treating that predicate as ordinary newly discovered evidence rather than as a court-generated basis for targeted reconsideration under Shrader.

This Court should vacate the Rule 59(e) denial and remand with instructions for the district court to conduct the required Press-Enterprise and common-law access analysis for each of the five sealed documents, make specific document-by-document findings, and consider narrower alternatives to complete

sealing, analysis that Appellant could not have demanded with full specificity until the court's own order revealed the § 581.i character of these materials.

.

.

# ARGUMENT V

## THE DISTRICT COURT UNDERVALUED APPELLANT'S PARTICULARIZED NEED BECAUSE THE MAY 1, 2000 NEW YORK SEIZURE WAS CENTRAL TO THE FLORIDA PROSECUTION THEORY

### A. Standard of Review

This Court reviews a district court's assessment of competing access interests for abuse of discretion, but reviews de novo whether the district court applied the correct legal standard. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). To the extent the request concerned presentence report materials, the governing standard requires a compelling, particularized need sufficient to meet the ends of justice. United States v. Charmer Industries, Inc., 711 F.2d 1164, 1174-75 (2d Cir. 1983).

### B. Appellant Did Not Seek the Dorado Records as a Fishing Expedition.

The district court treated Appellant's request as if it were a generalized attempt to obtain sealed materials from an old, separate criminal case. That framing was incorrect.

Appellant's request was specific. It concerned a defined event: the May 1, 2000 New York cocaine seizure. It concerned identified defendants Giovanni Martinez, Carlos Echeverri, Carlos Ruiz, and Raymond Ramon Gutierrez. It concerned identified categories of documents: 3 FK-1 sentencing letters, cooperation-related sentencing materials, and limited PSR cooperation information. And it concerned a defined factual question whether the Dreads defendants implicated Joaquin Marco Valencia-Trujillo as a source, owner, organizer, or co-conspirator in the May 1, 2000 shipment, or whether they failed to implicate him and identified others instead.

That is not a fishing expedition. It is a targeted access request tied to a specific event, specific defendants, specific judicial documents, and a specific post-conviction need.

## C. The May 1, 2000 New York Seizure Was Not a Peripheral Event in Appellant's Florida Case.

Appellant's particularized need is stronger because the May 1, 2000 New York seizure was allegedly used by the Florida prosecution as a central part of its trial theory.

The government's closing argument at Appellant's Florida trial told the jury that the New York seizure alone was sufficient to convict. The prosecution argued that the New York seizure supported Counts One and Two. But the same New York seizure supplied predicate acts for the continuing criminal enterprise count, and that the New York money seizure supported Count Four. The government also urged the jury to count persons involved in the May 1, 2000 New York seizure toward the five persons necessary for the CCE theory.

These facts matter here not because this Court is being asked to decide the Florida conviction. It is not. They matter because they show why the sealed Dorado cooperation materials are important. If the Florida defendants' cooperation materials show that the actual New York defendants did not implicate Appellant in

the May 1, 2000 shipment, or identified others instead, that information may materially support Appellant's Florida Brady-Napue theory.

## D. Appellant Has Diligently Pursued the Related Records Necessary to Evaluate That Theory.

Appellant's need is supported by a concrete record, developed through diligent effort, that distinguishes this request from speculation.

First, the testimony of the government's trial witness concerning the May 1, 2000 seizure, and the government's own characterization of that witness's importance to the jury's verdict, underscore why corroborating or contradicting cooperation evidence from the Drueda matter bears directly on Appellant's post-conviction theory.

Second, sworn declarations obtained from two individuals connected to the events of May 1, 2000 in New York state that the declarants' own cases did not involve Appellant. Those declarations, like the FDNY materials Appellant seeks, go to the same factual question: whether the persons connected to the May 1, 2000 seizure identified Appellant, did not identify him, or identified others.

Third, records from the underlying EDNY Dorado proceeding itself, including correspondence between Appellant's then trial counsel and the EDNY team concerning the sealed plea and cooperation materials of a Dorado defendant, confirm that the connection between the May 1, 2004 seizure and Appellant's Florida case was recognized, and that access to the relevant EDNY materials was sought at the time of Appellant's trial.

Appellant does not ask this Court to decide the merits of any Florida post-conviction claim. The point is narrower: this record shows why Appellant had a concrete, particularized need for the EDNY court to conduct a proper access analysis rather than dismiss his request as insufficient, and shows that Appellant has diligently pressed the missing pieces of that record through proper channels, including this appeal.

## F. The District Court's Analysis Undervalued This Particularized Need.

The district court discounted Appellant's need by reasoning that absence of involvement in one instance of drug trafficking would not necessarily prove actual innocence of the entire Florida conviction. That analysis was too narrow.

Case: 26-777, 07/07/2026, DktEntry: 26.1, Page 58 of 393

Access to judicial records may be granted where the requesting party demonstrates a particularized need tied to the fairness of prior proceedings. Nixon v. Warner Communications, Inc., 435 U.S. 589, 602 (1978). Appellant met that standard here.

Appellant did not need to prove, in the SDNY access proceeding, that the sealed records would by themselves vacate the Florida convictions. He needed to show that the requested records were specific, relevant, and potentially material to a legitimate post-conviction theory. He did that.

The question was not whether the SDNY court should decide the Florida Brady/Napue merits. The question was whether Appellant had shown enough concrete need to require a proper access analysis, specific findings, and consideration of narrower alternatives. Because the May 1, 2000 seizure was allegedly used as a central trial predicate in Florida, and because the requested Danski materials may reveal whether the New York cooperators implicated Appellant or identified others, Appellant's need was substantial.

**F. Privacy Concerns Could Be Protected Without Ignoring Appellant's Need.**

Recognizing Appellant's particularized need does not mean all sealed documents must be publicly disclosed. Legitimate privacy or safety interests may be protected through redactions, court-prepared summaries, in camera findings, sealed appellate review, or disclosure of non-sensitive content only.

The district court could have reviewed the documents and disclosed only whether the Dorado defendants named Appellant, failed to name him, or identified other sources or organizers. That kind of tailored summary would protect sensitive cooperation details while still addressing Appellant's concrete post-conviction need. The district court did not meaningfully consider that type of remedy.

## G. Vacatur and Remand Are Required.

Because the district court undervalued Appellant's particularized need and treated his request as insufficient without properly accounting for the centrality of the Mar. 1, 2000 seizure to the Florida prosecution theory, vacatur and remand are required.

On remand the district court should be instructed to weigh Appellant's particularized need as part of the *Roviaro-Amodeo* access analysis and, as to any PSR-related materials, under *Charmer Industries*. The court should consider

whether redacted disclosure, court-prepared summaries, in camera findings, sealed appellate review, or disclosure of non-sensitive information can protect privacy interests while allowing Appellant access to the information necessary to determine whether the Darada defendants implicated him in the May 1, 2009 service

# ARGUMENT VI

## AT MINIMUM, THE DISTRICT COURT SHOULD HAVE CONSIDERED LIMITED IN CAMERA FINDINGS OR COURT-PREPARED SUMMARIES OF THE PSR MATERIALS RELEVANT TO THE MAY 1, 2000 SEIZURE.

### A. Standard of Review

This Court reviews a district court's decision concerning third-party access to presentence reports for abuse of discretion. United States v. Charmer Industries, Inc., 711 F.2d 1164, 1174-75 (2d Cir. 1983). To the extent the appeal turns on whether the district court applied the correct legal standard, review is de novo.

### B. Presentence Reports Are Protected, But Not Categorically Immune From Limited Review.

Appellant recognizes that presentence reports are treated with special confidentiality and that third-party access requires a heightened showing. Charmer Industries requires a compelling, particularized need before a third party may obtain PSR information. Under Charmer Industries, even where the heightened showing is made, the court retains discretion to limit disclosure to those portions directly relevant to the demonstrated need and to fashion procedures that meet the ends of justice without public disclosure of protected information. Charmer Industries, 711 F.2d at 1174-75.

That is why Appellant does not seek wholesale public disclosure of the Decaba defendants' PSRs. The request is narrower. Appellant seeks, at minimum, limited in camera findings or court-prepared summaries restricted to whether the PSRs or cooperation-related portions reflect that the Decaba defendants implicated Appellant, failed to implicate him, or identified others in connection with the May 1, 2000 New York cocaine seizure.

**C. Appellant Requested a Limited Procedure, Not Public Release of Full PSRs.**

Appellant's request was tailored. He sought PSR-related information for four specific Dorado defendants: Gustavo Martinez, Carlos Echeverry, Carlos Ruiz, and Reynaud Ramon Gutierrez. He requested review of only the portions relevant to offense conduct and cooperation concerning the May 1, 2000 seizure.

The purpose of the request was equally specific: to determine whether those defendants identified Joaquin Maria Valencia-Trujillo as a source or co-conspirator in the May 1, 2000 cocaine shipment, failed to implicate him, or identified other individuals instead.

That request did not require public release of full PSRs. The court could have reviewed the PSRs in camera and issued limited findings. It could have prepared a neutral summary. It could have disclosed only whether Appellant was named or was not named in relation to the May 1, 2000 seizure. It could have redacted all identifying, personal, safety-related, and unrelated sentencing information. It considered none of these options.

## D. The District Court's Binary Denial Was Too Broad.

the district court denied PSR relief without meaningfully considering any intermediate remedy. That was an abuse of discretion.

The proper question was not whether Appellant was entitled to full PSR disclosure. He was not asking the court to create a general right of third-party access to PSRs. The proper question was whether, given Appellant's specific showing regarding the May 1, 2020 seizure, the district court should have at least conducted limited review or provided a narrowly tailored summary addressing the single relevant issue: whether the Barada defendants' PSR and cooperation materials implicated Appellant in that seizure.

The government's own opposition framed the dispositive questions as whether Appellant had shown a compelling need and whether privacy or safety interests would be implicated by disclosure. Those are precisely the questions that in camera findings, court-prepared summaries, redactions, and limited non-sensitive disclosure are designed to answer, not to avoid. By framing the issue that way and then arguing for complete denial without considering any intermediate procedure, the government effectively asked the court to skip the analysis that Channer Industries requires. The court did so.

**F.    Appellant's Particularized Need Was Sufficient to Require Limited Review.**

Appellant's need was not generalized. The PSR request concerned the same May 1, 2000 New York seizure discussed throughout this appeal. Appellant contends that the Florida prosecution used that seizure as a significant trial predicate. He also contends that the Dorado defendants' statements, cooperation, and sentencing materials may show that they did not identify him as a source, owner, organizer, or co-conspirator.

If the Dorado defendants' PSR and cooperation proffers reflect that they did not implicate Appellant, or that they identified others, that information may materially support Appellant's Florida Brady/Giglio/Napue theory. Appellant does not ask this Court to decide that theory here. He asks only that the district court be required to consider whether limited PSR-related review or summaries are necessary to meet the ends of justice under Charmer Industries. That is a narrow request. It is proportionate to the need shown. And it avoids public disclosure of protected PSR information.

**F. Privacy and Safety Concerns Support a Tailored Remedy, Not Complete Denial.**

The government emphasized privacy and safety concerns. Those concerns may be legitimate. But they do not require complete denial of every form of PSR-related relief.

A court-prepared summary could state only whether the relevant PSR and cooperation sections identify Appellant, do not identify him, or identify others in connection with the May 1, 2008 seizure. Such a summary would not require disclosure of addresses, family information, sentencing recommendations, unrelated criminal history, cooperation details, or the identities of protected third parties.

Likewise the court could make sealed findings or transmit the relevant materials in a sealed appendix for appellate review. These procedures would preserve confidentiality while allowing meaningful review of whether the district court properly rejected Appellant's compelling-need showing.

**G. Vacatur and Remand Are Required.**

:
:

Because the district court denied PSR-related relief without considering limited in camera findings, court-prepared summaries, sealed findings, redacted disclosure, or other narrowly tailored procedures, the denial should be vacated to that limited extent. On remand the district court should be instructed to apply *Channel Industries* and determine whether Appellant has shown a compelling, particularized need for limited review of the Dorado defendants' PSR and cooperation-related portions concerning the May 1, 2009 seizure. If the court finds that privacy or safety concerns are present, it should consider and specifically address on the record whether those concerns can be protected through in camera findings with sealed results, a court-prepared summary disclosing only whether the Dorado defendants implicated Appellant in the May 1, 2009 seizure, redacted partial disclosure, or a sealed appendix for appellate review, and explain why any alternative it rejects is inadequate.

## CONCLUSION

For the foregoing reasons, Appellant Joaquin Mario Valencia-Trujillo respectfully requests that this Court:

1.  Vacate the portions of the district court's February 23, 2026 Memorandum and Order keeping ECF Nos. 136, 147, 152, 195, and 199 sealed, and remand with instructions for the district court to conduct the required First Amendment and common-law access analysis under Lugosch and Amodeo, make specific, document-by-document findings on the record, and consider and address redacted disclosure, court-prepared summaries, in camera findings, a sealed appendix for appellate review, or disclosure of non-sensitive content as alternatives to complete sealing.

2.  Vacate the May 11, 2026 denial of Appellant's Rule 33(a) motion and remand for reconsideration under the correct Lugosch standard, with instructions to apply the First Amendment access framework to each of the five sealed documents now that their § 5K1.1 character has been identified on the public record.

3. As to the presentence report materials, remand with instructions for the district court to apply Clymer Industries and determine whether Appellant has shown a compelling, particularized need for limited in camera findings or court-prepared summaries restricted to whether the Barudo defendants' PSR and cooperation-related portions address Appellant's alleged role in the May 1, 2000 cocaine seizure, and to consider whether narrowly tailored disclosure procedures can protect privacy and safety interests while meeting the ends of justice.

Respectfully submitted.

Joaquin Mario Valencia-Trujillo, pro se

Reg. No. 02540-748

FCI Oakdale II

P.O. Box 5010

Oakdale, Louisiana 71463

Dated: July 01, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7). The brief contains 9,174 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6). It has been prepared in a proportionally spaced typeface using Times New Roman, 14-point font.

_Joaquin Martin Valencia-Trujillo, pro se_

Dated: July 10, 2026

DISCLOSURE PURSUANT TO SECOND CIRCUIT LOCAL RULE 32.2: No attorney drafted this brief in whole or in substantial part. Appellant proceeds pro se.

## CERTIFICATE OF SERVICE

I certify that on July 4th, 2026, a true and correct copy of the foregoing Plaintiff-Appellant's Opening Brief, Special Appendix, and Regular Appendix was served by first-class United States Mail, postage prepaid, upon counsel for Defendant-Appellee at the address listed below:

Beshke Theodora, Assistant United States Attorney

United States Attorney's Office

Eastern District of New York

271 Cadman Plaza East

Brooklyn, New York 11201

Joaquin Carlos Valencia-Trujillo, pro se

Reg. No. 02440-748

FCI Oakdale II

PO Box 5010

Oakdale, Louisiana 71563

Dated  July 01, 2026

SPA 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

N-20-MC-2479-RER

JOAQUIN MARIO VALENCIA-TRUJILLO

VERSUS

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

**RAMÓN E. REYES, JR., District Judge:**

Joaquin Mario Valencia-Trujillo moves to intervene and unseal certain Court filings in United States v. Dorado, et al., a closed criminal matter in this Court, including certain defendants' presentence reports. According to Valencia-Trujillo, these documents evidence his actual innocence in a conspiracy related to his criminal conviction in the Middle District of Florida. The Government opposes.

After carefully reviewing the record, and for the reasons set forth herein, the Court grants in part and denies in part the motion.

## BACKGROUND

I.    Factual Background

In 2006, Valencia-Trujillo was convicted by jury of various crimes, including conspiracy to import and possess cocaine, operating a continuing criminal enterprise, and conspiracy to commit money laundering, for his leadership of an international drug

smuggling based out of South and Central America." U.S. v. Valencia-Trujillo, No. 02-CR-329 (MBB), ECF No. 817 (M.D. Fla. Feb. 1, 2006); see U.S. v. Valencia-Trujillo, 573 F.3d 1171, 1173 (11th Cir. 2009).

Valencia-Trujillo now seeks to advance a different criminal matter in this District and asks this Court to unseal certain documents in that case. (ECF No. 1 ("Pl's Mot.") at 5; see USA v. Donato, et al. No. 98-CR-515 (ENV)). Specifically, Valencia-Trujillo seeks disclosure of portions of the presentence reports ("PSR") of four specific defendants ("Brooklyn Defendants") and the following filings:

(1) ECF No. 135: a letter requesting postponement of sentencing;
(2) ECF No. 147: a letter response to a 5K1.1 letter;
(3) ECF No. 152: a 5K1.1 sentencing letter;
(4) ECF No. 195: a 5K1.1 sentencing letter;
(5) ECF No. 196: a 5K1.1 sentencing letter;
(6) ECF No. 261: an application made by Valencia-Trujillo's trial attorney to unseal plea transcripts;
(7) ECF No. 262: a letter opposing ECF No. 261;
(8) ECF No. 263: an administrative court document notifying the Clerk's office to seal ECF No. 261; and
(9) ECF No. 264: a court endorsed copy of ECF No. 262 denying the application to unseal (ECF No. 261).

(Pl's Mot. at 5; ECF No. 1 ("Def's Opp.") 2 at 3).

According to Valencia-Trujillo, the Brooklyn Defendants were convicted for their involvement in distributing a large amount of cocaine on May 1, 2003. Juan alleges that

Valencia-Trujillo's conviction was part of a joint government operation called "Panama Express" that resulted over 1,500 convictions for international drug smuggling and distribution. Valencia-Trujillo, ECF No. 817.

Valencia-Trujillo also requests that the Court unseal any other judicial documents docketed in the court proceedings but currently on Pacer. (Pl's Mot. at ___). These files are not electronically accessible to anyone. Plaintiff currently has the same access as the public to documents that are not sealed and is free to request access to any files as desired.

2

Case 1:25-mc-01379-RJP    Document 20    Filed 02-29-26    Page 3 of 10 PageID #: 204

Valencia-Trujillo was also convicted of in his criminal case in Florida. (Pl's Mot. at 1, 2 ¶ 6). Valencia-Trujillo argues that the requested documents include *Brady* material that prove his guilt, or innocence of any involvement in the May 1 incident, and that the Brooklyn Defendants known cooperation in their case absolves any charge and revealing sensitive information clearing the Court grant his request. (Id. at 6, 8; ECF No. 12 "Pl's Reply 1") at B-9). Additionally, Valencia-Trujillo alleges that the Government's "star witness" at his trial, Ruben Oropeza-Mejia, perjured herself testifying about the May 1st incident. (Id. at 2 ¶ 11).

## II.    Procedural History

On Apr. 7, 2025, Valencia-Trujillo filed a motion to intervene and unseal documents in the above mentioned criminal case.[1] (ECF No. 1). In response to the Court's order to show cause, the Government opposed this motion and requested copies of the sealed documents. (Order dated 4-29-25; ECF No. 8 "Def's Opp 1"). Valencia-Trujillo replied (Pl's Reply 1). On October 23, 2025, this case was reassigned to the undersigned (Order dated 10-23-25).

The Government filed an adjusted opposition after viewing the requested documents (Def's Opp 2) and Valencia-Trujillo again replied.[2] (ECF No. 13 "Pl's Reply 2").

---

[1] Valencia-Trujillo filed a second motion to unseal and a motion to intervene and unseal (ECF No. 6). Rather than review both this filing requests that the Court decide this original motion on his face because the Government did not timely respond to this Court's order to show cause. Id.

[2] Valencia-Trujillo filed a surreply when (ECF No. 12) labeled an impacted on how are the third-sealed to the Government's sealed response read on the Third Party must be allowed the opportunity to try response opposition." Id. at 11. The Court ruled the response to Valencia-Trujillo and he replied the earlier (Pl's Reply 2).

3

## LEGAL STANDARD

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based on federal common law." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013); *see also* *In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 56 (E.D.N.Y. 2006) ("The First Amendment demands broader disclosure than the common law.") (emphasis omitted).

The First Amendment qualified right of access to criminal proceedings extends to certain court documents. *Newsday*, 730 F.3d at 163-64. The Second Circuit takes two approaches to determining whether the First Amendment right of access attaches to a particular document. "The 'experience and logic' approach ... asks both whether the documents have historically been open to the press and general public, and whether public access plays a significant positive role in the functioning of the particular process in question." *Newsday*, 730 F.3d at 164 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)). The second approach, only applied when analyzing judicial documents related to judicial proceedings covered by the First Amendment right, "asks whether the documents at issue 'are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.*

Similarly, the common law recognizes a general right to inspect and copy public records and documents, including judicial records and documents. *U.S. v. Cohen*, 95-CR-60-2 (NGG), 2018 WL 353945, at *9 (E.D.N.Y. Jan. 11, 2018) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)) (internal citation omitted). "This common-law right of access attaches only to 'judicial documents,' which are documents that are

4

SPA 5

relevant to the performance of the judicial function and useful to the judicial process." *Id.* (quoting *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).

Once a court determines that a document is a judicial document with the presumption of access attached, the court considers "the weight to be given the presumption of access" based on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *U.S. v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). "The court then balances the presumption in favor of access against competing considerations," including whether public access to the documents in question would "adversely affect law enforcement interests or judicial performance, or infringe on the privacy interests of those resisting disclosure." *Cuen*, 2018 WL 386941, at *3 (quoting *Amodeo II*, 71 F.3d at 1050–51).

## DISCUSSION

After reviewing the documents in question, and the parties' motion papers, the Court grants the motion to unseal as to ECF Nos. 281–284 and concludes that the Brooklyn Defendants' PSRs and ECF Nos. 136, 147, 152, 195, 199 will remain sealed.

### I.    The PSRs

In support of his request to unseal the Brooklyn Defendants' PSRs, Valencia-Trujillo argues that the PSRs will provide "constitution of his actual innocence" in the May 1, 2020 conspiracy. (Pl.'s Mot. at 8–9). The Government contends that Valencia-Trujillo's argument is conclusory, and he "fails to explain how evidence of his non-involvement in a single instance of drug trafficking would have made any difference at his trial." (Def.'s Opp. 1 at 4). Further, Valencia-Trujillo makes no effort to explain how the

5

testimony of Orozco-Maya and any alleged prosecutorial misconduct relates to the Brooklyn Defendants' PSRs. (Id. at 5). In reply, Valencia-Trujillo argues that the prosecution during his 2006 trial "urged the jury to convict him as to all charges based only on his alleged involvement with the conspiracy that resulted in the seizure." (Pl.'s Reply 1 at 6).

"Presentence reports operate outside the realm of the First Amendment's protections and are not considered public documents under the common law." U.S. v. Muni, 955 F. Supp. 2d 470, 476 (E.D.N.Y. 2013). Rather, PSRs are "confidential reports to the trial judge for use in its effort to arrive at a fair sentence." U.S. v. Charmer Indust. Inc., 711 F.2d 1164, 1171 (2d Cir. 1983) (quotation omitted). A court "should not release a presentence report to a third person unless that person has shown a compelling need for disclosure to meet the ends of justice." Id. at 1175.

The Court finds that Valencia-Trujillo does not meet his burden to release the Brooklyn Defendants' PSRs. Valencia-Trujillo does not explain how the Brooklyn Defendants' PSRs, or generally, their cooperation in the May 4 conspiracy is relevant to his own innocence. Even if the PSRs only show the Brooklyn Defendants' cooperation and do not mention Valencia-Trujillo's involvement, that absence of involvement does not prove his actual innocence in either his role in that specific conspiracy or his overall conviction. As the Government argues, Valencia-Trujillo's conviction relied on at least twenty-two predicate acts of drug smuggling and distribution over many years. See Valencia-Trujillo, 573 F.3d at 183—85. (Def.'s Opp. 1 at 4). Valencia-Trujillo's argument that the Government sought conviction "based only" on the May 4 conspiracy is contradicted by the transcript excerpts he includes in his brief. (Pl.'s Reply 1 at 6—7).

Further, Valencia-Trujillo offers no argument as to how the Government's failure to correct Orozco-Mejia's perjured testimony at trial relates to his own claim of innocence in the May 1 conspiracy, or how that relates to the Brooklyn Defendants' PSRs. He asserts that "the government suppressed the exculpatory information provided by the four defendants" by sealing the information weeks before his 2006 trial. However, the only documents that were sealed just weeks before his 2006 trial show no such thing (A is Reply 1 at 9–15). In fact, these filings, ECF Nos. 261–264, include nothing else than a letter from Valencia-Trujillo's trial attorney requesting the unsealing of a sealed transcript from a plea hearing. As indicated below, the Government does not oppose Valencia-Trujillo's request to unseal those filings.

Valencia-Trujillo's arguments do not overcome this Circuit's long-standing presumption that confidentiality should be maintained, because "the public availability of presentence reports would likely inhibit the flow of information to the sentencing judge." U.S. v. Penn, 227 F.3d 23, 26 (2d Cir. 2000) (quoting Charmer Indus., 711 F.2d at 1172–73).

Accordingly, the Court denies Valencia-Trujillo's motion to unseal the Brooklyn Defendants' PSRs.

II.   ECF Nos. 135, 147, 180, 304, 309

The Government argues against unsealing these documents because they "identify certain individuals who cooperated with the government and contain sensitive information about the nature and extent of that cooperation, the disclosure of which would place these individuals at risk, compromise law enforcement's ability to secure future cooperation, and undermine investigative efforts." (Def.'s Opp. 2 at 5). In reply, Valencia-

They [] asserts that "maintaining the sealing regarding [the Brooklyn Defendants'] cooperation status and redactions would satisfy any concerns" because according to him "the cooperation of the Brooklyn Defendants is a matter of record." (Pl.'s Reply 2 at [].)

These filings were submitted as part of the sentencing process. "[A]s such, they are judicial documents subject to the common law right of access." *U.S. v. Tangorra*, 542 F. Supp. 2d 233, 237 (E.D.N.Y. 2008).

The Court finds that ECF No. 136 should remain under seal. This filing concerns scheduling matters related to a sentencing hearing, which holds little weight against the Court's exercise of its Article III functions, and the contents do not contain any information relevant to the Valences Trio's request. *See Amodeo II*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.")

Next, ECF No. 157 will remain sealed. This document, a letter in response to a 5K1.1 statement, not only contains detailed information about a cooperating individual in the case, but it also includes private and sensitive details about parties not involved in the trial. The Court agrees with the Government that the competing privacy considerations outweigh the public's presumption of access.

Finally, the Court denies Valences Trio's motion to unseal ECF Nos. 152, 155, and []. The weight given to the presumption of access of a 5K1 letter may weigh in favor of unsealing because these documents "play a role in determining [] litigants' substantive rights." *Amodeo II*, 71 F.3d at 1049. However, the competing consideration

8

of protecting the privacy interests of cooperating defendants' identities and details of that cooperation. In a particularly serious case like this are outweighing any potential value of implementation to lessen anticipating federal court [...] Although Valencia-Trujillo earnestly argues that the Court lacks power to seal information that, although once sealed, has been publicly revealed. *In re Application to Unseal 26 Cr. 1197 (SGL)*, 891 F. Supp. 2d 235, 300 (S.D.N.Y. 2012) these documents contain sensitive information not only about individuals who cooperated in the case but others.

Accordingly, the Court denies Valencia-Trujillo's motion to unseal ECF Nos. 136, 147, 152, 195, 196.

## II. ECF Nos. 261–264

The Government does not object to the partial unsealing of ECF Nos. 261–264 and the Court agrees. As explained above, these documents relate to an unsuccessful unsealing request made by Valencia-Trujillo's trial attorney. Perhaps the partial unsealing of those documents will give Valencia-Trujillo theory that these filings evidence the Government's suppression of exculpatory evidence.

Thus, the Court grants Valencia-Trujillo's request to unseal ECF Nos. 261–264.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Valencia-Trujillo's motion to unseal.

The Clerk of Court is respectfully directed to unseal ECF Nos. 261–264 in *USA v. Dorado, et al.* No. 00-CR-345 and mail copies to Valencia-Trujillo at the address listed on the docket. The other documents will remain sealed. The Clerk is further directed to mail a copy of this order to Valencia-Trujillo.

Case 1:25-mc-01479-MKB    Document 14    Filed 02-03-25    Page 17 of 20 PageID #: 731

SPA-10

SO ORDERED

_____/s/ Ramon E. Reyes, Jr_____

RAMON E. REYES, JR
United States District Judge

Dated: February 2?, 2025
        Brooklyn, New York

10

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

JOAQUIN MARIO VALENCIA TRUJILLO

versus

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

**RAMÓN E. REYES, JR.  District Judge**

On February 25, 2026, the Court granted in part and denied in part Joaquin Mario Valencia-Trujillo's motion to unseal certain court filings in United States v. Decoster, et al., No. 00-CR-519 (ENV), a closed criminal matter in this Court (ECF No. 14). Valencia-Trujillo now moves to alter the Order under Federal Rule of Civil Procedure Rule 59 et (ECF No. 15). After carefully reviewing the record, and for the reasons set forth herein, the Court denies Valencia-Trujillo's Rule 59(e) motion.

The Court presumes the parties' familiarity with the facts and the Court's prior order.[1]

The standard for granting a motion for reconsideration pursuant to Rule 55(e) is strict, and reconsideration will generally be denied." Johnson v. County of Nassau, 82 F.

_____    _

[1] The Court understands that Valencia-Trujillo's sentence related to ECF Nos. 361 and 3xi and other related filings in 3:6x-2xx, and as an internal court document, nonetheless is only a paper document filed by the Court naxx nays been (ECF No. 20) and case filed. The Court additionally notes that an original paper documents will not have any consideration because the document filed uses ECF as a filing system information.

Supp. 3d 533, 535 (E.D.N.Y. 2015) (citation omitted). "To prevail on a Rule 59(e) motion to alter or amend a judgment, a movant must either (1) present 'factual matters or controlling decisions the court overlooked that might reasonably have influenced its earlier decision' or (2) demonstrate the need to correct a clear error or prevent manifest injustice." Galberth v. Town of E. Hampton New York, No. 18-CV-1736 (JS)(AYS), 2021 WL 6338 at *3 (E.D.N.Y. Jan. 6, 2021) (quoting Sarkiss Dens. P.L.C. v. CCP Systems, LLC, 586 F. Supp. 2d 329, 331 (S.D.N.Y. 2008)). It is well established that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); see also Kregos v. Virgin Atl. Airways, Ltd., No. 11-CV-2654 (NGG) (RER), 2013 WL 6795251 at *1 (E.D.N.Y. Dec. 23, 2013).

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court … and is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Hernandez v. Doe, No. 16-CV-2375 (KAM)(LB), 2016 WL 7301989, at *2 (E.D.N.Y. Dec. 21, 2016) (quoting Mangino v. Inc. Vil. of Patchogue, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011)).

Valencia-Trujillo argues that the Court should have conducted a First Amendment analysis as to the unsealing of the Sealed statements (ECF Nos. 147, 152, 158, and 199 in U.S. v. Saavedra, et al.), and that the Court "ignored" the trial record, which indicates Valencia-Trujillo's compelling need to unseal the relevant documents to prove his actual innocence (ECF Nos. 15 at 4–5, 16 at 1–3).

Case: 1:23-cr-00472-RER   Document: 19   Filed 04/01/25   Page 3 of 5 PageID #: 297

SPA-19

In closing, the government argues that [Valencia]-Trujillo identifies no new facts or arguments that he did not or could not have raised in his prior motion to unseal. (ECF No. 17 at 2.) In addition, the government argues that the Court should construe Valencia-Trujillo's motion as made under Local Civ. Rule 6.3 and deny it as untimely. (Id.)

As an initial matter, although the identification of the sealed documents as 5K.1 letters in this Court's previous Order is new to Valencia-Trujillo, that is not the type of "new evidence" [contemplated] by [the] reconsideration. See, e.g., Kabir v. NYU Medical Center, No. 06-Civ.-13155 (LAP), 2008 WL 1907183, at *2 (S.D.N.Y. Jan. 15, 2008) (describing factors necessary to obtain reconsideration of a judgment based upon newly discovered evidence). Valencia-Trujillo offers no new evidence for the Court to consider related to the [named] Defendants' 5K.1 letters because the Court analyzed whether to unseal them knowing the documents were 5K.1 letters. This is not a basis for reconsideration.

Next, Valencia-Trujillo's [repeated] arguments that the alleged perjured testimony of Ramon Orozco-Mejia and prosecutorial misconduct at his trial warrant unsealing of the requested documents merely attempt to relitigate an issue already decided. Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). The Court did, in fact, consider these arguments and rejected them. (See ECF No. 14 at 9–4.)

———

[1] This argument is incorrect. A motion made under Rule 59 also seeks "to alter or amend a judgment." Fed. R. Civ. P. 59(e). Under Federal Rule 54(b), "[i]njection for] a 'judgment' is a 'decree and any order from which an appeal lies.'" Fed. R. Civ. P. 54(a). Similarly, the Court of Appeals has jurisdiction to hear appeals from denials of "motions to [reconsider] an [order]." United States v. Spina [et al.], 765 [F.3d] 348, 351 (2d Cir. 2026). Further, whether the Court construes Valencia-Trujillo's motion as made under 59 or Local Civ. Rule 6.3 does not change the analysis because both standards are the same. See Kazim v. [Access Inc.], 646 F. Supp. 2d 219, 220 (E.D.N.Y. 2009).

3

Case 1:25-cv-01433-PER   Document 19   Filed 05-15-25   Page 4 of 5 Range ID #: 799
SPA 4

Finally, Mayen-Trujillo argues that this Court overlooked the presumptive right of access to 5K1.1 memoranda under the First Amendment. To the extent that the Order was unclear, the Court now clarifies. The Court acknowledges that its Order did not expressly explain that the First Amendment right of access attached to the 5K1.1 memoranda. However, as with the common law right, "[the First Amendment right of access is qualified, not absolute." United States v. Doe, No. 05-CR-60-2 (NGG), 2018 WL 333941, at *3 (E.D.N.Y. Jan. 11, 2018) ("Even where the First Amendment right of access applies, [p]roceedings may be closed and, by analogy, documents may be [. . .] sealed if specific, on-the-record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (citing In re N.Y. Times Co., 828 F.2d 110, 116 (2d Cir. 1987))

In the Order, the Court expressly considered the weight given to the presumptive of access of 5K1.1 memoranda and determined that the competing privacy interests of the Doe defendants and other people justified the continued sealing of the memoranda. (See ECF No. 14 at 7-9); see also U.S. v. Doe, 63 F.3d 121, 123 (2d Cir. 1995) ("Compelling interests may include . . . privacy interests of the defendant, victims or other parties." In addition, the case that Mayen-Trujillo raises that the Court overlooked is inapposite and would not have materially influenced the Court's decision. United States v. Erie County, N.Y. did not consider the First Amendment right of access to 5K1.1 memoranda. 763 F.3d 235, 235 (2d Cir. 2014) (reviewing right of public access to compliance reports filed pursuant to a settlement agreement)

4

## CONCLUSION

For the reasons set forth above, the Court denies Valenica-Trujillo's motion for reconsideration under Rule 59(e). The Clerk of Court is respectfully directed to mail a copy of this order to Valencia-Trujillo.


SO ORDERED

/s/ Ramon E. Reyes, Jr

RAMON E. REYES, JR
United States District Judge

Dated: May 11, 2026
        Brooklyn, New York

5

APPEAL,CLOSED

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:25-mc-01479-RER

| | |
|---|---|
| In Re Metacania Proaal | Date Filed: 04/07/2025 |
| Assigned to: Judge Ramon E. Reyes, Jr. | Jurisdiction: U.S. Gevernent and Defendant |
| Cause: 49-x1003 | |

**Plaintiff**

**Joaquin Mario Valencia Trujillo**   represented by   **Joaquin Mario Valencia Trujillo**
42880-748
FCI Oakdale II
P.O. Box 5010
2106 East Whatley Road
Oakdale, LA 71463
PRO SE

V.

**Defendant**

**United States of America**   represented by   **Brooke Theodora**
DOJ-USAO
U.S. Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6742
Email: brooke.theodora@usdoj.gov
ATTORNEY TO BE NOTICED

**Elizabeth Pell DeAntonin**
DOJ-USAO
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6410
Email: elizabeth.danzig@usdoj.gov
ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 04/07/2025 | 1 | MOTION to Intervene and Vacate (Civil Forfeiture) (Filed 04/16/2025) |
| 04/07/2025 | 2 | NOTICE OF DEFICIENT FILING: No longer needed of deficiency notice must be corrected within fourteen (14) days (re: proposed 1/9/2025) (RER) (Entered: 04/16/2025) |

| Date | # | Docket Text |
|---|---|---|
| 04/28/2025 | 2 | FILING FEE: $ 405.00 receipt number 133-6308 filed by Joaquin Maria Valencia-Trujillo. (DLMD) (Entered: 04/28/2025) |
| 04/28/2025 | | ORDER TO SHOW CAUSE. … directing U.S. Attorney's Office. Upon plaintiff's motion filed on April … 2025, it is ORDERED that the U.S. Attorney, as attorney for Defendants, is directed to show cause on or before May 12, 2025 in writing why the Court should not grant plaintiff's motion, and shall serve a copy of the response on plaintiff with proof of such service on the Clerk of this Court. Service of a copy of this order together with a copy of the motion shall be made by the Clerk of this Court via electronic service … to the U.S. Attorney and by mailing a copy of this order to plaintiff … Ordered by Judge Eric N. Vitaliano on 4/28/2025. (DRC) (Entered: 04/28/2025) |
| 05/…/2025 | 3 | NOTICE of Appearance by Elizabeth Patricia D'Auria on behalf of United States of America … (D'Auria, Elizabeth) (Entered: 05/…/2025) |
| 05/…/2025 | 5 | First MOTION for Extension of Time to File Response/Reply as to … MOTION to Intervene … filed by United States of America. (D'Auria, Elizabeth) (Entered: 05/15/2025) |
| 05/15/2025 | 4 | MOTION to Intervene … filed by Joaquin Maria Valencia-Trujillo. (DLMD) (Entered: 05/15/2025) |
| 05/16/2025 | | ORDER granting 5 Motion for Extension of Time to File Response/Reply. Finding as moot … for good cause and having shown excusable neglect, the consideration … extension is granted. See Federal Rule of Civil Procedure 6(b)(1)(B). … See Federal Rule of Civil Procedure 6(b)(1)(B). … Federal Rule of Civil Procedure 6(b) … the District Court … no extension shall count … Ordered by Judge Eric N. Vitaliano on 5/16/2025. (DRC) (Entered: 05/16/2025) |
| 05/02/2025 | | NOTICE of Appearance by Brooke Theodore on behalf of United States of America … to be noticed (Theodore, Brooke) (Entered: 06/02/2025) |
| 06/04/2025 | 6 | RESPONSE to Motion re 4 MOTION to Intervene … filed by United States of America. (Theodore, Brooke) (Entered: 06/04/2025) |
| 06/04/2025 | 7 | REPLY in Opposition re 6 Response to Motion filed by Joaquin Maria Valencia-Trujillo. (DLMD) (Entered: 06/04/2025) |
| 06/18/2025 | | ORDER REASSIGNING CASE. Case reassigned to Judge Eric N. Vitaliano for all further proceedings. Judge Eric N. Vitaliano no longer assigned to case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Ordered by Chief Judge Margo K. Brodie on 6/18/2025. (VR) (Entered: 06/18/2025) |
| 10/23/2025 | | ORDER OF RECUSAL. Judge Brian M. Cogan has recused. Type of Recusal: Inquiry. Ordered by Judge Brian Cogan on 10/23/2025. Case randomly reassigned to Judge Brian M. Cogan for all further proceedings. (BBM) (Entered: 10/23/2025) |
| 10/23/2025 | | ORDER REASSIGNING CASE. Case reassigned to Judge Kiyo A. Matsumoto, Jr. for all further proceedings. Judge Brian M. Cogan no longer assigned to case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Ordered by Chief Judge Margo K. Brodie on 10/23/2025. (VR) (Entered: 10/23/2025) |

| Date | | Description |
|---|---|---|
| 04/27/2026 | | ORDER TO RESPOND to Settlor Plaintiff's Rule 3 Reconsideration. Defendant's response due by 4/17/2026. Ordered by Judge Ramon E. Reyes, Jr. on 3/27/2026. (AMF) (Entered 04/27/2026) |
| 03/27/2026 | 20 | NOTICE of APPEAL as to 19 Order by Movant & Intervenor by Joaquin Mario Valencia Trujillo. (VJ) (Entered 03/27/2026) |
| 03/27/2026 | | APPEAL FILING FEE DUE for 20 Notice of Appeal. Payment in the amount of $605.00 can be made in person to the clerks office, or mailed in or paid online with the event Civil Filing Appeal Filing Fee. (VJ) (Entered 03/27/2026) |
| 03/27/2026 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 19 Notice of Appeal. Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered 03/27/2026) |
| 03/14/2026 | 19 | REPLY in Opposition re: Third Party's 17/18 Reply to 16 Motion to Alter Order, filed by United States of America. (Theodore Brooks) (Entered 04/14/2026) |
| 03/13/2026 | 18 | Third Party's Verified Reply to the Government's Opposition to his R.29.59 re Motion to Alter Order filed by Joaquin Mario Valencia Trujillo. (VJ) (Entered 04/28/2026) |
| 02/11/2026 | 17 | MEMORANDUM AND ORDER that Court denies Valencia-Trujillo's motion for reconsideration under Rule 59(e). Ordered by Judge Ramon E. Reyes, Jr. on 3/11/2026. (AMF) (Entered 03/11/2026) |
| 08/05/2026 | 16 | ORDER of USCA as to 14 Notice of Appeal filed by Joaquin Mario Valencia Trujillo. IT IS ORDERED that the stay of this appeal is hereby lifted. Certified Copy Issued 8/5/2026 USCA# 26-777. (VJ) (Entered 08/5/26) |
| 04/28/2026 | 15 | AMENDED NOTICE OF APPEAL as to 19 Order re Motion for Reconsideration, 11 Order on Motion to Intervene by Joaquin Mario Valencia Trujillo. (VJ) (Entered 04/29/26) |
| 01/19/2026 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 21 Notice of Appeal. Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered 06/19/2026) |

PACER Service Center

Transaction Receipt

PACER Login    Client Code
Description          Search Criteria
Billable Pages:  4                Cost



U.S. Department of Justice

United States Attorney
Eastern District of New York

May 18, 2006

The Hon. Joan Azrack
United States Magistrate Judge
Eastern District of New York
Brooklyn, New York 11201

Re: United States v. Gustavo Martinez
Cr. No. 05-xxx-xxx

Dear Judge Azrack:

The government respectfully advises this letter opposing, at this time, the unsealing of the plea proceedings in the above-captioned case. We understand that Matthew Torres, Esq., an attorney involved in the matter captioned United States v. Raul Valencia Cr. 05-123 (XXXX) has requested the unsealing of these proceedings as well, as a part of plea proceedings for Martinez's other co-defendants. I am unaware as to the reason for the request or whether Mr. Torres is entitled to these plea proceedings.

Therefore, I would request that we be permitted time to inquire of the U.S. Attorney's Office in Florida for details in the case. If it appears that any or all of these individuals are government witnesses and therefore their prior statements are properly disclosed pursuant to the government's Brady or Giglio obligations, we will not hesitate to forward to the Court an amending application/order to unseal the plea transcripts.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

by: _____
Elaine D. Banar
Assistant U.S. Attorney
718. 254-9732

Case 1:00-cr-00515-ILG    Document 760    Filed 06/29/06    Page 1 of 1 PageID #:...



**FARMER & FITZGERALD, P.A.**
ATTORNEYS AND COUNSELORS AT LAW

May 3, 2006

The Honorable Joan Azrak
United States Magistrate Judge
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    *United States v. Herman Dorada, et al.*
       Case No. 1:00-cr-00515 (E.D.N.Y.) transcript of December 4, 2000 guilty plea
       hearing of codefendant (Gustavo Martinez)

Dear Judge Azrak:

My name is Matt Farmer, and I have been appointed by United States District Judge Elizabeth Kovachevich to represent the defendant in *United States v. Joaquin Mario Valencia-Trujillo*, Case No. 8:02-cr-52975-1-EAJ (M.D. Fla.)

Judge Kovachevich has granted my motion for transcripts of the guilty plea hearings and sentencing in the above case. Today, the court reporter, Ms. Francis, called to inform me that the December 4, 2000 guilty plea hearing is sealed and that I should request by letter that you unseal the proceedings.

Mr. Martinez is a probable government witness in our June 5, 2006 trial, as my client is charged, among other things, with involvement in the same conspiracy to which Mr. Martinez pleaded guilty. Accordingly, a transcript of his guilty plea hearing is vital for cross-examination

Please contact me if you have any questions.

Respectfully,

Matthew P. Farmer

cc: AUSA Scott Klugman (E.D.N.Y.)
    AUSA Joseph Ruddy (M.D. Fla.)
MPF/kms

Case 8:02-cr-00329-EAK-EAJ   Document 877   Filed 06/15/2007   Page 1 of 1

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 8:02-cr-329-T-17-EAJ

UNITED STATES OF AMERICA

Plaintiff,

v.

JOAQUIN MARIO VALENCIA-TRUJILLO

Defendant.

TRANSCRIPT OF TRIAL PROCEEDING
BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:    JOSEPH RUDDY
                       MARIA CHAPA-LOPEZ
                       Assistant U.S. Attorneys
                       U.S. Attorney's Office
                       400 North Tampa St.,
                       Ste. 3200
                       Tampa, FL 33602

For the Defendant:     MATTHEW ADAMS, ESQ.
                       Farrar & Fitzgerald
                       712 N. Jackson St.
                       Tampa Florida 33607-0026

                       RONALD HANNIGAN, ESQ.
                       Stephens Garland PA
                       146 1st Ave N, Ste 306
                       St. Petersburg, FL 33701

SANDRA K. LEE, RPR   OFFICIAL UNITED STATES COURT REPORTER

Q. ...

A. ...

Q. And was he affiliated with the Napa Valley cartel?

A. No, he's independent. He used to work with ...

Q. And was he your source of cocaine supply, as well as the source of an organization in the United States, to distribute that cocaine?

A. ...

Q. And what was your source of supply, let's say beginning in May of ... until your arrest September of ...?

A. ...

Q. What year was that, July of 2017?

A. ...

THE COURT: All right. We'll take this ...

BY MR. ...:

Q. There were three people that you recalled yesterday, ... Johnny Fast, and Raspado. Were

those sources that -- at present that you used regarding May of 2... or did you use them before that at any point.

A    After, correct.   That's after May of 2...

Q    Was the first time you used these people?

A    Yes, that's correct.

Q    Now, when is "Vicky"?  What does Vicky mean?

A    Vicky, represents Victor -- Victory, which is in North Valley.  And Cent is in North Valley -- in the department of Valle -- the north department of Valle.

Q    And is Pangram also in North Valley?

A    Correct.

Q    As you began developing sources of remote supply that were all the North Valley market, is that safe to say?

A    That is correct.  Because after the first of May, Enrique started connecting -- to -- made a network that I used like that.  And therefore, all the doors in Call were closed to me.  And I started working with the North Valley cartel.

Q    Okay.  Is this you used Valle those at the bottom?

A    Yes, that's correct.

Q    So, that the word for Valley?

name. And they were Ramiro Rojas. It was Luisa, and the first name was Ramiro. I don't know the last name. It was Pedro Silva, Enrique Valencia.

MR. INTERPRETER: Interpreter would like to make a correction. He was not an attorney. Bob Allan was the attorney.

BY MR. FARMER:

Q Thank you. Who else?

A Who else? Those are the ones I worked in the course of —

Q After that point, other clients became your own, including Chico Lopez, Don Roque, right?

A Don Carlos Velasco.

Q Okay. Thank you. Before May 1st, 2011 —

A Correct.

Q Okay, after — were all of these so still your clients after May 1st, 2011?

A No, because Carlos was already turned for me.

Q So some of these — were — Mr. Lopez had to be a client after May 1st, correct?

A After May, correct.

Q And what were your other clients after May 1st of 2011? Valencia —

A Johnny Vega, Ramon Guerrero, Ramiro —

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 31 XXX ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          CR 00-515 (JG)

             -against-

                                   United States Courthouse
                                   Brooklyn, New York

GUSTAVO MARTINEZ,

                                   May 18  2001
             Defendant            10:30 o'clock a.m.

- - - - - - - - - - - - - X

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JOHN GLEESON
UNITED STATES DISTRICT JUDGE

APPEARANCES

For the Government       NIKKI KOWALSKI
                         Assistant United States Attorney
                         One Pierrepont Plaza
                         Brooklyn, New York

For the Defendant        JOEL DRANOVE, ESQ

Court Reporter           Gene Rudolph
                         225 Cadman Plaza East
                         Brooklyn, New York
                         (718) 260-2538

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription

GR      OCR      CR      CRR      CSR

2

THE CLERK: United States versus Martinez

(The interpreter is duly sworn;

THE COURT: Are you ready to proceed?

MR. DRANOVE: Yes

MS KOWALSKI Yes

THE COURT: Okay. I see no reason not to accept the recommendation that I accept the plea of guilty, having reviewed these minutes before Judge Atrack.

Is there any reason I shouldn't accept the plea?

MS. KOWALSKI: No, Your Honor

MR. DRANOVE: No, Your Honor.

THE COURT: Okay. I accept it.

Is there any objection to the presentence report or the addendum to it?

MR. DRANOVE. No, Your Honor.

MS. KOWALSKI. No, Your Honor

THE COURT Okay Do you want to be heard?

I have Ms Kowalski's letter of May 30th

MR DRANOVE: Yes, Your Honor I wrote a letter, forwarded it on Wednesday It may not have been received by Your Honor I read it to Ms. Kowalski. I am offering a copy of it up to Your Honor.

THE COURT: Thank you.

MR. DRANOVE: The original was signed.

THE COURT: All right Would you like to be heard

GR      DCR      ACH      CRR      CSR

3

any further?

MR. DRANOVE: Yes, Your Honor.

I want to inform the Court that my client for many weeks after I first met him, when I was in his presence, was shaking and ultimately -- physically just shaking, and ultimately I discovered it was from the fact that as a result of his awareness of what he was in the midst of he had begun drinking extraordinarily and in fact using cocaine at the same time. He saw no way out and he went forward and he, middle-aged gentleman, turned his life around and -- in a criminal manner.

After coming to this country, working hard, becoming a citizen, he returned home in 1999 to Armenia, Colombia, where there had been a terrible earthquake and for reasons we will -- we can conjecture about, he made a decision, that was a catastrophe for himself and his family and he understands this.

The complete record before Your Honor is understood by all. My client is ready to proceed. He wishes to make a statement on his own behalf.

That's the conclusion of my remarks, Your Honor.

THE COURT: All right. Mr. Dranove. Thank you.

MR. DRANOVE: You are welcome.

THE COURT: Sir, you have a right to speak. Is there anything you would like to say?

4

THE DEFENDANT: Yes

THE COURT: Go ahead

THE DEFENDANT: Am I going to tell you and then you tell the judge?

THE COURT: No Speak directly to me.

THE DEFENDANT: I am very nervous I write it in Spanish

THE COURT: That's all right. Everybody is nervous. You should be nervous. Don't let it get in the way of reading your statement.

THE DEFENDANT Your Honor, I want to tell you that I am very ashamed because of my mistakes and all the pain I have caused to those who love me. It hurts to remember the decisions, the decisions that I have made that have destroyed my life and my family's I feel bad to know that I was a victim and a slave to the vices of alcohol and drugs. They dragged me and seduced me to do things I had never done before when I had a clear mind. Thank God that in prison I have had time to reflect and to realize all the harm that I have caused to this country, to my wife and my children, who have supported me so much during this time.

I was scared to make decisions that possibly could have changed my life but I was never able to make these decisions because I feared for my life and my family's, because I was surrounded by people who are capable of doing

anything.

I want to say something to the government and to Your Honor, that I have tried to cooperate and give all the information possible regarding my case because I recognize that I made a mistake and it is my duty to try to fix it in some way. I ask forgiveness to God and to Your Honor. I know that I deserve to be in prison and to repay my debt to society.

I also ask if I can be given an opportunity to be with my family as soon as possible.

That is it, but thank you.

I would like to add that I would like to go to a prison in Miami or close to Miami where my family lives, so that I can have contact with them there.

THE COURT: All right. Thank you

Ms. Kowalski?

MS. KOWALSKI: Your Honor, the government's letter details the manner in which Mr. Martinez's cooperation was useful to the government.

The only thing that I would like to add now is, I participated in many of the interview sessions with Mr. Martinez as we prepared for the trial against Mr. Ruiz. Just to, I suppose, add some credence to the contents of Mr. Granovo's letter, it was apparent to everybody who participated in those meetings that Mr. Martinez was genuinely

5

struggling between a sincere desire to be helpful and what appeared to be a very, very real fear about the consequences of part of what he had to say to us. He participated but it was -- he did seem to have to overcome a great deal of fear in order to do that.

THE COURT: Okay. Do you have any recommendation as to the appropriate sentence?

MS. KOWALSKI: I do not, Your Honor.

THE COURT: All right. Can someone tell me whether this is just -- on page nine of the presentence report it says the defendant has one criminal history point. Is that --

PROBATION OFFICER: That is a mistake. It should read no criminal history points.

I apologize, Your Honor.

THE COURT: He is a naturalized citizen, correct?

MS. KOWALSKI: Yes.

MR. DRANOVE: Yes, sir.

THE COURT: All right. While it is on my mind, it wasn't the first thing I intended to say but I will say it because it is on my mind.

I am about to confer a sentence on you that reflects substantial leniency because of your cooperation. I think you believe in your heart what you say about how you got all this behind you. I even think you might be right. But in a way I wish you could have been here 15 minutes ago. I had someone

CR      DCR      CM      CRR      CSR

before me whose guideline range was like yours, was even lower than yours. Yours is 135 to 168. I had someone before me who five years ago had the same kind of guideline range, except it was a little less, and he got a lenient sentence and then they let him out and then he immediately got back into violating the law and he was back before me. I haven't sentenced him yet but as he left I'm sure I ruined his day because I told him I was considering imposing a very lengthy jail sentence on him in part because he cooperated, earned the trust of the Court in the form of a very lenient sentence, and then abused that trust and violated the law again after he got out.

As I say, it wasn't the first thing I intended to mention to you. I didn't intend to start out by threatening you. I don't mean that to be a threat. But it is something I want you to remember down the road. You very much want this to be your last appearance before me ever. It matters to you because your fortunate, you are not going to have the INS swoop in and send you somewhere else. You are going to be on supervised release. You are going to be answerable to me for a substantial period of time after you get out of prison.

Let me get to where I would have started had I not had that other case on right before yours. There is a lot to be said that's good about you. I am sure you appreciate how serious this criminal activity was that you got involved in. I have no reason not to credit the argument, the assessment

8

advanced here, that you got involved in it because of your substance abuse. That doesn't excuse your crime but it makes it slightly more understandable. It is a very serious crime

One of the things you have going for you is your family, and I hope you appreciate how many families like yours got just torn to shreds, ripped to pieces by these drugs. It is why this seemingly endless war against drugs keeps getting fought No matter whether it's succeeding or not, the fact of the matter is on this end, in cities like ours, there are families that are just obliterated by these drugs.

But every other part of your life strikes me as belonging on the positive side of your ledger, including your family situation, certainly your cooperation with the government. You have an Assistant U.S. Attorney who comes into this courtroom with significant credibility who spoke strongly on your behalf That's why you are being sentenced as leniently as you are about to be sentenced, and the fact that she says so and the things that she says strike me as favoring a lenient sentence. You put yourself at risk Your cooperation accomplished some significant results for the government.

So from your guideline range of 135 to 168 months, I am departing downward to a sentence of 40 months in the custody of the Attorney General, to be followed by a five-year term of supervised release, a special condition of which is

BH          OCR          RM_          CRR          CSR

that you receive substance abuse treatment as directed by the Probation Department. I am not imposing a fine but I am imposing a special assessment, as I must.

You may well not regard this -- and I don't begrudge you if this is true -- you may not regard this as an especially lenient sentence because what you have been in for one year, correct?

MR. DRANOVE: Yes, sir.

THE COURT: All right. So it seems to me you probably have got 24, roughly 24 months left.

MR. DRANOVE: Yes.

THE COURT: I know that's painful for you, to have to deal with the fact that you are going to be away from your family for another 24 months. But whether you do or do not regard it as a lenient sentence, that is the sentence. It seems to me just in light of the severity of your offense. I hope some day you regard today as the next chapter in your life. You are not as young as some people that appear before me but you've got plenty ahead of you, plenty to live for, and I wish you well.

There is a right to appeal, probably.

MS. KOWALSKI: Yes.

THE COURT: You have a right to appeal, but I wouldn't lie awake at night wondering about whether to appeal. If you appealed you'd probably get your appeal dismissed, but

10

you do have a right to appeal to a higher court.

If you want to do that, you have to file a notice within ten days in this courthouse or you lose that right. If you can't afford a lawyer to represent you on appeal, one will be appointed for you.

Do you understand what I have said about that?

THE DEFENDANT: Yes.

THE COURT: Is there anything further today?

MS. KOWALSKI: There are some open counts. Counts two and three remain open and the government moves to dismiss them.

THE COURT: All right. Granted.

Anything further?

MR. DRAWDYE: No, Your Honor

Thank you very much

THE COURT: I recommend to the Bureau of Prisons that the defendant be incarcerated as close as possible to the Miami metropolitan area. I don't know if they can do that sir, but I will certainly recommend to them that they do so so you can be close to your family for the next couple of years before you are released.

Anything further?

MR. DRAWDYE: No, Your Honor

THE DEFENDANT Thank you

[Matter concludes ]

OR    OCR    CAR    CRR    CSR

Case 1:00-cr-00813... Document... Filed 24.07.25... Page 1 of 32 PageID #: ...

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                      Case No. 00-CR-00813 (JGH)

CARLOS ECHEVERRY,
RAYMOND GUTIERREZ,
GUSTAVO MARTINEZ,
and CARLOS RUIZ

Defendants.

## VERIFIED THIRD-PARTY MOTION TO INTERVENE AND UNSEAL

Third-Party Joaquin Mario Valencia-Trujillo (Third Party), proceeding pro se, moves to intervene and unseal[1] the filings in this 25-year old case pertaining to four (4) codefendants - Carlos Echeverry (Echeverry), Raymond Gutierrez (Gutierrez), Gustavo Martinez (Martinez), and Carlos Ruiz (Ruiz) - who entered guilty pleas and fully cooperated with the government regarding a conspiracy to possess more than a metric ton of cocaine with intent to distribute on May 1, 2000. The Third Party also moves for disclosure of portions of the Pre-Sentence Investigation Reports (PSRs) for each of these codefendants based on a special need explained herein. In support of this motion to intervene and unseal, the Third Party respectfully avers as follows:

---

[1] *In re Sealed Search Warrant*, 2008 U.S. Dist. LEXIS 107911, *1, 16.1 (S.D.N.Y.) (court construing a third party's letter motion as a motion to intervene and unseal). The cases of these four codefendants were filed in 2000 and were terminated in 2001.

1.  The docket sheet available on Pacer for Martinez's case, see Exhibit A, only allows access to the transcript of his sentencing held on May 18, 2001. See Exhibit B. No other case documents are available on Pacer.

2.  The transcript shows that Martinez cooperated with the government. See Exhibit B at p.5 ("Your Honor, the government's letter details the manner in which Mr. Martinez's cooperation was useful to the government.")

3.  As a result of his cooperation, Martinez received a 40-month term, below the mandatory minimum and his guideline range. See Exhibit B at p.8 ("COURT: Your cooperation accomplished some significant results for the government. So, from your guideline range of 135 to 169 months, I am departing downward to a *sentence of 40 months*") (emphasis added).

4.  The docket sheet available on Pacer for Echeverry's case, see Exhibit C, does not allow access to any documents, but it reveals that he received a *44-month term*, below the mandatory minimum and his guideline range, which sentence could only be imposed as a result of his cooperation.

5.  The docket sheet available on Pacer for Gutierrez's case, see Exhibit D, also does not allow access to any documents, but it reveals that he received a *44-month term*, below the mandatory minimum and his guideline range, which sentence could only be imposed as a result of his cooperation.

6.  The docket sheet available on Pacer for Ruiz's case, see Exhibit E, also does not allow access to any documents, but it reveals that he received a *62-month term*, below the mandatory minimum and his guideline range, which sentence could only be imposed as a result of his cooperation.

7.  The cases of these four codefendants were *terminated almost a quarter of a century ago*, but "SEALED ENDORSED ORDERS" were entered in the dockets of all four codefendants in mid-May 2006, more than three years after the last activity in their cases in 2003, as can be gleaned from review of their case dockets. See Exhibit A (Doc. 262 (05/17/2006) and Doc. 264 (05/19/2006)); Exhibit C (same); Exhibit D (same), Exhibit E (same). These "SEALED ENDORSED ORDERS" were entered *weeks before the the Third Party's trial was originally scheduled to commence in June 2006.*

7

Case 1:09-mc-XXXXX-XXX   Document 1   Filed 0X/XX/XX   Page X of XX PageID #: X

8. The Third Party was also indicted by a grand jury sitting in Tampa, Florida for the same conspiracy to possess the same kind of cocaine with the intent to distribute on May 1, 2000 in *United States v. Valencia Trujillo*, Case No. 02-CR-329-T-17-EAJ (M.D. Fla.)

9. The Third Party did not take the stand during his jury trial held in 2006, but he avers that he is actually innocent of any involvement whatsoever with the May 1, 2000 cocaine load, notwithstanding the guilty verdict.

10. The Third Party avers that, years after his jury trial, he obtained withheld evidence that proves that his conviction was tainted by perjured testimony given by the "star witness" as to the May 1, 2000 conspiracy, which the government knew was perjured, but failed to correct. *See United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) (where prosecutor knowingly used perjured testimony at trial, or failed to correct what he subsequently learned was false testimony, the falsehood will be deemed to be material "if there is any reasonable likelihood that the false testimony *could have affected* the judgment of the jury") (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added); *accord Giglio v. United States*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)).

11. The "star witness," Ramon O. Mejia, testified at the Third Party's trial that he only used one Johnny Cano (a.k.a. Santi, Santiago, Vicky, Victoria) and others of the North Valley Cartel, *including an unrelated* "Valencia," as cocaine sources *after* May 1, 2000 on multiple occasions. *See* Exhibit 5 (Transcript, 07/11/2006) at pp.146-147 ("Q. And what was your source of supply beginning in May 2000 until your arrest September of 2004? A. June, July, I started working with an individual by the name of Johnny Cano alias Santiago. Q. What year was that? June, July of 2000? A. 2000. Q. There were three people you mentioned yesterday, Vicky, Johnny Cano, and Rasguno. Were those sources ... of cocaine that you used beginning May of 2000, or did you use them before that at any point? A. After, correct. That's after May of 2000. ...Q. So you began developing sources of cocaine supply that were all the North Valley Cartel; is that safe to say? A. That is correct. Because after the first of May, Enrique started commenting - - or made a comment that I owed him money. And therefore, all the doors in Cali were closed to me, and I started working with the North Valley Cartel."); *id.* at p.150 ("Q. I want to be very clear with you, sir. Your testimony today is that your organization received no cocaine from Victoria before May 1st, 2000, correct? A. Correct."); *see also id.* at

Case 1:25-mc-01173-PCG    Document 1    Filed 01/06/25    Page 2 of 22 PageID #: 4

pp. 194-195 [!!]) And what were your other sources after May 1st of 2000? A. Johnny Cano, Ramon Quintero Pateman    And our last person Leyner Valencia    these people's names were all on the diskette that I handed to DEA Agent    Stoermer    where there is a very complete full detail of name, amount, date, cash or money, distribution, payments, all of it as contained in that diskette" Id. at p. 162 [!!]. And Leyner Valencia Q. was not related to the Valencia-Trujillo family? A. No, because these Valencias are from Samal Valle    Q. Again affiliated with the North Valley Cartel? A. Correct."). The diskette was never produced before or during the Third Party's 2006 trial. Said *withheld documentary evidence* obtained by the Third Party, years after his trial, contradicted the trial testimony. *See* Exhibit G (spreadsheet printout from the diskette produced by Ramon O. Mejia showing that "*Santi*" of the North Valley Cartel was a source for hundreds of kilograms of cocaine from March 2000 through the May 1, 2000 date of the seizure). Exhibit H (DEA S/A Stoermer's Report of May 1, 2006 interview with Ramon Orozco Mejia, weeks before the Third Party's trial (Johnny Cano, a.k.a Santiago, of North Valley Cartel was source of hundreds of kilograms for Ramon O. Mejia *starting in 1998, through, and after May 2000*).

12. Although Echeverry, Gutierrez, Martinez, and Ruiz cooperated regarding the exact same May 1, 2000 load, the government did not call them to testify at the Third Party's trial. Instead, U.S. Customs Agent John Kane testified at the Third Party's trial that surveillance captured these four (4) *above-mentioned codefendants* involved in the May 1, 2000 drug delivery. *See* Exhibit I.

13. The Third Party requests that the indictment and all judicial documents docketed and sealed in this case regarding the cooperation of these four (4) codefendants be unsealed and made available through Pacer.

14. Fully cognizant that he must present compelling reasons to obtain the Pre-Sentence Investigation Reports (PSRs) of these four (4) codefendants, the Third Party submits that his compelling need to obtain *Brady* material to *both prove his actual innocence* regarding the May 1, 2000 conspiracy in accordance with U.S. Supreme Court and Second Circuit jurisprudence should persuade this Court to order the disclosure of certain portions of the requested PSRs, as explained *infra*.

4

Case 1:25-xx-xxxxx-xxx   Document 1   Filed 04/07/25   Page 5 of 42 PageID #: 5

## ARGUMENT

## I. THE FIRST AMENDMENT TO THE U.S. CONSTITUTION AND THE COMMON LAW GUARANTEE ACCESS TO JUDICIAL DOCUMENTS

"In Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978), the Supreme Court held that there is a common law 'presumption . . . in favor of public access to judicial records.'" See United States v. Smith, 2019 U.S. Dist. LEXIS 121749, at *5 (E.D.N.Y. 2019) (quoting Nixon, 435 U.S. at 602) (alternative citations omitted)

"The Second Circuit has held that some judicial records are also entitled to a presumption of openness under the First Amendment." Smith at *5 (citing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)). The government cannot dispute that "the records at issue enjoy a qualified right of access under both the common law and the First Amendment." See id. at *5. Therefore, as the learned Senior Judge Glasser wrote in Smith, the merits of an application to unseal judicial documents "need only be analyzed under the 'stronger' First Amendment right." Id. at *5 (citing United States v. Erie County, N.Y., 763 F.3d 235, 239 (2d Cir. 2014))

The "well-settled" law requires that, "where a First Amendment presumption of access attaches to a judicial document, the document must be made public unless the court makes 'specific, on the record findings ... demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Id. at *6 (quoting Lugosch, 435 F.3d at 120).

1

Case 1:25-mc-01470-MDF   Document 1   Filed 03/03/25   Page 6 of 62 PageID #: 6

Senior Judge Glasser also explained that the "burden of proof that sealing or its continuance is warranted is borne by the party asserting it, and the "burden is a heavy one." *See Scott* at *8 (quoting *In re: Application to Unseal 98 Cr. 1101, 891 F. Supp. 2d 296, 299 (E.D.N.Y. 2012))* (emphasis added). Here, all documents should be unsealed, in whole, unless the government can show some reason to apply minor redactions *a quarter century after-the-fact.* The Court should "articulate the basis for any closure order, supplying sufficient basis for appellate review on the public record." *Id.* at *7 (citations and internal marks omitted).

"[U]nsealing may consequentially be required, even in the face of compelling interests for continued secrecy, if those interests are outweighed by an even more compelling need for disclosure." *Id.* at *10 (brackets added; citations omitted). Here, the Third Party has such a compelling need for disclosure to meet his high burden to present *credible and compelling evidence of actual innocence* that constitutionally ineffective trial counsel failed to present to show he had no involvement whatsoever in the conspiracy to possess more than a ton of cocaine on May 1, 2000. Additionally, the government's failure to correct the perjured testimony of Ramon Orozco Mejia, "the most important witness" presented during the Third Party's trial according to the jury foreman, Exhibit J, was prosecutorial misconduct that violated the right to a fair trial. *Abate* at 1110-1111 (remanding for new trial as defendant was "entitled to put his defense forward *free of the prosecutorial misconduct")* (emphasis added).

6

The Second Circuit has set forth a three-step inquiry to "determine whether the presumption attaches to a particular record." *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). Applying the three-step inquiry, the Court should find the requested records are "judicial documents" to which the presumption of public access attaches. The requested documents are "judicial documents" because they were all "relevant in the performance of the judicial function and useful in the judicial process." *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (citation omitted). "[W]here documents directly affect an adjudication . . . or are used to determine litigants' substantive rights, the presumption of access is at its zenith." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (brackets added, citations and internal quotation marks omitted). Because of the weight of the presumption of access, the government cannot identify any factors that legitimately weigh against disclosure of the requested judicial documents 25 years after-the-fact.

Where the cooperation of Echeverry, Gutierrez, Martinez, and Ruiz regarding the May 1, 2000 rescue conspiracy has already been made public, as in this case, the government's interest in protecting materials containing information regarding the cooperation that they provided disappears, and the Third Party's right to access should necessarily prevail. *See United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013); *United States v. Key*, 2010 WL 3724358, at *2-3 (E.D.N.Y. 2010); *see also In re Application in Cascal 98 Cr. 1191, supra*, 891 F.Supp.2d at 240.

## II. THE SPECIAL NEED TO ACCESS PORTIONS OF DEFENDANTS' PSRs

It is well-settled that there is no First Amendment right of access to PSRs, but the "analysis under the common law right of access is somewhat different. Since the presentence report is undoubtedly in the district court's possession, the common law right of access attaches to this document. However, the important question is what kind of showing will be sufficient to warrant disclosure of the contents of the report to a third party." *See United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989).

The Second Circuit requires a showing of special need before a third party can obtain a copy of a PSR as requested here. *See United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1174-1176 (2d Cir. 1983) (doisoning *Hancock Brothers, Inc. v. Jones*, 293 F.Supp. 1229, 1234 (N.D. Cal. 1968) in concluding PSRs may not be disclosed "in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice"); *accord Corbitt*, 879 F.2d at 239 ("Only where a compelling, particularized need for disclosure is shown should the district court disclose the report; even then, however, the court should limit disclosure to those portions of the report which are directly relevant to the demonstrated need."). Mindful of the limits on disclosing PSRs to third parties, this Third Party requests access to only those *portions* of these codefendants' PSRs that reveal the full extent of their cooperation as to the May 1, 2000 conspiracy "to meet the ends of justice" by providing corroboration of his *actual innocence* for his contemplated litigation.

This Third Party satisfies the "compelling, particularized need standard", *Corbitt, supra*, as a matter of law, as he must present *credible and compelling evidence of actual innocence* that constitutionally ineffective counsel failed to present at trial to show he had no involvement in the conspiracy to possess more than a level cocaine on May 1, 2000. *Sharp v. Rivers v. Docker*, 617 F.3d 514, 540-541 (2d Cir. 2012) ("petitioner seeking access to a federal habeas court, in the face of a procedural obstacle must advance both a legitimate constitutional claim and a credible and compelling claim of actual innocence. It is the combination of the two claims - that the petitioner is likely innocent and that his conviction was likely the result of nonharmless constitutional error - that permits a habeas court to review the petition notwithstanding procedural obstacles in order to avoid a miscarriage of justice."). *citing Schlup v. Delo*, 513 U.S. 298, 316 (1995)); *see also Alcorn* at 1110-1111 ("government failure to correct perjured testimony violates the constitutional right to a fair trial and constitutes "prosecutorial misconduct").

## III. THE LIST OF SEALED JUDICIAL DOCUMENTS TO BE UNSEALED AND ALL OTHER JUDICIAL DOCUMENTS DOCKETED IN THIS CASE.

The Third Party requests the unsealing of the same nine (9) sealed documents for each of the above-mentioned four (4) case codefendants which were docketed as ECF Doc. Nos. 136, 147, 157, 198, 199, and 261 through 264. The Third Party also requests that *all other judicial documents docketed in the case of these defendants, including the original Complaint filed in Magistrate Docket 00-mj-00748-RLM-6*, which are not available through Pacer, be made available for access through Pacer.

## IV. CONCLUSION

Almost 25 years have passed since this case indictment was filed in 2000; therefore, the government cannot articulate a valid interest in keeping any of the "judicial documents" filed in this case docket either sealed or unavailable on Pacer. There can be no dispute that the court filings constitute "judicial documents." Here, this Third Party has a compelling need to obtain access to all filings and portions of the PSRs that should prevail where the fact of the codefendants' cooperation is no secret for almost a quarter century, and the totality of the evidence strongly indicates that the "judicial documents" in this case will conclusively show that the Third Party is actually innocent of any connection with the cocaine load seized on May 1, 2000, which was changed later and in the Tampa, Florida indictment against the Third Party. The sealing of docketed documents "may be justified only by specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *See Lugosch, supra,* 435 F.3d at 124. If the Court decides that "compelling reasons" somehow still exist to deny public access to these documents, "the limitation should not be broader than necessary." *United States v. All Funds on Deposit at Wells Fargo Bank,* 643 F.Supp.2d 577, 585 (S.D.N.Y. 2009) (citing cases requiring disclosure with redactions). The government cannot suggest "specific findings" to legitimately justify continued sealing in these closed cases. *See United States v. Amodeo,* 44 F.3d 141, 147 (2d Cir. 1995).

Case 1:85-cr-03147-PKR    Document 1    Filed 03/2025    Page 1 of 32 PageID #: 1

## V. THE THIRD PARTY'S PRAYER FOR RELIEF

For all the foregoing reasons, the undersigned Third Party prays that the Court will enter an Order *forthwith* unsealing (1) all of the requested "judicial documents" in the dockets for the co-defendants Echeverry, Gutierrez, Martinez, and Ruiz, and *forthwith* disclosing (2) the requested portions of the PSRs for these co-defendants. Finally, the undersigned Third Party requests that all "judicial documents" docketed in all four (4) cases, sealed and unsealed, be made available through Pacer *forthwith*.

Respectfully submitted,

_____
Joaquin Mario Valdesar-Trujillo
Register Number 02640-748
FCI Oakdale II
2105 East Whatley Road
Oakdale, Louisiana 71463

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a true and correct copy of the foregoing THIRD-PARTY MOTION TO INTERVENE AND UNSEAL on the United States Attorney's Office for the Eastern District of New York by mail sent to 271 Cadman Plaza East, Brooklyn, NY 11201 on this ___1___ day of __March__, 2025

_____
Joaquin Mario-Valencia-Trujillo

11

Case 1:2... :31.:75-HER     Document :     Filed 05-07-25     Page 12 of 87   Page ID # 12

## VERIFICATION

I verify under penalty of perjury that the foregoing is true and correct and that the attached Exhibits are true and correct copies of their originals.

Executed on  1  of  March  , 2025

Joaquin Maria Valdez... Trujillo

Case 1:25-mc-71127-RFR   Document 1   Filed 04/07/23   Page 10 of 83 PageID # 13

# EXHIBIT A
## DOCKET SHEET (GUSTAVO MARTÍNEZ)

Case 1:75-mc-0001, Document 2    Filed 04/07/25    Page 14 of 82 PageID #: 15

U.S. District Court
Eastern District of New York (Brooklyn)
CRIMINAL DOCKET FOR CASE #: 1:96-cr-00515-JG-7

Case title: USA v. Perado, et al.                    Date Filed: 11/05/1996

Date Terminated: 05/27/2003

Assigned to: Judge John Gleeson

**Defendant (7)**

Gustavo Martinez                            represented by  Jack Kenneth Drummer
                                                            Joel Drummer
                                                            225 Broadway
                                                            Suite 1874
                                                            New York, NY 10007
                                                            (212) 619-3799
                                                            Fax: 212-619-3621
                                                            Email: jdrummer@gmail.com
                                                            TERMINATED: 08/27/2003
                                                            LEAD ATTORNEY
                                                            ATTORNEY TO BE NOTICED
                                                            Designation: Retained

**Pending Counts**                                          **Disposition**

21:846 and 841(b)(1)(A)(ii)(II); 18-3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO                                  Receives 49 month imprisonment, 5 years
DISTRIBUTE 5 KILOGRAMS OR MORE                              supervised release condition, $100.00
OF A SUBSTANCE CONTAINING                                   special assessment
COCAINE
(8s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                       **Disposition**

21:846 and 841(b)(1)(A)(ii)(II); 18-3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE                              Dismissed on Government's motion
OF A SUBSTANCE CONTAINING
COCAINE
(1)

21:841(a)(1) and 841(b)(1)(A)(ii)(II); 18:2
and 3551 et seq - DISTRIBUTE AND                            Dismissed on Government's motion.

A-15

Case 1:25-mc-0148-0-RER   Document 1   Filed 04/07/25   Page 1 of 82 Page ID #: 11

| Date | No. | Description |
|---|---|---|
| 05/19/2000 | 46 | NOTICE of print of FEDEX delivered to Jose Vasquez on 3/16/00. (Reddy, Lisa) (Entered: 05/19/2000) |
| 08/16/2000 | 47 | LETTER dated 8/15/00 from AUSA Pamela H. Barzer to Chester Tueller re opposition to Reyes motion regarding discovery of cigarette papers, additional drug records seized from drft. Carlos Keir after a personal search of his residence. (Reddy, Lisa) (Entered: 08/30/2000) |
| 09/25/2000 | 83 | LETTER dated 9/20/00 from AUSA Barzer to Chester re regarding the Statement of the 410.00 statement of Juan Jose Gonzalez. (Lee, Tiffany) (Entered: 09/25/2000) |
| 11/01/2000 | 85 | LETTER dated 10/24/00 from AUSA Barzer re Channel advising that the second bulk drug evidence will be destroyed 11/10/00. (Lee, Tiffany) (Entered: 11/01/2000) |
| 11/14/2000 | 89 | CALENDAR ENTRY as to Julian Morgan, Gustavo Martinez. Case called before Magistrate Joan M. Azrack on date of: 11/9/00 for Magistrate Proceeding. AUSA Barzer. Dfts in custody w/o order. Joel Deanna, Lawrence Feinstein, Tape # 06-95/5-845-845, Spanish Language Tape. Time excluded as to both dfts for the period of 11/9 - 12/18/00. (Lee, Tiffany) (Entered: 11/14/2000) |
| 11/09/2000 | 90 | ORDER of Excludable Delay as to Gustavo Martinez for the period of 11/9-12/18/01. Signed by Magistrate Joan M. Azrack, Dated 11/9/00 (Lee, Tiffany) (Entered: 11/14/2000) |
| 11/20/2000 | 95 | LETTER dated 11/17/00 from AUSA Barzer to Judge Gleeson providing estimate of trial length. (Lee, Tiffany) (Entered: 11/22/2000) |
| 12/04/2000 | 103 | ORDER as to Gustavo Martinez referring application for guilty plea to Magistrate Judge. Signed by Judge John Gleeson, on 11/30/00 (Lee, Tiffany) (Entered: 12/02/2000) |
| 12/04/2000 | 104 | CALENDAR ENTRY as to Gustavo Martinez. Case called before Magistrate Joan M. Azrack on date of 12/4/00 for Pleading. AUSA Barzer. Dft in custody w/atty Joel Deanna. Interpreter (Spanish) Esperanza Remirez. Tape # 00-81/0-835. Dft pleads gty to Gustavo Martinez (7 counts). Ct. Sentencing set for 2/2/01 @ 2:00 p.m. (Lee, Tiffany) (Entered: 12/05/2000) |
| 12/06/2000 | 105 | LETTER dated 12/17/99 from AUSA Barzer to Judge Gleeson estimating that the gov't's case will take 5 days. (Lee, Tiffany) (Entered: 12/07/2000) |
| 12/06/2000 | 107 | TRANSCRIPT of Criminal Cause for Guilty before Magistrate Azrack filed in case as to Gustavo Martinez for date of 12/4/00. Court Transcriber Rosalie Lombardi. Transcription Pgs 1-11. (Lee, Tiffany) (Entered: 12/07/2000) |
| 01/04/2001 | 110 | INTER-OFFICE MEMO from Stephen L. Brigham, SUSPO to Judge Gleeson dated 12/27/00 regarding Delay in Presentence Investigation. (Lee, Tiffany) (Entered: 01/04/2001) |
| 04/30/2001 | 136 | SEALED DOCUMENT: Letter dated 4/23/01. Placed in vault. (Dil Ventura, Krista) (Entered: 05/02/2001) |
| 05/11/2001 | 143 | CALENDAR ENTRY as to Gustavo Martinez. Case called before Judge John Gleeson on date of 5/10/01 for Sentencing. AUSA Kowalski. Dft pleaded w/atty Joel Deanna. Span Int. Azrack. Court Reporter Anthony Mancuso. Sentencing adj'd to 5/18/01 @ 12:00. (Lee, Tiffany) (Entered: 05/16/2001) |
| 05/16/2001 | 146 | LETTER dated 5/9/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to dft Miguel Medina. (Lee, Tiffany) (Entered: 05/16/2001) |
| 05/17/2001 | 148 | CALENDAR ENTRY as to Gustavo Martinez. Case called before Judge John Gleeson on date of 5/18/01 for Sentencing. AUSA Kowalski. Dft w/atty Joel Deanna, Esq. Int. |

| 07/05/2002 | 317 | LETTER dated 07/29/02 from Peter W. Till to USDJ Gleeson confirming that the sentencing has been adjourned from 09/24/02 to 12/20/02. Signed: Peter Kenneth. (Entered: 08/22/2002) |
| 04/01/2002 | 321 | TRANSCRIPT of Waiver of Speedy Trial and release as to Gustavo Martinez, Julian Morales for dates of 11-9-00, Court Transcription. Transcription Phil, U. Rudolc Transcri. Transcript filed in Judge Gleeson (Doc. #8)(ny)) (Entered: 04/01/2002. |
| 01/10/2003 | 319 | LETTER dated 12/26/02 from Ernesto Pel... to Judge Gleeson in lieu of a formal motion. (DeLorenzo, Kristi) (Entered: 01/10/2003) |
| 05/17/2006 | 261 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/17/2006) |
| 05/17/2006 | 262 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack (Piper, Francine) (Entered: 05/17/2006) |
| 05/19/2006 | 263 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 05/19/2006 | 264 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 07/31/2006 | 265 | TRANSCRIPT of Sentencing as to Gustavo Martinez held on 5-18-01 before Judge Gleeson. Court Reporter: Gene Rudolph. AUSA Nikki Kowalski. Defense Counsel Joel Dranove. (Piper, Francine) (Entered: 07/31/2006) |

# SENTENCING TRANSCRIPT (GUSTAVO MARTINEZ)

# EXHIBIT B

# SENTENCING TRANSCRIPT (GUSTAVO MARTINEZ)

FILED
In Clerk's Office
U.S. District Court E.D.N.Y.
★ JUL 31 2001 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                   CR 00-515 (JG)

-against-
                                            United States Courthouse
                                            Brooklyn, New York
GUSTAVO MARTINEZ,

                                            May 18, 2001
          Defendant.                        10:30 o'clock a.m.

- - - - - - - - - - - - - x

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JOHN GLEESON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          NIKKI KOWALSKI
                             Assistant United States Attorney
                             One Pierrepont Plaza
                             Brooklyn, New York

For the Defendant:           JOEL DRANOVE, ESQ.

Court Reporter:              Gene Rudolph
                             225 Cadman Plaza East
                             Brooklyn, New York
                             (718) 260-2538

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

GR        OCR        CM        CRR        CSR

2

THE CLERK: United States versus Martinez

(The interpreter is duly sworn.)

THE COURT: Are you ready to proceed?

MR. DRANOVE: Yes.

MS. KOWALSKI: Yes.

THE COURT: Okay. I see no reason not to accept the recommendation that I accept the plea of guilty, having reviewed those minutes before Judge Azrack.

Is there any reason I shouldn't accept the plea?

MS. KOWALSKI: No, Your Honor.

MR. DRANOVE: No, Your Honor.

THE COURT: Okay. I accept it.

Is there any objection to the presentence report or the addendum to it?

MR. DRANOVE: No, Your Honor.

MS. KOWALSKI: No, Your Honor.

THE COURT: Okay. Do you want to be heard?

I have Ms. Kowalski's letter of May 10th.

MR. DRANOVE: Yes, Your Honor. I wrote a letter forwarded it on Wednesday. It may not have been received by Your Honor. I read it to Ms. Kowalski. I am offering a copy of it up to Your Honor.

THE COURT: Thank you.

MR. DRANOVE: The original was signed.

THE COURT: All right. Would you like to be heard

Case 1:05-mc-8147-SCR   Document 3   Filed 04/07/05   Page 34 of 52 PageID: 34

any further?

MR. DRANOVE. Yes, Your Honor.

I want to inform the Court that my client for many weeks after I first met him, when I was in his presence, was shaking and ultimately -- physically just shaking, and ultimately I discovered it was from the fact that as a result of his awareness of what he was in the midst of he had begun drinking extraordinarily and in fact using cocaine at the same time. He saw no way out and he went forward and he, middle-aged gentleman, turned his life around and . in a criminal manner.

After coming to this country, working hard, becoming a citizen, he returned home in 1999 to Armenia, Colombia, where there had been a terrible earthquake and for reasons we will -- we can conjecture about, he made a decision. That was a catastrophe for himself and his family and he understands this.

The complete record before Your Honor is understood by all. My client is ready to proceed. He wishes to make a statement on his own behalf.

That's the conclusion of my remarks, Your Honor.

THE COURT: All right. Mr. Dranove. Thank you.

MR. DRANOVE: You are welcome.

THE COURT: Sir, you have a right to speak. Is there anything you would like to say?

GR     OCR     CM     CRR     CSR

Case 1:25-mj-01477-RER   Document 1   Filed 04/07/25   Page 25 of 42 PageID #: 25
Case 1:25-mj-01477-RER   Document 20-1   Filed 04/07/25   Page 4 of 15 PageID #: 35

THE DEFENDANT: Yes

THE COURT: Go ahead

THE DEFENDANT: Am I going to tell you and then you tell the judge?

THE COURT: No. Speak directly to me

THE DEFENDANT: I am very nervous. I write it in Spanish.

THE COURT: That's all right. Everybody is nervous. You should be nervous. Don't let it get in the way of reading your statement.

THE DEFENDANT: Your Honor. I want to tell you that I am very ashamed because of my mistakes and all the pain I have caused to those who love me. It hurts to remember the decisions, the decisions that I have made that have destroyed my life and my family's. I feel bad to know that I was a victim and a slave to the vices of alcohol and drugs. They dragged me and seduced me to do things I had never done before when I had a clear mind. Thank God that in prison I have had time to reflect and to realize all the harm that I have caused to this country, to my wife and my children, who have supported me so much during this time.

I was scared to make decisions that possibly could have changed my life but I was never able to make those decisions because I feared for my life and my family's, because I was surrounded by people who are capable of doing

GR        DCR        CM        CRR        CSR

A-10

Case: 1:25-cr-33479958   Document 1   Filed 04/3.026   Page 25 of 82 Page ID # 1a
Case 1:08-cr-20525-28   Document 705   Filed 03/1:05   Page 5 of 10 Page ID # 31

anything.

I want to say something to the government and to Your Honor, that I have tried to cooperate and give all the information possible regarding my case because I recognize that I made a mistake and it is my duty to try to fix it in some way. I ask forgiveness to God and to Your Honor. I know that I deserve to be in prison and to repay my debt to society.

I also ask if I can be given an opportunity to be with my family as soon as possible.

That is it, but thank you.

I would like to add that I would like to go to a prison in Miami or close to Miami where my family lives, so that I can have contact with them there.

THE COURT: All right. Thank you.

Ms. Kowalski?

MS. KOWALSKI: Your Honor, the government's letter details the manner in which Mr. Martinez's cooperation was useful to the government.

The only thing that I would like to add now is, I participated in many of the interview sessions with Mr. Martinez as we prepared for the trial against Mr. Ruiz. Just to, I suppose, add some credence to the contents of Mr. Dranove's letter, it was apparent to everybody who participated in those meetings that Mr. Martinez was genuinely

struggling between a sincere desire to be helpful and what appeared to be a very, very real fear about the consequences of part of what he had to say to us. He participated but it was -- he did seem to have to overcome a great deal of fear in order to do that.

THE COURT: Okay. Do you have any recommendation as to the appropriate sentence?

MS. KOWALSKI: I do not, Your Honor.

THE COURT: All right. Can someone tell me whether this is just -- on page nine of the presentence report it says the defendant has one criminal history point. Is that --

PROBATION OFFICER: That is a mistake. It should read no criminal history points.

I apologize, Your Honor.

THE COURT: He is a naturalized citizen, correct?

MS. KOWALSKI: Yes.

MR. DRAGONE: Yes, sir.

THE COURT: All right. While it is on my mind, it wasn't the first thing I intended to say but I will say it because it is on my mind.

I am about to confer a sentence on you that reflects substantial leniency because of your cooperation. I think you believe in your heart what you say about how you got all this behind you. I even think you might be right. But in a way I wish you could have been here 15 minutes ago. I had someone

GR    OCR    CM    CRR    CSR

7

before me whose guideline range was like yours, was even lower than yours. Yours is 135 to 169. I had someone before me who five years ago had the same kind of guideline range, except it was a little less, and he got a lenient sentence and then they let him out and then he immediately got back into violating the law and he was back before me. I haven't sentenced him yet but as he left I'm sure I ruined his day because I told him I was considering imposing a very lengthy jail sentence on him in part because he cooperated, earned the trust of the Court in the form of a very lenient sentence, and then abused that trust and violated the law again after he got out.

As I say, it wasn't the first thing I intended to mention to you. I didn't intend to start out by threatening you. I don't mean that to be a threat. But it is something I want you to remember down the road. You very much want this to be your last appearance before me ever. It matters to you because your fortunate, you are not going to have the INS swoop in and send you somewhere else. You are going to be on supervised release. You are going to be answerable to me for a substantial period of time after you get out of prison.

Let me get to where I would have started had I not had that other case on right before yours. There is a lot to be said that's good about you. I am sure you appreciate how serious this criminal activity was that you got involved in. I have no reason not to credit the argument, the assessment

OR     OCR     CM     CRR     CSR

advanced here, that you got involved in it because of your substance abuse. That doesn't excuse your crime but it makes it slightly more understandable. It is a very serious crime.

One of the things you have going for you is your family, and I hope you appreciate how many families like yours get just torn to shreds, ripped to pieces by these drugs. It is why this seemingly endless war against drugs keeps getting fought. No matter whether it's succeeding or not, the fact of the matter is on this end, in cities like ours, there are families that are just obliterated by these drugs.

But every other part of your life strikes me as belonging on the positive side of your ledger, including your family situation, certainly your cooperation with the government. You have an Assistant U.S. Attorney who comes into this courtroom with significant credibility who speaks strongly on your behalf. That's why you are being sentenced as leniently as you are about to be sentenced, and the fact that she says so and the things that she says strike me as favoring a lenient sentence. You put yourself at risk. Your cooperation accomplished some significant results for the government.

So from your guideline range of 135 to 168 months, I am departing downward to a sentence of 40 months in the custody of the Attorney General, to be followed by a five-year term of supervised release, a special condition of which is

that you receive substance abuse treatment as directed by the Probation Department. I am not imposing a fine but I am imposing a special assessment, as I must.

You may well not regard this -- and I don't begrudge you if this is true -- you may not regard this as an especially lenient sentence because what you have been in for one year, correct?

MR. DRANOVE: Yes, sir.

THE COURT: All right. So it seems to me you probably have got 24, roughly 24 months left.

MR. DRANOVE: Yes.

THE COURT: I know that is painful for you, to have to deal with the fact that you are going to be away from your family for another 24 months. But whether you do or do not regard it as a lenient sentence, that is the sentence. It seems to me just in light of the severity of your offense. I hope some day you regard today as the next chapter in your life. You are not as young as some people that appear before me but you've got plenty ahead of you, plenty to live for, and I wish you well.

There is a right to appeal, probably.

MS. KOWALSKI: Yes.

THE COURT: You have a right to appeal, but I wouldn't lie awake at night wondering about whether to appeal. If you appealed you'd probably get your appeal dismissed, but

you do have a right to appeal to a higher court

If you want to do that, you have to file a notice within ten days in this courthouse or you lose that right. If you can't afford a lawyer to represent you on appeal, one will be appointed for you

Do you understand what I have said about that?

THE DEFENDANT: Yes.

THE COURT: Is there anything further today?

MS. KOWALSKI: There are some open counts. Counts two and three remain open and the government moves to dismiss those

THE COURT: All right. Granted.

Anything further?

MR. DRAMOVE: No, Your Honor.

Thank you very much.

THE COURT: I recommend to the Bureau of Prisons that the defendant be incarcerated as close as possible to the Miami metropolitan area. I don't know if they can do that, sir, but I will certainly recommend to them that they do so so you can be close to your family for the next couple of years before you are released.

Anything further?

MR. DRAMOVE: No, Your Honor.

THE DEFENDANT: Thank you.

(Matter concludes.)

Case 1:22-mc-82419-MER    Document 1    Filed 03-23-26    Page 92 of 82 Page ID # 92

# EXHIBIT C

## DOCKET SHEET (CARLOS ECHEVERRY)

Case 1:06-cr-00515-RRR    Document 1    Filed 04-07-26    Page 33 of 37 PageID #: 33

CLOSED

**U.S. District Court**
**Eastern District of New York (Brooklyn)**
**CRIMINAL DOCKET FOR CASE #: 1:06-cr-00515-JG-12**

Case title: U.S.A. v. Decastro et al                     Date Filed: 05-15-2006

Magistrate judge case number: 1:06-mj-00546          Date Terminated: 06-08-2006

Assigned to: Judge John Gleeson

**Defendant (12)**

Carlos Echeverry                          represented by   Richard E. Mischel
TERMINATED: 06-08-2006                                      32 Court Street
                                                           Room 404
                                                           Brooklyn, NY 11201
                                                           (718) 875-4444
                                                           Assigned High Impact Agency
                                                           LEAD ATTORNEY
                                                           ATTORNEY TO BE NOTICED
                                                           Designation: CJA Appointment

                                                           Roy Raymond John Kulcsar
                                                           Law Office of Roy R. Kulcsar
                                                           27 Union Square West
                                                           Suite 503
                                                           New York, NY 10003
                                                           (212) 352-1700
                                                           Fax: 201-459-1478
                                                           Email: rk@rwk.aol.com
                                                           TERMINATED: 06-07-2006
                                                           LEAD ATTORNEY
                                                           ATTORNEY TO BE NOTICED
                                                           Designation: Retained

**Pending Counts**                                        **Disposition**

21:846 and 841(b)(1)(A)(ii)(II); 18:02, et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE          Receives 48 months imprisonment; 5 years
OF A SUBSTANCE CONTAINING                supervised release w/conditions; $ 100.00
COCAINE                                  special assessment
(1s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts** | **Disposition**

21:846 and 841(b)(1)(A)(ii)(II), 853 et seq - CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF A SUBSTANCE CONTAINING COCAINE
(1)

Open counts dismissed on government's motion

21:846 and 841(b)(1)(A)(ii)(II), 853 et seq - CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF A SUBSTANCE CONTAINING COCAINE
(1s)

Open counts dismissed on government's motion

21:841(a)(1) and 841(b)(1)(A)(ii)(II) and 853 et seq - DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF A SUBSTANCE CONTAINING COCAINE
(2ss)

Open counts dismissed on government's motion

**Highest Offense Level (Terminated)**

Felony

**Complaints** | **Disposition**

None

**Plaintiff**

USA    represented by **John R. Kruger**
United States Attorney's Office
Criminal Division
One Pierrepont Plaza
Brooklyn, NY 11201
718-xxx-xxxx
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 05/01/2000 | 1 | COMPLAINT as to Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Castillo, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Guerra ( 1 90-m -748 ) (Palomo, Manuel) (Entered: 05/02/2000) |
| 05/01/2000 | | ARREST of Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Castillo, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez- |

Case 1:25-cr-00379-RTR    Document 1    Filed 05/01/25    Page 35 of 42 PageID #: 35

Mag[...] [...] [...] (Balance, Marcie) (Entered: 05/23/2020)

05/01/2000  2  Magistrate Arraignment as to Gustavo Martinez, Jose Carlos Garcia, Juan Carlos Pau[...], Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez held before Magistrate [...] AUSA [...] present, all Defendant informed of rights and all defendants were appointed an attorney. Proceeding taped on 00:09 12:15-2:00[...] (Balance, Marcie) (Entered: 05/02/2000)

05/01/2000    ORDER OF DETENTION as to Gustavo Martinez, Jose Carlos Garcia, Juan Carlos Garcia, Raymond Gutierrez, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez Signed by Magistrate [...] Mann, dated [...] (Balance, Marcie) (Entered: 05/02/2000)

05/01/2000    A preliminary hearing set for 5/15/00 at 10:30 a.m. as to Carlos Echeverry, [...] (Balance, Marcie) (Entered: 05/02/2000)

05/12/2000    NOTICE of Appearance for Carlos Echeverry by Attorney Roy R. Kulcsar, [...] (Kulcsar, Roy) (Entered: 05/15/2000)

06/15/2000    Magistrate Arthur has been selected by random selection to handle any matters that may be referred in this case. (Reddy, Lisa) (Entered: 05/[...]/2000)

05/15/2000  10  CALENDAR ENTRY as to Carlos Echeverry. Case called on 5/15/00 for grand jury presentment before Magistrate Judge. (Reddy, Lisa) (Entered: 05/18/2000)

05/[...]/2000  11  INDICTMENT as to Carlos Echeverry (1) count(s) 1. (Reddy, Lisa) (Entered: 05/18/2000)

05/23/2000  12  SUPERSEDING INDICTMENT as to Carlos Echeverry (1) count(s) 1s, Hernan Barona Dorado (2) count(s) 1, Jose Peralta (3) count(s) 1, Julian Morales 4) count(s) 1, Juan Leon Marulanda-Valencia (5) count(s) 1, Jose Gonzalez (6) count(s) 1, Jose M. Rodriguez (7) count(s) 1, Gustavo Martinez (8) count(s) 1, Juan Carlos Garcia (9) count(s) 1, Manuel F. Fernandez (10) count(s) 1, Raymond Gutierrez (11) count(s) 1, Carlos Arturo Ruiz (12) count(s) 1, Ernesto Feliz (13) count(s) 1, Alexis Fernandez-Vasquez (14) count(s) 1, Hector Fabio Lasira (15) count(s) 1. (Reddy, Lisa) (Entered: 05/29/2000)

05/03/2000  14  CALENDAR ENTRY as to Hernan Barona Dorado, Jose Peralta, Julian Morales, Juan Leon Marulanda-Valencia, Jose E. Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Manuel E. Fernandez, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Lasira. Case called before Judge John Gleeson on 5/2/00 for arraignment. AUSA Elaine Banar and defendants present with counsel, except d8. Dorado, a fugitive, and d[...]. Rodriguez not present. Court Reporter: Molly Driscoll. Defendants plead Not Guilty. Jose (2) count(s) 1, Julian Morales (3) count(s) 1, Juan Leon Marulanda-Valencia (4) count(s) 1, Jose E. Gonzalez (5) count(s) 1, Jose M. Rodriguez (6) count(s) 1, Gustavo Martinez (7) count(s) 1, Jose Carlos Garcia (8) count(s) 1, Manuel E. Fernandez (9) count(s) 1, Raymond Gutierrez (10) count(s) 1, Carlos Arturo Ruiz (11) count(s) 1, Carlos Echeverry (12) count(s) resp. 1, 1s, Ernesto Feliz (13) count(s) 1. Atty. David Gonzalez standing in for arraignment purposes for attys. James Kousouros and Ray Kulcsar. Next conference set for 7/21/00 at 3:00. (Reddy, Lisa) (Entered: 05/09/2000)

06/16/2000  20  LETTER as to Hernan Dorado, et al, dated @16/00 from AUSA Elaine D. Banar to Counsel, providing and requesting discovery. (No attachments). (Reddy, Lisa) (Entered: 05/19/2000)

06/19/2000  22  SUPERSEDING INDICTMENT as to Hernan Barona Dorado (1) count(s) 1s, 2s, 4s, Jose Peralta (2) count(s) 1s, 4s, Julian Morales (3) count(s) 1s, 4s, Juan Leon Marulanda-Valencia (4) count(s) 1s, 2s, 4s, Jose E. Gonzalez (5) count(s) 1s, 4s, Jose M. Rodriguez

A-[...]

| Date | # | Entry |
|---|---|---|
| 09/08/2000 | 58 | CALENDAR ENTRY as to Carlos Echeverry. Case called before Judge John Gleeson at 9:30AM for arraignment. AUSA Elaine Banar and dft. present with counsel Roy Kulcsar, Court Reporter: Holly DeMaio. Interpreter: Francisco Guerra (Spanish). Dft. pleads Not Guilty. Carlos Echeverry (12) count(s) 1ss. Speedy trial waived from 9/8/00 to 9/25/00 (Rudd). Trial Restored 09/12/2000. |
| 09/21/2000 | 61 | LETTER dated 9/20/00 from AUSA Banar to All Counsel furnishing final inventory - the 4/10/00 statement of Juan Jose Gonzalez (Lee, Tiffany) (Entered: 09/22/2000) |
| 09/27/2000 | 62 | CALENDAR ENTRY as to Carlos Echeverry. Case called before Judge John Gleeson on date of 9/27/00 for Pleading. AUSA Banar, Dft present w/atty Roy Kulcsar, Esq., Interpreter: Anna Silvano (Spanish), Court Reporter: Marsha Diamond. Dft. pleads Guilty. Carlos Echeverry (12) count(s) 1ss. Setting Sentencing for 2/9/0 on 12/19/00 for Carlos Echeverry. Dft request return of property, order entered. (Lee, Tiffany) (Entered: 10/05/2000) |
| 11/15/2000 | 63 | LETTER dated 10/24/00 from AUSA Banar to Counsel advising that the seized bulk drug evidence will be destroyed 11/10/00. (Lee, Tiffany) (Entered: 11/15/2000) |
| 11/20/2000 | 98 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson providing estimate of trial length (Lee, Tiffany) (Entered: 11/22/2000) |
| 12/05/2000 | 106 | LETTER dated 12/1/00 from AUSA Banar to Judge Gleeson estimating that the gov't. case will take 8 days. (Lee, Tiffany) (Entered: 12/05/2000) |
| 03/05/2001 | 132 | INTER-OFFICE MEMO from Stephen L. Bingham, AUSPO to Judge Gleeson dated 12/20/00 regarding Delay in Presentence Investigation. (Lee, Tiffany) (Entered: 03/05/2001) |
| 04/30/2001 | 136 | SEALED DOCUMENT. Letter dated 4/24/01. Placed in vault. (DiLorenzo, Kristi) (Entered: 05/02/2001) |
| 05/15/2001 | 140 | LETTER dated 5/3/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to dft. Miguel Medina. (Lee, Tiffany) (Entered: 05/16/2001) |
| 05/18/2001 | 142 | LETTER dated 5/8/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/1/01. (Lee, Tiffany) (Entered: 05/21/2001) |
| 05/18/2001 | 143 | LETTER dated 5/14/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/15/01. (Lee, Tiffany) (Entered: 05/21/2001) |
| 05/21/2001 |  | ENDORSED ORDER. Signed by Judge John Gleeson on 5/15/01. The sentence is adjourned to 6/8/01 @ 2:00. So ordered. Signed Judge John Gleeson on 5/15/01. (Lee, Tiffany) (Entered: 05/21/2001) |
| 05/23/2001 | 147 | SEALED DOCUMENT. seal placed in vault. (Lee, Tiffany) (Entered: 05/23/2001) |
| 06/08/2001 | 150 | CALENDAR ENTRY as to Carlos Echeverry. Case called before Judge John Gleeson on date of 6/8/01 for Sentencing. AUSA Kowalski; US w/atty Roy Kulcsar; Span Int. A. Schreier-Sween; Court Reporter: Stan Sulzer. Receives 46 months imprisonment, 3 yrs s/r; $100 s/a. If deported, dft may not re-enter the US illegally. Court recommends dft be designated to the Coleman Corr Facility in FL, if consistent w BOP policy. (Lee, Tiffany) (Entered: 06/11/2001) |
| 06/08/2001 |  | Sentencing held Carlos Echeverry (12) count(s) 1ss. (Lee, Tiffany) (Entered: 06/11/2001) |
| 06/11/2001 | 151 | JUDGMENT Carlos Echeverry (12) count/s. 1ss. Receives 46 months imprisonment, 3 years supervised release, w/condition that if the dft. is deported he may not re-enter the U.S. illegally; $ 100.00 special assessment. Court recommends that the dft be designated to the Coleman Correctional Facility in Florida, if this is consistent w/BOP policy. Oper. |

| | | |
|---|---|---|
| 05/11/2001 | | TRANSMITTAL of Transcripts Governments Motion [illegible] |
| 04/11/2001 | | SEALED DOCUMENT placed in vault (Doc. Delery) (Entered: 09/12/2001) |
| 07/11/2001 | | Certified copy of docket sheet sent to USCA [164-1] appeal (McIver, Marjorie) (Entered: 09/11/2001) |
| 08/30/2006 | | Certified copy of docket sheet sent to USCA [165-1] appeal (McIver) (Entered: 08/30/2001) |
| 10/15/2007 | 186 | LETTER dated 10/12/01 from Judge Gleeson to Mr. Fernandez thanking him for his concern during the 9/11/01 tragic events (D. Lorenzo, Kristn) (Entered: 10/15/2001) |
| 10/15/2001 | 187 | LETTER dated 9/28/01 from Rafael A. Fernandez to Judge Gleeson regarding the tragic tragedies of the 9/11 (DiLorenzo, Kristn) (Entered: 10/15/2001) |
| 11/30/2009 | 188 | LETTER dated 11/19/01 from Peter Till to Mary Gonzalez, confirming the adjournment of the 11/21/01 event for 11/30/01 at 10:30 (D. Lorenzo, Kristn) (Entered: 12/06/2001) |
| 12/08/2001 | 198 | SEALED DOCUMENT placed in vault (DiLorenzo, Kristn) (Entered: 12/09/2001) |
| 12/11/2001 | 199 | SEALED DOCUMENT placed in vault (DiLorenzo, Kristn) (Entered: 12/12/2001) |
| 01/31/2002 | 206 | ORDER directing the Gov't to forward a copy of this letter immediately to the Warden of MDC and to provide a response in writing no later than 02/08/02 (Signed by Judge John Gleeson on 01/28/02) See letter dated 01/14/02 from Samantha Cruz-Fernandez to USD] Gleeson's Chambers. (Noh, Kenneth) (Entered: 01/31/2003) |
| 02/07/2002 | 207 | LETTER dated 01/29/02 from Peter W Till to USD] Gleeson confirming that the sentencing has been adjourned from 02/01/02 to 02/22/02 at 2pm. (Noh, Kenneth) (Entered: 02/07/2002) |
| 01/10/2003 | 208 | LETTER dated 12/26/02 from Ernesto Felix to Judge Gleeson, in lieu of a formal motion (DiLorenzo, Kristn) (Entered: 01/10/2003) |
| 05/17/2006 | 261 | Sealed Letter placed in vault as per order of Mag. Azrack (Piper, Francine) (Entered: 05/17/2006) |
| 05/17/2006 | 262 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack (Piper, Francine) (Entered: 05/17/2006) |
| 05/19/2006 | 263 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 05/19/2006 | 264 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |

# DOCKET SHEET (RAYMOND GUTIERREZ)

# EXHIBIT D

# DOCKET SHEET (RAYMOND GUTIERREZ)

PROPOSED

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-10

Case title: USA v. Escurra, et al          Date Filed: 09/13/2000

Date Terminated: 03/05/2002

Assigned to: Judge John Gleeson

**Defendant (10)**

Raymond Escurra
TERMINATED: 03/05/2002

represented by Alan M. Nelson
Alan Nelson Esq
3000 Marcus Avenue
Lake Success, NY 11042
(516) 374-6224
Fax: 516-328-6394
Email: anelsonlaw@aol.com
TERMINATED: 03/05/2002
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Retained

**Pending Counts**

21 846 and 841(b)(1)(A)(ii)(II), 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

21 846 and 841(b)(1)(A)(ii)(II), 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1)

21:841(a)(1) and 841(b)(1)(A)(iii)(II), 18:2
and 3551 et seq.- DISTRIBUTE AND
POSSESS WITH INTENT TO

**Disposition**

Rec'd sen 44 months imprisonment 3 years
supervised release & spec assm; $100.00
special assessment.

**Disposition**

Dismissed on government's motion

Dismissed on government's motion

HIGHEST OFFENSE LEVEL (Opening)
Felony

DISTRICT (Prgrams OR None)
of a SUBSTANCE CONTAINING

OFFENSE
(a)

Highest Offense Level (Terminated)
Felony

Complaints                                          Disposition
None

Plaintiff
USA                                 represented by John H. Knoger
                                                   United States Attorney's Office
                                                   Criminal Division
                                                   One Pierrepont Plaza
                                                   Brooklyn, NY 11201
                                                   234-9125
                                                   LEAD ATTORNEY
                                                   ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 05-15-2000 | | Magistrate Azrack has been selected by random selection to hear any matters that may be referred in this case (Reddy, Lisa) (Entered: 05/16/2000) |
| 05-22-2000 | 17 | SUPERSEDING INDICTMENT as to Carlos Echeverry (1) count(s) 1s, Hernan Bacca Dorado (2) count(s) 1, Jose Peralta (3) count(s) 1, Julian Morales (4) count(s) 1, Jairo Leon Marulanda-Valencia (5) count(s) 1, Jose Gonzalez (6) count(s) 1, Jose M. Rodriguez (7) count(s) 1, Gustavo Martinez (8) count(s) 1, Juan Carlos Garcia (9) count(s) 1, Manuel F. Fernandez (10) count(s) 1, Raymond Gutierrez (11) count(s) 1, Carlos Arturo Ruiz (12) count(s) 1, Ernesto Feliz (13) count(s) 1, Alexis Fernandez-Vasquez (14) count(s) 1, Hector Fabio Loaiza (15) count(s) 1. (Reddy, Lisa) (Entered: 05/23/2000) |
| 06-02-2000 | 14 | CALENDAR ENTRY as to Hernan Bacca Dorado, Jose Peralta, Julian Morales, Jairo Leon Marulanda-Valencia, Jose F. Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Manuel F. Fernandez, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/2/00 for arraignment. AUSA Elaine Banar and defendants present with counsel, except d5. Dorado, a fugitive, and d9. Rodriguez, not present. Court Reporter: Holly Driscoll. Defendants plead Not Guilty. Jose (2) count(s) 1, Julian Morales (3) count(s) 1, Jairo Leon Marulanda-Valencia (4) count(s) 1, Jose F. Gonzalez (5) count(s) 1, Jose M. Rodriguez (6) count(s) 1, Gustavo Martinez (7) count(s) 1, Juan Carlos Garcia (8) count(s) 1, Manuel F. Fernandez (9) count(s) 1, Raymond Gutierrez (10) count(s) 1, Carlos Arturo Ruiz (11) count(s) 1, Carlos Echeverry (12) count(s) cmp. 1, 1s, Ernesto Feliz (13) count(s) 1. Atty. David Goldstein standing in for arraignment purposes for attys. James Kousouros and Ray Kelman. Next conference set for 7/21/00 at 3:00. (Reddy, Lisa) (Entered: 06/03/2000) |
| 06-16-2000 | 20 | LETTER as to Hernan Dorado, et al., dated 6/16/00 from AUSA Elaine D. Banar to Counsel, providing and requesting discovery. (No attachments). (Reddy, Lisa) (Entered: |

42

Case 2:00-cr-00279-RLR   Document 1   Filed 06/19/2005   Page 43 of 50 PageID #: 43

| Date | # | Docket Entry |
|---|---|---|
| | | 06/19/2000 |
| 06/19/2000 | 22 | [SUPERSEDING INDICTMENT as to Herman Barrera Dorado (4) count(s) 1s, 2s, 4s, Jose Peralta (2) count(s) 1s, 4s, Julian Morales (3) count(s) 1s, 4s, Juan Leon Marulanda-Valencia (4) count(s) 1s, 2s, 3s, Jose F. Gonzalez (5) count(s) 1s, 4s, Jose M. Rodriguez (6) count(s) 1s, 4s, Gustavo Martinez (7) count(s) 1s, 2s, Juan Carlos Garcia (8) count(s) 1s, Manuel T. Hernandez (9) count(s) 1s, 2s, 3s, Raymond Gutierrez (10) count(s) 2s, 3s, Carlos Arturo Reina (11) count(s) 1s, 2s, Carlos Echeverry (12) count(s) 1ss, 2ss, Ernesto Perez (13) count(s) 1s, 2s, Alex J. Fernandez-Vazquez (14) count(s) 1s, 2s, Hector Fabio Trevol (15) count(s) 1s, 4s. (Reddy, Lisa) (Entered: 06/22/2000)] |
| 06/29/2000 | 24 | FAST ID AK ENTRY as to Jose Peralta, Julian Morales, Juan Leon Marulanda-Valencia, Jose F. Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Raymond Gutierrez, Carlos Echeverry, Ernesto Perez, Alex J. Fernandez-Vazquez, Hector Fabio Trevol. Case called before Judge John Gleeson on 6/29/00 for status conference. AUSA Elaine Banar and defendants present with counsel. Court Reporter: Shelly Silverman Interpreter: Carmen Pascual-Sepulveda. Case designated complex. Defts #9 and #11 to be arraigned on 6/10/00. Discovery to be completed 9/24/00. Defense motions due 8/18/00; government response due 9/7/00; reply due 9/18/00; motion hearing set for 10/13/00 at 10:00. Jury selection and trial set for 11/27/00 at 9:30. (Reddy, Lisa) (Entered: 07/10/00) |
| 07/03/2000 | 25 | LETTER as to 420 Dorado, et al., dated 6/30/00 from AUSA Elaine H. Banar to Counsel, enclosing additional discovery (No attachment). (Reddy, Lisa) Modified on 07/06/00. (Entered: 07/06/00) |
| 07/18/2000 | 30 | LETTER as to Herman Dorado, et al., dated 7/14/00 from AUSA Elaine H. Banar to Counsel, enclosing discovery (No attachment). (Reddy, Lisa) (Entered: 07/25/00) |
| 07/24/2000 | 31 | (copy) LETTER dated 6/16/00 from AUSA Elaine Banar to all counsel, providing discovery. (Asreen, Wendy) (Entered: 07/24/00) |
| 07/25/2000 | 33 | LETTER as to Herman Dorado, et al., dated 7/06/00 from AUSA Elaine H. Banar to Counsel, enclosing a copy of a fingerprint report as part of the government's ongoing discovery obligations (No attachments). (Reddy, Lisa) (Entered: 07/31/2000) |
| 08/07/2000 | 37 | LETTER as to H. Dorado, et al., dated 8/4/00 from AUSA Elaine D. Banar to Counsel, providing the following discovery: copies of drug records and a notebook seized from Ivette Garcia and additional transcripts of tape-recordings. (No attachments) (Reddy, Lisa) (Entered: 08/08/2000) |
| 08/09/2000 | 38 | Original papers of document number 36, Govt's motion for forfeiture of bail, recd. from chambers. Govt. to re-file this motion. (Vaughn, Terry) (Entered: 08/09/2000) |
| 08/14/2000 | 43 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Ernesto Feliz returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 44 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to Clerk, and Proposed order sent to Pedro Vasquez returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 45 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Michelle Ferm returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/15/2000 | 46 | NOTICE of proof of FEDEX delivery to Jose Vasquez, on 8/10/00. (Reddy, Lisa) (Entered: 08/15/2000) |

A-63

| Date | No. | Entry |
|---|---|---|
| 06/16/2000 | 57 | LETTER dated 6/15/00 from AUSA Barrett Reade to Corwin and King, pursuant to the government's open file discovery, enclosing copies of additional drug records seized from 24 Carlos Row after a recent search of his residence. (Redd) (Entered: 06/20/2000) |
| 08/10/2000 | 59 | CALENDAR ENTRY as to Raymond Gutierrez. Case called before Magistrate Joan M. Azrack on 8/10/00 for pleading. AUSA Barrett Reade and defendant present with counsel A. Jackson. Tape # 00ST-68A-50:51, 55. w/d not guilty plea and pleads Guilty Raymond Gutierrez (1) count as to. Sentencing set for 11/10/00 at 2:30. (Reddy) Text (Entered: 08/30/2000) |
| 08/15/2000 | 63 | ORDER as to Raymond Gutierrez, referring the guilty plea to Magistrate Judge Azrack Signed by Judge John Gleeson on 8/09, (Reddy, Lisa) (Entered: 08/10/2000) |
| 09/21/2000 | 61 | LETTER dated 9/20/00 from AUSA Barrett to AG Corwin furnishing the discovery - the AUSA statement of Juan Jose Garcia on (Lee, Tiffany) (Entered: 09/26/2000) |
| 09/28/2000 | 65 | TRANSCRIPT for Pleading before USDJ Azrack filed in case as to Raymond Gutierrez Re dates of 8/10/00 (Court Transcriber: Roque Lim/Lim) Transcript on Nos. 11 (Lee, Tiffany) (Entered: 09/28/2000) |
| 11/01/2000 | 85 | LETTER dated 10/24/00 from AUSA Barrett informing that the seized Nelis drug evidence will be destroyed (Lisa/2/01) (Lee, Tiffany) (Entered: 11/02/2000) |
| 11/20/2000 | 95 | LETTER dated 11/17/00 from AUSA Barrett to Judge Gleeson providing estimate of trial length. (Lee, Tiffany) (Entered: 11/21/2000) |
| 12/06/2000 | 106 | LETTER dated 11/17/00 from AUSA Barrett to Judge Gleeson estimating that the gov't case will take 5 days (Lee, Tiffany) (Entered: 12/07/00) |
| 03/01/2001 | 131 | INTER-OFFICE MEMO from Stephen L. Brighton, SUSPO to Judge Gleeson dated 3/2/2000 regarding Delay in Presentence Investigation. (Lee, Tiffany) (Entered: 03/04/2001) |
| 04/30/2001 | 136 | SEALED DOCUMENT, Letter dated 04/27 Placed in vault (DH erenos, Krata) (Entered: 05/02/2001) |
| 05/15/2001 | 140 | LETTER dated 5/9/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to 40 Miguel Medina. (Lee, Tiffany) (Entered: 05/16/2001) |
| 05/18/2001 | 142 | LETTER dated 5/16/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/23/01 sentencing to 6/1/01. (Lee, Tiffany) (Entered: 05/21/2001) |
| 05/18/2001 | 143 | LETTER dated 5/16/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/23/01 sentencing to 6/15/01. (Lee, Tiffany) (Entered: 05/21/2001) |
| 05/21/2001 | | ENDORSED ORDER. Signed by Judge John Gleeson, on 5/17/01. The sentence is adjourned to 6/8/01 @ 2:00. Sentenced Signed Judge John Gleeson, on 5/17/01. (Lee, Tiffany) (Entered: 05/21/2001) |
| 05/23/2001 | 147 | SEALED DOCUMENT. Letter placed in vault. (Lee, Tiffany) (Entered: 05/23/2001) |
| 06/07/2001 | 151 | CALENDAR ENTRY as to Raymond Gutierrez. Case called before Judge John Gleeson on date of 6/8/01 for Sentencing. AUSA Sowinski, D. erally Alan Nelson, Esq. Court Reporter: Burt Sulzer. Sentenced as of 11-44 months imprisonment. 5 yrs s/r, $142 sa. Court recommends that the dft be placed in the 500 hr drug rehabilitation program. Special cond of the supervised release that the dft receive substance abuse treatment as directed by the Prob Dept. If deported the dft may not reenter the US illegally. (Lee, Tiffany) (Entered: 06/13/2001) |

# EXHIBIT F.

## DOCKET SHEET (CARLOS ARTURO RUIZ)

CLOSED

U.S. District Court
Eastern District of New York (Brooklyn)
CRIMINAL DOCKET FOR CASE #: 1:00-cr-08585-JG-1

Date Filed: 09/15/2000

Date Terminated: 06/05/2001

Assigned to: Judge John Gleeson

### Defendant (1)

Carlos Arturo Rico
JESUS GUZE, 08-15-2000

represented by Israel Gonzalez
Israel Gonzalez & Associates PC
142 West 36th Street
Ste 202
New York, NY 10018
212-684-1500
Fax: 212-244-1443
ISRAELMATEO (6975290)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Retained

### Pending Counts

21:846 and 841(b)(1)(A)(iii)(II); 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1s)

### Disposition

Receives 62 months imprisonment, 5 years
supervised release w/conditions; $100.00
special assessment.

### Highest Offense Level (Opening)

Felony

### Terminated Counts

21:846 and 841(b)(1)(A)(iii)(II); 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1)

21:846 and 841 (b)(1)(A)(iii)(II); 18:3551 et
seq - Conspiracy to distribute and possess
with the intent to distribute five kilograms

### Disposition

Dismissed on government's motion.

Dismissed on government's motion.

4:77

Case 1:05-cr-01479-RHR   Document 1   Filed 02-07-25   Page 45 of 92 PageID #: 45

Persons. Present for arraignment Hernando Vasquez, Pedro Julio Davila Tavarez, et al. before Judge John Gleeson on 6/2/00. For arraignment AUSA Elaine Banar and [...] person with counsel present to Theodore Fugere, and eft. Rodriguez, not [...] Court Reporter. Ricky Davis. The following plead Not Guilty: Jose (7)counts: [...] (8)an Morales, Hernan (5)[...] Juan Fel..., Manolvasca Valencia (6)count(s), Jose I. Gonzalez (6)count(s) 1, Jose M. Rodriguez (6)count(s) 1, Gustavo Martinez (7)count(s) 1, Juan Carlos Garcia (8)count(s) 1, Manuel F. Fernandez (9)count(s) 1, Raymond Gutierrez (10)count(s) 1, Carlos Amaro Ruiz (11)count(s) 1, Carlos Echeverry (12)count(s) (2c), 1, Da..., Felix (13)count(s) 1, Alex Hernandez-Vasquez (14)count(s) 1(2)c, and for Fabio Tavares (7)count(s) 1, 4c, (Reddy, Lisa) (Entered: 06/21/2000).

| 06/15/2000 | 23 | LETTER as to Hernan Davila, et al. (7)(c) 6/16/00 from AUSA Elaine D. Banar to counsel, gee... Jorja and enj... e notice (No attachments). (Reddy, Lisa) (Entered: 06/19/2000) |
| 06/16/2000 | 22 | SUPERSEDING INDICTMENT as to Hernan Davila Davila (1) count(s) 1s, 3s, 4s, Juan Davila (2) count(s) 1s, 4s, Julian Morales (3) count(s) 1s, 4s, Jose Fani Manolvasca Vaenris (6) count(s) 1s, 3s, 4s, Jose I. Gonzalez (5) count(s) 1s, 4s, Jose M. Rodriguez (6) count(s) 1s, 4s, Gustavo Martinez (7) count(s) 1s, 2s, Juan Carlos Garcia (8) count(s) 1s, 4s, Manuel F. Fernandez (9) count(s) 1s, 2s, 3s, Raymond Gutierrez (10) count(s) 1s, 2s, Carlos Amaro Ruiz (11) count(s) 1s, 2s, Carlos Echeverry (12) count(s) 1s1, 2s, Lamas Felix (13) count(s) 1s, 2s, Alex Hernandez-Vasquez (14) count(s) 1s, 2s, and for Fabio Tavares (7) count(s) 1s, 4s, (Reddy, Lisa) (Entered: 06/21/2000) |
| 06/20/2000 | 25 | NOTICE of Appearance for Carlos Amaro Ruiz by Attorney Israel Gonzalez (Reddy, Lisa) (Entered: 06/23/2000) |
| 06/20/2000 | 24 | NOTICE of Appearance for Carlos Amaro Ruiz by Attorney Israel Gonzalez (Reddy, Lisa) (Entered: 06/23/2000) |
| [...]/2000 | 26 | CALENDAR ENTRY as to Manuel F. Fernandez, Carlos Amaro Ruiz. Case called before Judge Jose Gleeson on 6/5/00 for status conference. AUSA Elaine Banar and defendants present with counsel. Court Reporter. Marsha Diamond. Interpreter. Spanish (Spanish). Discovery to be completed 7/24/00. Defense motions due 9/8/00, government response due 9/22/00, reply by 9/29/00. Motion hearing if necessary set for 10/13/00 at 2:00. Jury selection and trial set for 11/27/00 at 9:30. (Reddy, Lisa) (Entered: 07/11/2000) |
| 07/03/2000 | 28 | LETTER as to dft. Dorado, et al., dated 6/30/00 from AUSA Elaine D. Banar to Counsel, enclosing additional discovery. (No attachments). (Reddy, Lisa) Modified on 07/06/2000 (Entered: 07/06/2000) |
| 07/18/2000 | 32 | LETTER as to Hernan Dorado, et al., dated 7/14/00 from AUSA Elaine D. Banar to Counsel, enclosing discovery. (No attachments). (Reddy, Lisa) (Entered: 07/28/2000) |
| 07/24/2000 | 31 | (copy) LETTER dated 6/16/00 from AUSA, Elaine Banar, to all counsel, providing discovery. (Week, Wendy) (Entered: 07/24/2000) |
| 07/27/2000 | 30 | LETTER as to dft. Dorado, et al. dated 7/26/00 from AUSA Elaine D. Banar to Counsel, enclosing a copy of a fingerprint report as part of the government's ongoing discovery obligations. (No attachments). (Reddy, Lisa) (Entered: 07/31/2000) |
| 08/07/2000 | 33 | LETTER as to dft. Dorado, et al., dated 8/4/00 from AUSA Elaine D. Banar to Counsel, providing the following discovery: copies of drug records and a notebook seized from Freddie Garcia and additional transcripts of tape-recordings. (No attachments). (Reddy, Lisa) (Entered: 08/08/2000) |

Case 1:25-cr-00199-JG Document 1 Filed 04/17/25 Page 49 of 57 PageID #: 49

| Date | No. | Entry |
|---|---|---|
| 08/08/2000 | | Original papers of document number 38, Clerk's motion for forfeiture of bail, mailed from chambers. (Sent to public file) record. (Vasquez, Terry) (Entered: 08/08/2000) |
| 08/10/2000 | 49 | CALENDAR ENTRY as to Carlos Arturo Ruiz. Case called before Magistrate Robert M. Levy on 8/10/00 for bail application, AUSA Elaine Banar and defendant present with counsel Ismael Gonzalez. Tape # 2000/104 (53:4.6000), 2000/102 (591.6950). [49...] Bail application denied. (Reddy, Lisa) (Entered: 08/15/2000) |
| 08/14/2000 | 42 | INDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Ernesto Feliz returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 44 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Pedro Vasquez returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 45 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Michelle Fermin returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/15/2000 | 46 | NOTICE of partial FEDEX delivery to Jose Vasquez on 8/11/00. (Reddy, Lisa) (Entered: 08/15/2000) |
| 08/15/2000 | 48 | MOTION by Carlos Arturo Ruiz for bail. Hearing set for 8/11/00 re: [48..] (Service) (Reddy, Lisa) (Entered: 08/25/2000) |
| 08/16/2000 | 51 | LETTER dated 8/15/00 from AUSA Elaine D. Banar to Counsel, enclosing pursuant to the government's ongoing discovery obligations, copies of additional drug records seized from Dr. Carlos Ruiz after a consent search of his residence. (Reddy, Lisa) (Entered: 08/30/2000) |
| 09/12/2000 | 57 | ORDER as to Carlos Arturo Ruiz, granting dft's request for extend time to file his pretrial motion until 9/1/00. (Signed by Judge John Gleeson on 9/8/00). C/M by Chambers. See letter dated 9/8/00 from Ismael Gonzalez to Judge Gleeson. (Reddy, Lisa) (Entered: 09/12/2000) |
| 09/21/2000 | 60 | ENDORSED ORDER as to Carlos Arturo Ruiz on letter dated 9/15/00 from Ismael Gonzalez, Esq. to Judge Gleeson granting application to file the motion out of time. Signed by Judge John Gleeson, on 9/18/00. (Lee, Tiffany) (Entered: 09/21/2000) |
| 09/21/2000 | 63 | LETTER dated 9/20/00 from AUSA Banar to All Counsel furnishing the discovery the 4/16/00 statement of Juan Jose Gonzalez. (Lee, Tiffany) (Entered: 09/25/2000) |
| 10/02/2000 | 66 | ORDER as to Carlos Arturo Ruiz, granting dft's request to extend time to file a response to the Government's Memo in Opposition to dft's pretrial motion until [46..] or [00..]. (Signed by Judge John Gleeson on 9/30/00). Copies faxed by Chambers. (Reddy, Lisa) (Entered: 10/02/2000) |
| 10/04/2000 | 68 | LETTER dated 10/4/00 from AUSA Banar to Counsel furnishing additional draft transcripts. (Lee, Tiffany) (Entered: 10/06/2000) |
| 10/13/2000 | 74 | CALENDAR ENTRY as to Jose E. Gonzalez, Carlos Arturo Ruiz. Case called before Judge John Gleeson on date of 10/13/00 for Suppression Hearing, AUSA Banar. Dfts present w/attys in order 1) Alan Seidler, Esq. and Ismael Gonzalez. ESR: Diane Pereira. Hearing held. Following witnesses sworn, direct and cross examined: Dan Tamcsin, Joseph Cabrera, Thomas Metcalf. Cont'd to 10/13/00 at 1:00. (Lee, Tiffany) Modified on 10/18/2000 (Entered: 10/18/2000) |

A-2

Case 1:25-mc-314?9-PLR    Document 1    Filed 05/07/25    Page 53 of 53 PageID #: 53

| | | |
|---|---|---|
| 10/12/2000 | 59 | CALENDAR ENTRY as to Juan Jose Gonzalez, Carlos Arturo Ruiz. Case called before Judge John Glenтом on date of for Suppression Hearing. AUSA Banar. Dfts present w/attys in order as noted D. Alan Seidler, Esq and Ismael Gonzalez, Esq. ESR: Fred Guerino. Witness McGhee Martin, sworn. Direct exam by Elaine Banar, cross by Seidler and Gonzalez. Witness Anthony Barbosa, sworn. DX by Banar and CX by Gonzalez. Further oral Argument by the parties will be heard 10/23/00 at 9:30. (Rec. Tiffany) (Entered: 10/26/2000) |
| 10/23/2000 | 82 | LETTER from AUSA Banar to Judge Glenton advising that the gov't may need to admit similar act evidence against Carlos Ruiz (Lee, Tiffany) (Entered: 11/03/2000) |
| 11/01/2000 | 83 | LETTER dated 10/24/00 from AUSA Banar re Counsel advising that the seized bulk drug evidence will be destroyed in 90 days (Lee, Tiffany) (Entered: 11/24/2000) |
| 11/14/2000 | 96 | LETTER dated 11/13/00 from AUSA Banar to Counsel furnishing additional discovery - draft transcripts. (Lee, Tiffany) (Entered: 11/16/2000) |
| 11/20/2000 | 98 | LETTER dated 11/13/00 from AUSA Banar to Judge Glenton providing updated estimate of trial length. (Lee, Tiffany) (Entered: 11/22/2000) |
| 11/29/2000 | 95 | LETTER dated 11/13/00 from AUSA Banar to Counsel furnishing additional discovery (docs relating to 404(b) evidence, pager, phone book, search warrant...) (Lee, Tiffany) (Entered: 12/28/2000) |
| 11/29/2000 | 101 | CALENDAR ENTRY as to Jose E. Gonzalez, Carlos Arturo Ruiz, Alexis Fernandez Vasquez. Case called before Judge John Glenton on date of 11/28/00 for Status Conference. AUSA Banar. Dfts present w/attys in order given above D. Alan Seidler, Ismael Gonzalez, David Miranksa; Interpreter (Spanish) Dates to Pleaded. Final pretrial conf 12/14/00 @ 9:00. Trial set for 12/18/00 @ 9:00. ESR: Henry Shapiro (Lee, Tiffany) (Entered: 12/04/2000) |
| 11/29/2000 | | Deadline updated as to Jose E. Gonzalez, Carlos Arturo Ruiz, Alexis Fernandez-Vasquez: Jury trial set for 9:00 on 12/18/00 Jose E Gonzalez, for Carlos Arturo Ruiz, for Alexis Fernandez-Vasquez before Judge Joan Glenton. (Lee, Tiffany) (Entered: 12/04/2000) |
| 11/09/2000 | 100 | LETTER dated 11/28/00 from AUSA Banar to Counsel furnishing additional discovery - 16 transcripts of tape recordings (not attached) (Lee, Tiffany) (Entered: 12/01/2000) |
| 12/01/2000 | 102 | Memorandum of Law in Response to the Government's Memorandum in Opposition (Lee, Tiffany) (Entered: 12/04/2000) |
| 12/05/2000 | 110 | CALENDAR ENTRY as to Carlos Arturo Ruiz. Case called before Magistrate Joan M. Azrack on date of 12/5/00 for Pleading. AUSA Banar. Dft in cust w/atty Ismael Gonzalez. Interpreter Alfredo Garcia: Tape # 00-82 (137-1067). Dft pleads GUILTY. Carlos Arturo Ruiz (1) count(s) 1s, Sentencing set for 3/2/01 for Carlos Arturo Ruiz before Judge John Glenton. (Lee, Tiffany) (Entered: 12/08/2000) |
| 12/01/2000 | 111 | ORDER as to Carlos Arturo Ruiz referring application to enter a plea of guilty to Magistrate Azrack. (Signed by Judge John Glenton on 12/1/00) (Lee, Tiffany) (Entered: 12/11/2000) |
| 12/06/2000 | 103 | LETTER dated 2/13/00 from AUSA Banar to Judge Glenton moving in limine for the introduction of Rule 404(b) evidence against Carlos Ruiz and Alexis Fernandez. (Lee, Tiffany) (Entered: 12/07/2000) |
| 12/06/2000 | 106 | LETTER dated 11/13/00 from AUSA Banar to Judge Glenton estimating that the gov't case will take 8 days. (Lee, Tiffany) (Entered: 12/07/2000) |

A-??

Case 1:25-mc-01415-89H   Document 1   Filed 04/04/06   Page 92 of 62 PageID #: 51

| Date | No. | Description |
|---|---|---|
| 12/08/2000 | 2 | [71] RESPONSE to [69] as to Herman Gilbert [Sealed Document] Court[?] to... Jose F. Gonzalez (Signatures); 1st, 2nd, 4th, Carlos Arturo Ruiz (1) consent to 1st, 2nd, Alexis Fernandez Vasquez (?) consent to 1st, 2nd   (See, Tiffany) (Document... later (Entered: 12/11/2000) |
| 12/08/2000 | 113 | TRANSCRIPT of Suppression Hearing before Judge Gleeson filed in case as to Jose F. Gonzalez, Carlos Arturo Ruiz, Alexis Fernandez Vasquez for dates of 10/17/00, Court Reporter: Dino Cardarelli.. Tiffany (Entered: 12/11/2000) |
| 12/08/2000 | 114 | TRANSCRIPT of Suppression Hearing before Judge Gleeson filed in case as to Jose F. Gonzalez, Carlos Arturo Ruiz for dates of 10/17/00, Court Reporter: Dino Cardarelli (See Tiffany) (Entered: 12/11/2000) |
| 12/08/2000 | 116 | TRANSCRIPT of Motion before Judge Gleeson filed in case as to Carlos Arturo Ruiz for dates of 6/27/00, Court Reporter: Anthony Mancuso (See, Tiffany). (Entered: 12/11/2000) |
| 12/08/2000 | 138 | MOTION by Carlos Arturo Ruiz to [?] Judge Gleeson requesting denying the production of the... discovery, etc. (See, 2.Reay) (Entered: 12/14/2000) |
| 12/27/2000 | 139 | TRANSCRIPT of Guilty plea before Magistrate Azrack filed in case as to Carlos Arturo Ruiz for dates of 12/5/00, Court Transcription Services: Webers Hearing, Inc. (See Tiffany) (Entered: 12/29/2000) |
| 01/04/2001 | 133 | INTER-OFFICE MEMO from Stephen L. Bingham, SLSPO to Judge Gleeson dated 12/20/00 regarding Delay in Presentence Investigation. (See, Tiffany) (Entered: 01/04/2001) |
| 01/03/2001 | | ENDORSED ORDER as to Carlos Arturo Ruiz regarding [121-1, memorandum identifier 1] the 5th (through his lawyer) fails to arrange for an interview at a reasonable time (2 weeks from today), the PSR should be prepared without his input (Signed by Judge John Gleeson, on 1/2/2000) (See, Tiffany) (Entered: 01/04/2001) |
| 03/21/2001 | 113 | LETTER dated 2/9/01 from Carlos Ruiz to the Clerk requesting a copy of his docket sheet. Pro Se respond to. (Rigere, Mon que) (Entered: 03/23/2001) |
| 04/30/2001 | 135 | SEALED DOCUMENT: Letter dated 4/24/01. Placed in vault. (DiLorenzo, Karen) (Entered: 05/02/2001) |
| 05/14/2001 | 146 | LETTER dated 5/9/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to Miguel Medina (See, Tiffany) (Entered: 05/14/2001) |
| 05/18/2001 | 142 | LETTER dated 5/9/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/1/01 (See, Tiffany) (Entered: 05/21/2001) |
| 05/18/2001 | 143 | LETTER dated 5/14/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/15/01. (See, Tiffany) (Entered: 05/21/2001) |
| 05/21/2001 | | ENDORSED ORDER. Signed by Judge John Gleeson, on 5/17/01. The sentence is adjourned to 6/8/01 at 2:00. So ordered. Signed Judge John Gleeson, on 5/17/01. (See, Tiffany) (Entered: 05/21/2001) |
| 05/23/2001 | 147 | SEALED DOCUMENT. Letter placed in vault. (See, Tiffany) (Entered: 05/23/2001) |
| 06/08/2001 | 156 | CALENDAR ENTRY as to Carlos Arturo Ruiz: Case called before Judge John Gleeson on date of 6/8/1 for Sentencing. AUSA Kowalski, Defer ay: Ismar Gonzalez, Esq.; Span Int: Azriel Sahaneu-Suren; Court Reporter: Burt Sulzer. Receives 62 months imprisonment, 5 yrs s/r, $100 s/a. Deft to receive substance abuse treatment while incarcerated. Court recommends that deft be designated to a facility in NY area. No illegal |

A-2

Case 1:05-mc-00249-SLR   Document 1   Filed 04-07-05   Page 52 of 87 PageID #: 52

| 09/19/2006 | 213 | Sealed Letter placed in vault as per order of Mag. Amick. (Piper, Francine) (Entered: 09/19/2006) |
| 09/19/2006 | 364 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Amick. (Piper, Francine) (Entered: 09/19/2006) |

# EXHIBIT F

# TRANSCRIPT EXCERPTS (WITNESS RAMON MEJIA)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

Plaintiff,

vs.                                    July 11, 2005
                                       10:13 a.m.

JOAQUIN MARIO VALENCIA-TRUJILLO

Defendant.

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:      JOSEPH RUDDY
                         MARIA CHAPA-LOPEZ
                         Assistant U.S. Attorneys
                         U.S. Attorney's Office
                         400 North Tampa St.,
                         Ste. 3200
                         Tampa, FL 33602

For the Defendant:       MATTHEW FARMER, ESQ.
                         Farmer & Fitzgerald
                         708 E Jackson St
                         Tampa Florida 33602-5000

                         ROBERT KEMPERS, Esq.
                         Kempers Harland PA
                         696 1st Ave N Ste 700
                         St. Petersburg, FL 33701

SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

Q      That was -- that's his full first name?

A      Correct.

Q      And was he affiliated with the North Valley Cartel?

A      No, he's independent. He used to work with El Soldado -- Consolo University.

Q      And was he your source of cocaine supply, as well as the source of an organization in the United States, to distribute that cocaine?

A      Reyeshera would receive the kilos in New York which I would send him from Cali -- that I would send for him in Cali.

Q      And what was your source of supply, let's say beginning in May of 2000 until your arrest September of 2004?

A      Jaee, Cali, I started working with an individual by the name of Johnny Cann, alias Santiago.

Q      What year was that? June, July of 2000?

A      2000.

        MR. PARKER:  All right. We'll take this 1014.

BY MR. PARKER:

Q      There were three people that you mentioned yesterday, Vicky, Johnny Cann, and Sasgunt. Were

SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

those sources that -- of cocaine that you used beginning May of 2010. Did you use that before that at any point?

A     After, correct. That's after May of 2010.

Q     Was the first time you used these people?

A     Yes, that's correct.

Q     Now, who is Vicky? What does Vicky mean?

A     Vicky, representing Victor -- Victory, which is in North Valley. And Cali is in North Valley -- is the department of Valle -- the north department of Valle.

Q     And is Rosgeno also in North Valley?

A     Correct.

Q     So you began developing sources of cocaine supply that were all the North Valley cartel; is that safe to say?

A     That is correct. Because after the first of May, Rosique started commenting -- or made a comment that I owed him money. And therefore, all the doors in Cali were closed to me, and I started working with the North Valley cartel.

Q     Okay. Is that how you spell Valle there at the bottom?

A     Yes, that's correct.

Q     Is that the word for valley?

either.

Q.   When was the first time you saw the charts ...?

A.   Yesterday.  Yesterday when the trial started.

Q.   Sir, it's true that Vicky -- or Victoria and Monica, according to your testimony today, would not appear on the same chart, correct?

A.   With Monica, we are really talking about Vicky, because during our conversations, she is already asking about Vicky.

     We were talking -- we were talking with him -- that is, with Johnny Cone.  But up until then, no business transaction had taken place.  I suppose that Monica put him as an example in the letter or document of the people who were the suppliers.

Q.   I want to be very clear with you, sir.  Your testimony today is that your organization received no cocaine from Victoria before May 1st, 2000; correct?

A.   Correct.

Q.   And it's correct that Vicky could not have given Monica Velilla any cocaine; correct?

A.   Correct.

Q Thank you. Who else?

A Who else? Those are the ones I remember as the sources of --

Q After that point, other sources became involved, including Jaime Lopez, Don Roque, right?

A That, Carlos Velazco

Q Okay. Thank you. Before May 1st, 2009?

A Correct.

Q Now, after -- were all of these no still your sources after May 1st, 2009?

A No, because Cali Van already burned for me.

Q No more of these no -- well, Mr. Lopez had to be a source after May 1st, right?

A After May, correct.

Q And what were your other sources after May 1st of 2009? Victoria --

A Johnny Garza, Roman Quintero, Patekura --

Q     Will have to get a spelling.

A     Okay. Johnny Cano. Johnny, and then Cano, C-A-N-O. Ramon Quintero — Ramon, and then Quintero, Q-U-I-N-T-E-R-O. We have another individual by the nickname of Barranco, B-A-R-R-A-N-C-O, whose real name is Carlos Rubio, R-A-T-I-O — with a little accent — no, add the last person is Gomez Valencia, G-O-M-E-Z-R Valencia, V-A-L-E-N-C-I-A.

Another individual by the name of Miguel Solano, S-O-L-A-N-O. And Juan Bela Quintero, Q-U-I-N R-A-N-A. Jim Bretone, Jaime Quintero, Q-U-I-N-T A-N-A. AKA — alias El Negro. E L, N-E-G-R-O. Or the black one.

Of all of these people — these people's names were all on the diskette that I handed to the DEA agent. Tom Stunnell, S-T-U-N-N-E-L-L. In Miami as part of my collaboration.

Where there is a very complete, full detail of rate, amount, date, cash or money, distribution, payments, all of it is contained in that diskette.

Q     And who was El Negro? I missed that one. Is the top one?

A     The El Negro — El Negro is called that

A. So, he was a client, a client.

Q. And Bryan Valencia, this was not related to the Valencia-Trujillo family?

A. No, because these Valencias are from Cartel Valle — V-A-L-L-E, or, state of Valle, V-A-L-L-E.

Q. Again affiliated with the North Valley cartel?

A. Correct.

Q. Okay. Hugo Machete was part of the Norte Valencia association before the May 1st, 2002 merger; correct?

A. That's correct.

Q. And he was responsible for transporting cocaine from Miami to New York using I-75, et cetera?

A. One -- one of the ones who transported.

Q. And was his alias also El Negro?

A. El Nero, N-E-R-O, without the G.

Q. Okay. We'll call this 2018. So it was both El Negro and El Nero?

A. Chelo would call him El Nero, because he was kind of like the farmer type when he spoke.

Q. What does Nero mean?

A. The same. Just that Nero is that he's

Case: 25-mc-01479-BHS    Document 1    Filed 02-03-05    Page 62 of 87  PageID #: 62

# EXHIBIT G

## PRINTOUT OF SPREADSHEET ON DISKETTE
## PROVIDED TO D.E.A. BY WITNESS RAMON MEJIA

**CXC SANTI**

| Fecha | Reaccion | Debe | Valor | Saldo |
|---|---|---|---|---|
| 03/24/00 | Entrega 350 x 22 | $ 7,700,000 | | $ 7,700,000 |
| 03/25/00 | Abono a Muelen | | $ 400,000 | $ 7,200,000 |
| 03/26/00 | Abono a Piero | | $ 500,000 | $ 6,700,000 |
| 03/27/00 | Abono a Muelen | | $ 300,000 | $ 6,400,000 |
| 03/27/00 | Abono a Muelen | | $ 300,000 | $ 6,100,000 |
| 03/28/00 | Abono a Muelen | | $ 300,000 | $ 5,800,000 |
| 03/28/00 | Abono a Mueler | | $ 200,000 | $ 5,600,000 |
| 03/28/00 | Descuento 40 y 500 | | $ 20,000 | $ 5,580,000 |
| 03/10/00 | Abono a Fredy | | $ 500,000 | $ 5,085,000 |
| 03/11/00 | Abono a Piero | | $ 500,000 | $ 4,580,000 |
| 04/01/00 | Abono a Mueler | | $ 500,000 | $ 4,080,000 |
| 04/02/00 | Abono a Chica-Piero | | $ 250,000 | $ 3,830,000 |
| 04/02/00 | Abono a Jeli-Tany | | $ 250,000 | $ 3,580,000 |
| 04/02/00 | Abono a Alex | | $ 500,000 | $ 3,040,000 |
| 04/05/00 | Abono a Chica Piero | | $ 250,000 | $ 2,830,000 |
| 04/05/00 | Abono a Mueler | | $ 200,000 | $ 2,630,000 |
| 04/05/00 | Abono a Jako 805 | | $ 500,000 | $ 2,130,000 |
| 04/08/00 | Abono a Piero | | $ 500,000 | $ 1,630,000 |
| 04/10/00 | Abono a Mueler | | $ 400,000 | $ 1,230,000 |
| 04/10/00 | Abono a Chica Piero | | $ 250,000 | $ 900,000 |
| 04/11/00 | Abono a Ramiro | | $ 300,000 | $ 600,000 |
| 04/14/00 | Abono a Ramiro | | $ 130,000 | $ 550,000 |
| 04/15/00 | Abono a Ramiro | | $ 550,000 | $ |
| 05/01/00 | Saldo anterior | $ 940,454 | | $ 640,454 |
| 05/10/00 | Entrega 300x21 | $ 6,300,000 | | $ 7,240,454 |
| 05/10/00 | Abono a Toceyo Celeno | | $ 700,000 | $ 6,540,454 |

# EXHIBIT H

## REPORT BY D.E.A. AGENT STOMMEL OF MAY 1, 2006
## INTERVIEW OF WITNESS RAMON MEJIA

March , 2001 – 300 kilos
May , 2001 — 50 kilos
May, 2001 – 120 kilos
July , 2001 – 54 kilos

Oct. , 2001 – 40 kilos

April/May, 2002 – 131 kilos
June, 2002 — 135 kilos
June, 2002 — 80 kilos
July, 2002 — 200 kilos
Aug., 2002 – 72 kilos
Aug. , 2002 – 170 kilos
Oct. , 2002 – 170 kilos
Dec. , 2002 – 70 kilos

Government
Exhibit
[illegible]
CR-02-016a
(DEARIE, Ch.)

# EXHIBIT I

## EXCERPTS OF JULY 17, 2006 TRIAL TESTIMONY OF
## U.S. CUSTOMS AGENT KANE

Case 8:02-cr-00377-EAK-EAJ   Document 99   Filed 05/17/05   Page 1 of 21

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

Plaintiff,

v.

JOAQUIN MARIO VALENCIA TRUJILLO

Defendant.

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:     JOSEPH RUDDY
                        MARIA CHAPA-LORCA
                        Assistant U.S. Attorneys
                        U.S. Attorney's Office
                        400 North Tampa St.,
                        Ste. 3200
                        Tampa, FL 33602

For the Defendant:      WACCHAN FARMER, ESQ.
                        Farmer & Fitzgerald
                        708 E Jackson St.
                        Tampa Florida 33602-5303

                        DONALD RUFFLERS, ESQ.
                        Rufflers Harland PA
                        SW 1st Ave N Ste 104
                        St. Petersburg, FL 33701

if anything, happened next -- well, did that event ever occur?

A    Yes

Q    When did that occur?

A    Well, Monica was holding a beeper that she had been instructed to hold, and she was advised to look for code 55

Q    Okay.   And did, at some point, code 55 show up on the beeper?

A    Yes.

Q    Do you recall what date that happened?

A    I believe that was April 30th

Q    Okay.   And what happened as a result of that beeper code 55 coming in?

A    Monica placed a call to the number on the beeper, and she spoke to a male Hispanic

Q    Okay.   And what, if anything, happened after she spoke to this individual on the phone?

A    They arranged a meeting later that day at the -- at a billiards hall in Astoria, Queens on Steinway Street

Q    Okay.   And did that meeting occur?

A    Yes.

Q    Who was present at that meeting?

A    Monica, the male Hispanic we later

Case 1:25-mr-01472-RER    Document 1    Filed 03/2026    Page 55 of 97 PageID 1580

identified as Gustavo Martinez?

Q    Okay.  And you were conducting surveillance at it?

A    Correct.

Q    Okay.  About what time of the day was this on April 20th?

A    I would say sometime that afternoon.

Q    Okay.  And what happened at that meeting that you saw?

A    Well, this is a meeting where Monica was going to arrange picking up the cocaine from Gustavo Martinez.

Q    Okay.  What was the expectation that the load would be?

A    She was expecting about 800 kilos.

Q    Okay.  And what was -- what was the actual amount that was to be delivered?

A    Well, Gustavo Martinez told her that he only had 140 for her.

Q    Okay.  So then what happened?

A    Well, she was a little shocked by that number.  He pulled out a piece of paper.  He showed it to her.  It had a list of names on it and a total of about 1,800 kilos on that list.

Q    All right.  So then what happened next?

A. They arranged -- or Gustavo Martinez asked for her to bring a van or a truck so that he could load it up for her, and to leave it across the street at the movie theater.

Q. Did you make those arrangements and get a U-Haul van?

A. Yes.

Q. What exactly -- what exactly did you do with the U-Haul van and make -- to make those arrangements?

A. Well, we actually had rented the van about five days prior in anticipation of this delivery.

Q. All right.

A. Monica had reached out to one of Hernan's workers, and he rented the van. So we reached out to him, and he brought the van later that night about 8 o'clock that night, he brought it over to that location.

Q. What location was that, again?

A. It was the movie theater across from the billiard hall on Steinway.

Q. Okay. And what, if anything, did you see or -- that evening?

A. Well, we initiated surveillance. We had the helicopter up. And we observed Gustavo Martinez

met with an individual later identified as Jason
Macdonald. He had driven the U-Haul over here --
over to that location. Gustavo Anzlinez got into
the driver seat of the U-Haul. Macdonald got into
the passenger seat, and Monica followed them in
her car.

Q     Jason, J-A-S-O-N. Macdonald,
M-A-C-D-O-N-A-L-D. So Monica following them.
And what time of the day is this where's she
following them?

A     I believe they agreed to meet at about
8 o'clock. I think by the time Macdonald got
there, it might have been 8:30. So now we're going
towards 9 o'clock as we're driving away.

Q     In the evening?

A     Yes.

Q     All right. And you're driving away. And
where does this go?

A     They drive the van into Brooklyn and
eventually pulls over. Macdonald gets out of the
passenger side and gets into Monica's car, and
they depart the area.

Q.    Okay. And where do they go?

A.    Well, they dropped -- we initiated -- we
kept surveillance on the U-Haul, and we also had a

cover than cover Renica.  We didn't want to let her out of our presence, so we followed her off the set.

Q.   So, to what, if anything, was observed happening where the U-Haul was?

A    Well, Gustavo Martinez then drove to the Green Point industrial area in Brooklyn.  He parked the car in a commercial area, a lot of warehouses, commercial trucks, U-Hauls.  He parked it on one of those blocks, and he walked away from the U-Haul.

Q.   Okay   And this is about 10 o'clock at night now, approximately?

A.   Yes.

Q    Did you continue to maintain surveillance on the U-Haul?

A    We kept surveillance on the U-Haul, and we also followed Gustavo Martinez.

Q.   Okay.  And what, if anything, did you see?

A.   Well, he walked a few blocks away.  He got into a car, and he drove back into Queens.  And he went into an apartment building on, I believe, 36th Street.

Q    Okay.  And what, if anything, did you see happening where the U-Haul was?

A  Well, we maintained surveillance all through the night. Probably sometime around midnight, we observed a green Montero circling the area probably four or five times.

Q  All right. And what, if anything, did you see this Montero do, while that circling?

A  Well, the Montero was circling. We could definitely see that there were at least two male Hispanics in it. One appeared to be on the cell phone. We were able to copy down the license plate.

Q  Okay. And what, if anything, happened next?

A  Well, we waited through the night. At about 5:45 in the morning, the team that was on Gustavo Martinez observed him come out of the apartment building that we went into the night before.

Q  Okay. And where did he go?

A  Well, he met -- he met another male Hispanic on the corner. They got into a car that was registered to Carlos Ruiz, and they departed the area.

Q  And where'd they go?

A  We didn't follow them. We just -- we stayed on the car that Martinez had driven to that location.

Q    All right. So what, if anything, did you do next?

A    Well, about 15 minutes later, Martinez showed up again at that location. He got into the car that we had surveilled him in the night before, and he drove back to the Green Point industrial center.

Q    And what time is this?

A    That has to be about 6 o'clock. So he's probably arriving sometime between 6:00 and 6:30.

Q    Okay. So then what happened next?

A    He parked his car a couple blocks away from the Green Point industrial center, and he walked into the warehouse.

Q    All right. And what, if anything -- do you know how long he was in the warehouse?

A    Well, I set up surveillance on his car. We had agents set up in the area. I would say within 20 minutes or half an hour, I observed the green Montero from the night before being parked behind Martinez' car.

Q    All right. And what else did you see?

A    Then I saw Martinez actually get out of the Montero, which was a little shocking.

Q    All right. So Martinez gets out of the

Case ... HER   Document ...   Filed ...   Page ... PageID ...

Q ...when Montero that's parked behind his own car?

A Correct.

Q All right. So then what happened next?

A Well, I noted that the Montero looked weighted in the back. He walked away from the vehicle back towards the power point substation center, and he was on the cell phone.

Q Okay. And then based on the fact that you saw that the Montero was weighted down, what, if anything, did you and your task force do?

A Well, I notified the other officers over the radio. At about the same time, I noticed -- I was sitting next to a fire hydrant, and I was low down in my seat so I couldn't be seen. And I noticed a car pull up next to me, double parked, a male Hispanic, and I observed that he was observing the Montero as I was.

Q Then what happened?

A I let the team know. That individual we later identified as Carlos Echeverry.

Q Okay. So did Carlos Echeverry, E-C-H-E-V-E-R-R-Y -- what, if anything, did you see Carlos Echeverry do besides double park next to you?

A Well, he pulled away at one point. He went

SANDRA K. LEE, RPR   OFFICIAL UNITED STATES COURT REPORTER

Case: 26-777, 07/07/2026, DktEntry: 26.1, Page 188 of 393

have gone around the block. And he came back up and parked next to me again.

Q.   All right.

A.   About that time, I observed a well-dressed male Hispanic walking over to the green Montero. He was wearing a suit and tie. He opened the rear door, he hung his jacket in the back, and he got into the driver's car.

Q.   All right. And then what did he -- then what happened next?

A.   Then I observed an Altima pull up next to the green Montero. I observed a little acknowledgement between the two drivers. The Montero pulled out, followed by the Altima.

Q.   Okay. And where did they go?

A.   Well, they proceeded down the block. And then I noticed Carlos Echeverry, who was sitting next to me, about across the intersection and began following these two vehicles.

Q.   All right. So then what happens next?

A.   Well, we suspect that there's something in the Montero. I pull out, following Carlos Echeverry. We designate a team to follow the Montero and the Altima off the net. When they get to the next light, which was squaring the block

going back to Roosevelt, the Montero and the Altima make a left turn, heading towards the BQE --

Q   The BQE being the --

A   The Brooklyn Queens Expressway.

Q   All right.

A   And Echeverry makes a right turn, heading back towards Queens.

Q   All right.  So then, what happened next to the Montero?

A   Well, I maintained surveillance on Echeverry, and the rest of the team follows the Montero.  Eventually I'm notified that they found drugs in the Montero.

Q   All right.  So then -- this is still on May 30th -- or

A   May 1st.

Q   We're on May 1st now?

A   Yes.

Q   All right.  What, if anything, happens the rest of the day?

A   Well, immediately I placed Carlos -- Carlos Echeverry under arrest.  I about back to the warehouse.  I have him transported back to our office.

At the same time, Gustavo Martinez is observed coming out of the warehouse, getting into the U-Haul that he parked the night before, and driving that into the warehouse.

Q   Okay.  And this is the warehouse that's located in Green Point?

A   Green Point Industrial Center.

Q   Green Point Industrial Center.  Okay.  So then what do you observe happening with the U-Haul?

A   Just before I arrived, he had backed out of the warehouse.  The agents and detectives stopped him, and they found additional cocaine in the U-Haul.

Q   Okay.  Do you know how much cocaine was found in the U-Haul?

A   I believe 133 kilograms.

Q   Okay.  Do you know how much was found in the Montero?

A   293 kilograms.

Q   Okay.  So those vehicles are seized.  So what, if anything, happens after the seizure of those vehicles?

A   Well, I'm advised by my partner that Gustavo Martinez is cooperating, and he told my partner that there was additional cocaine ..

# EXHIBIT J

## AUSA MARIA CHAPA LOPEZ'S LETTER ON BEHALF OF WITNESS RAMON MEJIA



U.S. Department of Justice
United States Attorney
Middle District of Florida

December 30, 2008

Eric E. Richberg
Assistant United States Attorney
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132

Re:     Ramon Orozco-Mejia

Dear Mr. Richberg:

I understand that Ramon Orozco-Mejia recently testified in the case of United States v. Ivan Gonzalez-Bejarano. As AUSA Terry Flynn of this office may have told you, Gonzalez-Bejarano was a major drug trafficker who operated in the United States and Colombia as a lieutenant of the Mario Valencia-Trujillo Drug Trafficking Organization (DTO). In 2005, I prosecuted Joaquin Mario Valencia-Trujillo with the assistance of Ramon Orozco-Mejia. Immediately after his extradition to the United States, Ramon Orozco-Mejia agreed to assist the Middle District of Florida by testifying at the Valencia-Trujillo trial. His assistance to this office in the prosecution of former DTO leader Joaquin Mario Valencia-Trujillo was invaluable. Valencia-Trujillo was extradited from Colombia to the Middle District of Florida in March 2004, went to trial in Tampa, Florida on July 6, 2006, on charges of Engaging in a Continuing Criminal Enterprise as well as Narcotics and Money Laundering Conspiracies. Valencia-Trujillo was convicted on all counts on October 23, 2006. On February 1, 2007, Valencia-Trujillo was sentenced to 40 years imprisonment. Ramon Orozco-Mejia's assistance was instrumental in accomplishing these results.



As you are aware, Ramon Orozco was extradited to your District from Colombia to answer to charges arising out of your District. In the spring of 2006, myself and Special Agent Jeff Adams had the opportunity to interview him in Miami, Florida about Joaquin Mario Valencia-Trujillo. Upon completion of the initial interview, it was apparent that he possessed significant information about Valencia-Trujillo and would make a compelling witness for the government. Specifically, Orozco-Mejia described each 1997 meetings he had had with members of the Valencia DTO, specifically several of his lieutenants. He described himself in phone conversations he had with other members of the Valencia DTO working in New York. The conversations occurred in 2001 and involved the planning of large shipments of cocaine owned by the Valencia-Trujillo DTO. The shipments were to go from Colombia to Florida and New York. Not only were the admissions consistent with independent testimony from other co-conspirators, but his account of what occurred went unchallenged by the defense. He also testified that during 2001 he suffered large seizures of cocaine he had obtained from Valencia-Trujillo's organization. Ultimately, these seizures caused Orozco-Mejia to not be able to fully repay the losses so he was kidnapped by members of the Valencia-Trujillo DTO until he turned over several of his properties in repayment. He was in captivity for 57 days.

After the conviction of Valencia-Trujillo of all charges, the foreman of the jury contacted this office and indicated that the jury found Ramon Orozco-Mejia entirely credible and the most important witness the government presented during the four-month trial. He further indicated that the jury relied heavily upon Orozco-Mejia's testimony in reaching their verdict.

Pending the Valencia-Trujillo trial Orozco-Mejia was brought to the Middle District of Florida and for his safety was housed in the Special Housing Unit of the Hillsborough County Jail in 24-hour lockdown for approximately three weeks. Despite this inconvenience he remained positive and eager to assist. Throughout my contact with him, Ramon Orozco-Mejia was completely candid, forthright and consistent in his account of the events to which he ultimately testified.

Based upon the aforementioned, I would request that you and your Office immediately consider the significant cooperation provided by Ramon Orozco Mejia as substantial assistance in support of a sentence reduction. I leave the extent of any recommended departure to your sound judgement and Office policy. No promises were made to him for his cooperation except that I would make the nature and extent of that cooperation known to you. In support of this letter, I stand ready to appear at a Rule 35 hearing on behalf Mr. Orozco in the event you deem it necessary.

Eric E. Whitley
December 30, 2008
Page Three

Should you have questions please feel free to contact me at (813) 274-6353.

Sincerely,

A. BRIAN ALBRITTON
United States Attorney

By

MARIA CHAPA LOPEZ
Assistant United States Attorney

cc:     Robert Franklin Dunlap, Esq.
        Suite 728
        2601 S. Bayshore Drive
        Miami, Florida 33133
        Attorney for Ramon Chavez-Mejia

Case 1:25-mc-01279-EER Document 5 Filed 05/20/25 Page 1 of 7 PageID #: 69

May 15, 2025

**HONORABLE JUDGE ERIC N. VITALIANO**
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Subject: *In Re Morgan to Intervene and Unseal*, 25-MC-1479-ENV

Dear Judge Vitaliano

The undersigned filed his Third Party Motion to Intervene and Unseal verified pursuant to 28 U.S.C. § 1746 on April 7, 2025, served the U.S. Attorney's Office for the Eastern District, and the filing fee of $52.00 (fifty-two dollars) was duly paid.

On April 28, 2025, this Honorable Court issued its "Order to Show Cause" (OSC) with electronic service upon the United States Attorney's Office, directing the government to show cause on or before Monday, May 12, 2025, in writing, why the Court should not grant the motion. The government failed to show cause on or before the deadline set by the OSC.

Therefore, the undersigned requests that this Honorable Court enter the attached PROPOSED ORDER granting the motion in all respects

Respectfully submitted,

Joaquin Mario Valencia Trujillo, *Pro Se*
Reg. No. 02446-748
FCI Oakdale II
P.O. Box 5010
2105 East Whatley Road
Oakdale, Louisiana 71463

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

IN RE MOTION TO INTERVENE AND UNSEAL

Case No. 25-MC-1479-RER

—————— · ——

### ORDER GRANTING MOTION TO INTERVENE AND UNSEAL

The Court having issued an ORDER TO SHOW CAUSE, with service made on the United States Attorney's Office, directing the government to show cause, in writing, by on or before May 12, 2025, as to why the plaintiff/third party movant Joaquin Mario Valencia-Trujillo's verified motion to intervene and unseal filed on April 7, 2025, should not be granted, and the government not having shown cause,

IT IS HEREBY ORDERED that movant is granted court leave to intervene, and the U.S. Attorney and the Clerk of this Court are hereby directed to unseal for this (at the same time) all sealed documents for each of the four case co-defendants, CARLOS ECHEVERRY, RAYMUNDO GUTIERREZ, GUSTAVO MARTINEZ, and CARLOS RUIZ, charged and convicted in Case No. 09-CR-00515 (JG), which were docketed therein as LCF Doc. Nos. 136, 147, 152, 195, 199, and 261 through 264;

IT IS HEREBY ORDERED that all of the other judicial documents that were docketed in Case No. 09-CR-00515 (JG) as to these four co-defendants, Echeverry, Gutierrez, Martinez, and Ruiz should be made publicly available forthwith on Pacer, including the Complaint filed as Magistrate Docket No. 09-mj-00748-RLM-6; and

IT IS HEREBY ORDERED that all the portions of the four (4) co-defendants' Pre-Sentence Investigation Reports (PSIRs), which report the offense conduct and the full extent of their cooperation with the government, be provided forthwith to Valencia-Trujillo and/or made publicly available forthwith on Pacer.

Ramon E. Reyes, Jr., U.S. D.J.

4/25

Case 1:25-cm-00429-RRB    Document 8    Filed 08-14-25    Page 1 of 7 PageID #: 93



U.S. Department of Justice

United States Attorney
Eastern District of New York

[illegible]
[illegible]

August 11, 2025

Re: [illegible]

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    In re Motion to Unseal
       Miscellaneous Docket No. 25-429 (EDNY)

Dear Judge Vitaliano:

The government writes in response to the Court's Order to Show Cause dated April 28, 2025, which directs the government to respond in writing as to why the Court should not grant third party Joseph Mario Naddeo and/or his pending motion seeking disclosure of parts of presentence investigation reports ("PSRs") and the transcripts of all "judicial documents" related to four defendants in United States v. Dynasty, et al., Docket Nos. 1:07R-431 (S.D. in (E.D.N.Y.)) (the "Dynasty"). For the reasons discussed below, Naddeo [illegible] interest in seeking the disclosure of PSRs should be denied in its entirety. Naddeo [illegible] to unseal should be denied in part because, except for nine documents that are designated as "sealed," all other documents on these defendants' dockets do not appear to be sealed. For the nine documents that do appear to be sealed, the government has been unable to locate those documents. Accordingly, the government respectfully requests that the Court direct the Clerk of Court to give copies of these documents to the government so that it may provide the Court with its position with respect to their potential unsealing, as ordered by the Court's Order.

I.     Background

In 2007, Victor [illegible] Ireallo was indicted by a grand jury in the Middle District of Florida on charges relating to his leadership of an international drug smuggling and distribution [illegible]

The relevant defendants are Christopher Martinez, Individual Docket No. 1:07cr-0015-00-007, and [illegible] Gutierrez, Individual Docket No. 1:07cr-0015-00-(District of Florida Zero, Individual Docket No. 1:07cr-0015 Sub-01, and Juan Carlos Echeverry, Individual Docket No. 1:07cr-0015-Jul-12.

earlier allegations of a conspiracy to assess with intent to distribute the kilograms or more of cocaine in 2007. See [Doggle, Docket No. ... R--S-D, E.D.N.Y.]

## II.    Relevant Law

In Nixon v. Warner Communications, Inc., 435 U.S. 589, 1978, the Supreme Court held that there is a common law "presumption ... in favor of public access to judicial records." Id. at 602. The Second Circuit has set out a three-step inquiry to determine whether this presumption attaches: first, the court must determine whether the documents to which access is sought constitute "judicial documents" giving rise to a presumption of access; next, if so, the weight accorded the presumption; and third, whether there are any factors "legitimately counsel against ... release of the materials, weighing... or whether they outweigh the presumption of access." Mirlis v. Greer, 952 F.3d 51, Sw 2d Cir 2020; see also Lugosch v. Pyramid Co., 435 F.3d 120, 119-20 2d Cir. ... The central focus of the inquiry is the relevance of the documents to the judicial process rather than the mere name of "post-seizure" access. See Lugosch, 435 F.3d at ...; United States v. Amodeo, 71 F.3d 1044, 1050 2d Cir. 1995.

Presentence reports ... are not considered public documents under the common law." United States v. Moore, 955 F. Supp. 2d 478, 479 S.D.N.Y. 2013. Instead, PSRs are "confidential reports to the trial judge for use in the critical business of sentencing." United States v. Doe, 905 F. Supp. 2d 542, 544 S.D.N.Y. 2004. While it is true that presentence reports are relevant to the performance of the judicial function and useful in the judicial process, the same could be said of many other materials or documents to which a common law right of access indisputably does not attach, such as bench memoranda or early, unpublished drafts of judicial opinions." United States v. Sater, No. 98-CR-1101-1 Cr. 2019 WL 30... at 42 at 5 E.D.N.Y. July 22, 2019 citations and quotation marks omitted; see also United States v. Haggerty, No. 18-... 8-cr-167-1 PG, 2021 WL 1 ... at *2 W.D.N.Y. Apr. 7, 2021.

Accordingly, the Second Circuit requires "that parties [to] satisfy a heightened standard in order to obtain access to a PSR." Rule v. United States, 526 F. App'x 63, 66 2d Cir. 2013 summary order; see United States v. Charmer Industries, Inc., 711 F.2d 1164 2d Cir. 1983. Specifically, a third party seeking access to a PSR bears the burden of making a compelling demonstration that disclosure of the report is required to meet the ends of justice." Id. qualia research... ... may, where a compelling demonstration of special need for disclosure is shown, should the district court to allow the inspection. However, the court should limit disclosure to those portions of the report which are directly relevant to the demonstrated need. United States v. Corbit, 8 F.3d 222, 224 7th Cir. 1994.

II.     Discussion

   A.     Valenzuela-Trujillo's Motion for Disclosure of PSR Information Should Be Denied

With respect to his perjury claim, Valencia-Trujillo appears to argue that he is entitled to information from Salcedo's, Gutierrez Martinez, and Ruiz's PSRs on the basis of alleged prosecutorial misconduct surrounding the government's "failure to correct" perjury by the alleged cooperating witness, Diego Mejia. See Mot. at 3-4. Valencia-Trujillo asserts that he can allege Mejia perjured himself when testifying that Osoroa-Mejia used certain people as sources of cocaine only "by May 1, 2009," whereas documents show that Osoroa-Mejia may have used those sources before that date. See id. at 3-4. But Valencia-Trujillo again makes no effort to explain how this theory is material to his guilt and how it supports any of the underlying evidence of his guilt. In assuming, arguendo, that this fact was material to Valencia-Trujillo's conviction, Valencia-Trujillo also makes no effort to explain how such testimony was related to Salcedo, Gutierrez Martinez, and Ruiz, let alone whether it was willfully false or why the government should have known it was willfully false. Valencia-Trujillo has neither shown prosecutorial misconduct nor any compelling need for disclosure of PSR information based on this claim of perjury.

Finally, the government notes that even if Valencia-Trujillo had shown a cognizable interest in obtaining PSR information, it would need to be weighed against the very real risks of danger with respect to revealing personal information about witnesses and other related parties with a witness. As the district court noted at Valencia-Trujillo's resentencing in December 20__:

> Not aware that I do not have access to the witness box, multiple assassins in the witness box that are new to some witness protection program somewhere in the world. This case is really in serious. This case because its margins do it's nobody not only in the two countries but elsewhere in the world. The sentence is not cannot be understated, made at the time when it was turned not had

Resentencing Tr. at 28-29.

Accordingly, the government respectfully requests that the Court deny Valencia-Trujillo's motion for access to PSR information.

**B.    Valencia-Trujillo's Motion for the Unsealing of Other Documents**

Valencia-Trujillo's motion to unseal all documents on the docket for defendants Salcedo, Gutierrez, Martinez, and Ruiz should also be denied in part. Although Valencia-Trujillo alleges that certain "these ... case documents are not available on Pacer" for defendants Salcedo, Gutierrez Martinez, and Ruiz, the government understands that this is not because those documents are sealed, but rather because they are not available electronically on the Court's website due to this case's age. Accordingly, to the extent Valencia-Trujillo is requesting that the Court unseal documents that are not sealed, including the "indictment,"

"complaint," and any other "judicial documents," see [ ], and the request should be denied as moot.

From the government's review of the dockets for [ ], the [ ] appear to be nine documents in total that are sealed, which are listed in the table below:

| ECF No. | Date | Description |
| --- | --- | --- |
| 156 | 04/5/2001 | SEALED DOCUMENT: Letter dated 4-24-10 |
| 175 | 06/23/2001 | SEALED DOCUMENT: Letter placed in vault |
| 182 | 08/11/2001 | SEALED DOCUMENT placed in vault |
| 188 | 12/06/2001 | SEALED DOCUMENT placed in vault |
| 196 | 12/11/2001 | SEALED DOCUMENT placed in vault |
| 281 | 05/11/2006 | Sealed Letter placed in vault as per order of May [ ] |
| 282 | 05/12/2006 | SEALED DOCUMENT placed in vault as per order of May [ ] |
| 283 | 05/19/2006 | Sealed Letter placed in vault as per order of May [ ] |
| 285 | 05/19/2006 | SEALED DOCUMENT placed in vault as per order of May [ ] |

The government has reviewed the entirety of its own local files relating to this case and has not been able to locate copies of the above documents. Accordingly, the government requests that the [ ] requests that the Court direct the Clerk of Court to provide copies of these documents to the government so that it may review them and determine its position as to whether they should be unsealed in accordance with the test Court sets forth in Shane Group.

IV.   Conclusion

For the reasons set forth above, the government respectfully requests that the Court [ ] deny Valencia-Trujillo's motion for disclosure of ECF information [ ] its entirety, and deny as moot the portion of Valencia-Trujillo's motion to unseal that relates to any [ ]

Valencia-Trujillo also requests the unsealing of the complaint in United States v. Martinez, et al., Docket No. [ ] (E.D.N.Y.). From the government's review of the docket, the complaint likewise appears to be unavailable electronically on PACER rather than sealed.

5

documents that are not sealed, and to submit the Court's order to preserve the government with copies of ECF Nos. 186, 187, 182, 198, 199, 261, 282, 283 and 284 in United States v. Donaldson, Docket No. 04-CR-919-JG-11 (E.D.N.Y.)

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: _____

Brooke Theodora
Assistant U.S. Attorney
(718) 254-8542

cc:   Clerk of the Court (E.D.N.Y.) (CH)
      Joaquin Mena-Valencia Eng Devlin Clio Martin

Case: 25-mc-01479-RER    Document 3    Filed 08/26/25    Page 1 of 94 PageID #: X

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

IN RE MOTION TO INTERVENE AND UNSEAL,

Case No. 25-MC-1479-ENV

### THIRD PARTY'S REPLY TO THE GOVERNMENT'S RESPONSE TO THIRD PARTY'S VERIFIED MOTION TO INTERVENE AND UNSEAL

The Third Party Jacques Marie Velasco Trujillo ("Third Party"), pro se, hereby replies to the government's response to his Verified Motion to Intervene and Unseal all 9 sealed "judicial documents" and portions of Pre-Sentence Investigation Reports (PSRs) pertaining only to four (4) co-defendants – Gustavo Martinez (Martinez), Carlos Echeverry (Echeverry), Carlos Ruiz (Ruiz), and Raymond Gutierrez (Gutierrez) – who entered guilty pleas and fully cooperated with the government in a 25-year-old criminal case regarding a conspiracy to import and possess with intent to distribute approximately a metric ton of cocaine seized on May 1, 2000, as charged in E.D.N.Y. Case No. 00-CR-_____ (JG). The Third Party avers as follows:

The Honorable Judge Eric N. Vitaliano issued an Order to Show Cause (OSC) on April 28, 2025, initially allowing the government until May 12, 2025, to show good cause, in writing, why the Court should not grant the Verified Motion to Intervene and Unseal filed by the Third Party on April 7, 2025. On May 16, 2025, the Court granted the government's motion for an extension of time, allowing an additional 3 months until August 11, 2025, for the government to respond to the OSC.

Case 1:20-cr-20576-KMM   Document 5   Filed 09/24/25   Page 2 of 35 PageID #: 200

## The Court should conduct *in camera* inspection of the sealed judicial documents

The response to the OSC was filed on August 15, 2025 [DCT No. 8] claiming that "the government has been unable to locate" the sealed judicial documents", see id. at p. 2, ¶ 3, pro se, and requesting that the Clerk's Office make copies of the sealed judicial documents that were placed on a cart, if any government table being more sealed judicial documents "placed in vault", and deliver the copies to the government so counsel can determine its position as to the requested hearing.

The Third Party requests that the Honorable Breana Mahoney, Clerk of Court, be directed to personally open the "vault" and produce complete copies of the sealed judicial documents [DCT Nos. 135, 157, 152, 193, 194, 261, 262, 263 and 264 in Case No. 1:04-CR-60815-JIC] as to cooperating codefendants Martinez, Echeverry, Ruiz, and delivered *to the Chambers* of the Honorable United States District Judge Eric N. Williams for *in camera inspection* to confirm that the Third Party was never implicated by these four cooperating codefendants in any way as either a source or co-conspirator in the conspiracy related to the approximate nine metric tons of cocaine seized on May 1, 2004. The Third Party also requests that, upon its finding that the Third Party was *not* implicated, the Court allow him full access to the sealed judicial documents as such evidence of his non-involvement in the May 2004 conspiracy is *exculpatory evidence suppressed under the sealing that occurred only a few weeks before his 2006 trial on a 2004 criminal case that had been closed for years.*

### The Third Party is entitled to access under the Constitution and Common Law

The Third Party has a qualified right of access to the requested sealed judicial documents under both the First Amendment to the Constitution and the common law. *See United States v. Sater*, 2025 U.S. Dist. LEXIS 13749 (E.D.N.Y.) at *5 ("the records at issue enjoy a qualified right of access under both the common law and the First Amendment") (granting motion by third-party members of the press to unseal judicial documents in criminal case of defendant who pleaded guilty to participating in RICO enterprise); *United States v. Bruno*, 94 F. Supp. 2d 583 (E.D.N.Y. 2013) (granting petition filed by third-party members of the press to unseal the sentencing memorandum filed by counsel for a former N.Y. State Senator who pleaded guilty to a mail fraud conspiracy); *United States v. Doe (In re John Doe)*, 801 F. Supp. 2d 294 (E.D.N.Y. 2021) (granting request to unseal filed by third-party intervenors). Other courts have granted motions to unseal filed by third parties in criminal cases. *See In re Sealed Search Warrants*, 2008 U.S. Dist. LEXIS 20772 (N.D.N.Y. 2008) (granting motion to unseal FBI search warrants filed by third-party reporter for newspaper construed as a motion to intervene and to unseal). The qualified right to access judicial records guaranteed by the common law and the First Amendment is not only enjoyed by the press, but also by "the public at large." The government's discussion of the "relevant law" fails to address the First Amendment right to access the sealed judicial documents requested. *See* ECF No. 8 at p.5 ("Relevant Law").

3

Case 1:25-cr-01276-RFB    Document 9    Filed 05/.../25    Page 5 of 25 PageID #: 204

After this Court conducts the requested in camera inspection, all once-sealed judicial documents should be unsealed. To the extent any redactions are ordered, the Court should "articulate the basis for any chosen order [or redactions], supplying still some basis for appellate review on the public record." *Id.* at *7 (brackets added, citations and internal marks omitted).

**The Third Party's request that all "judicial documents" be accessible via Pacer**

The Third Party only moves to unseal the once-sealed documents on the docket of the case filed against the codefendants Martinez, Echeverry, Ruiz, and Gutierrez. The government misconstrued the precise request that all other judicial documents docketed in the case be made available on Pacer as a "criterion" for "unsealing." *See* ECF No. 8 at pp.5-6, *but see* Motion to Intervene and Unseal, ECF Doc. 1 at p9 (Third Party moving to unseal only nine (9) documents – ECF Docs. 156, 157, 158, 159, 160, 161, 162, 163, and 264 – and requesting that all other judicial documents docketed be made available via Pacer, including the "complete related "complaint" that was filed under Docket No. 1:24-mj-00745-RLM-9 (E.M.-9) D.N.Y.)).

**The Third Party has a "compelling need" for the requested portions of the PSRs**

The government asks the Court to deny the Third Party's motion for disclosure of located portions of the four codefendants' PSRs, while disingenuously arguing that only a "conclusory allegation" has been made that these codefendants were part of "the same conspiracy" to possess the same level of cocaine" also alleged against

Case 1:25-cv-...479-RFP   Document 9   Filed 03/28/25   Page 9 of 94 PageID #: 175

the Third Party," which is plainly insufficient to satisfy the heightened standard that applies to third parties attempting to gain access to PSRs." S.J. ECF Doc. 8 at p.4 (quoting Motion to Intervene and Unseal at p.3). However, the government is aware that the Third Party was also charged with the exact same load of cocaine seized on May 1, 2008. See Exhibit A (trial testimony of U.S. Customs Agent John Kane at the Third Party's 2008 trial as to the involvement of Martinez, Ruiz, and Echeverry with the approximate amounts of cocaine seized on May 1, 2008); Exhibit B (affidavit of FBI case agent Rodrick Ekil specifically identifying Gustavo Martinez as the Third Party's "representative" for the delivery of the cocaine seized on May 1, 2008). The government also disingenuously argues that "even assuming [the Third Party] provided particularized reasons for requesting access to these defendants' PSRs, he fails to identify any compelling need for this information. In particular, [the Third Party] fails to explain how evidence of his non-involvement in a single instance of drug trafficking would have made any difference at his trial, at which the government introduced overwhelming evidence of his guilt." S.J. ECF Doc. 8 at p.4 (brackets added). However, the Third Party's prosecutor urged the jury to convict him as to all charges based only on his alleged involvement with the conspiracy that resulted in the seizure of May 1, 2008. See Exhibit C at p.5 (AUSA's closing at Third Party's trial urging jury to count each person in organization related to the May 1, 2008 seizure because the 5 persons needed to convict the Third Party of a continuing criminal enterprise).

The Third Party has a compelling need to show *actual innocence* as to the New York conspiracy and the prosecutorial misconduct in suppressing exculpatory evidence by sealing only weeks before his 2005 trial in order to knowingly present the perjured testimony of its "star" trial witness. *See* Exhibit F [ XXX ] averring that "...after the conviction of Villareal-Trujillo of all charges, *the foreman of the jury contacted this office and indicated that the jury found Ramiro Orozco-Mejia entirely credible and the most important witness the government presented during the four-month trial. He further indicated that the jury relied heavily upon Orozco-Mejia's testimony in reaching the verdict.*" (emphasis and brackets added). Under Eleventh Circuit law applicable to the Third Party's forthcoming habeas petition, the government's failure to correct material false testimony violates the constitutional right to a fair trial and shows prosecutorial misconduct. *See United States v. Alzate,* 47 F.3d 1103, 1110-11 (11th Cir. 1995) (remanding for new trial as defendant "needed to put his defense forward free of the prosecutorial misconduct.") The Third Party is mindful there is no First Amendment right of access to PSRs, but "[s]ince the presentence report is ordinarily in the district court's possession...the common law right of access attaches to this document. However, the important question is what kind of showing will be sufficient to warrant disclosure of the contents of the report to a third party." *See United States v. Corbitt,* 879 F.2d 224, 237 (7th Cir. 1989). The Second Circuit requires a showing of special need before a third party can obtain access to PSRs.

The Third Party underscores the materiality of the information suppressed by the sealing of the nine judicial documents, as their content would have shown that the government prosecution knowingly presented the material false trial testimony of Orozco-Mejia that the source of the cocaine load seized on May 1, 2000 was the Third Party (code-named "Abogado") and that he/they did not become his source *after* May 1, 2000. And, according to the information that the jury foreman conveyed to the government after trial, "the jury relied heavily upon Orozco-Mejia's testimony in reaching the verdict." *See* Exhibit 3: (AUSA Marcia Chupe Lopez's letter at p.2.

The Third Party has satisfied the "compelling, particularized need standard". Correa, as he must present credible and compelling evidence of *actual innocence*, which the government suppressed and constitutionally ineffective counsel failed to present at trial to show he had no involvement in the conspiracy that resulted in the seizure of May 1, 2000, which tainted all of his jury verdicts. *See Reeves v. Fayette* 897 F.3d 1414, 5456-5 (9th Cir. 2017) ("petitioner seeking access to a federal habeas court in the face of a procedural obstacle must advance both a 'legitimate constitutional claim and a credible and compelling claim of actual innocence. It is the combination of the two claims — that the petitioner is likely innocent and that his conviction was likely the result of nonharmless constitutional error — that permits a habeas court to revisit the petition notwithstanding procedural obstacles in order to avoid a miscarriage of justice." (citing *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

The Third Party vigorously disputes the government assertion that there exists a "real risk of danger with respect to revealing personal information about witnesses and other related parties in this matter". ECF No. 8 at p.5 but any such concerns can be addressed by redactions, provided all the exculpatory information is fully revealed. *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F.Supp.2d 577, 583 (S.D.N.Y. 2009) (citing cases ordering redacted disclosure). *Same at* "5 ("where a First Amendment presumption of access attaches to a judicial document, the document must be made public unless the court makes 'specific, on the record findings ... demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" (quoting *Lugosch v. Pyramid Co.*, 435 F.3d at 120).

## CONCLUSION

For all of the foregoing reasons, Third Party Joaquin Mario Valencia-Trujillo respectfully requests that:

(A) the Honorable Brenna B. Mahoney Clerk of Court, be directed to open the vault containing the sealed documents requested (ECF Doc Nos. 136, 145, 152, 168, 186, 261, 262, 263 and 264 in Case No. 5:04-R-008) strictly only as to the codefendants Gustavo Martinez, Carlos Echeverri, Carlos Renz, and Raymond Gutierrez, and produce copies of said sealed documents to the Private Chambers of the Honorable U.S. District Court Judge Eric N. Vitaliano for *in camera* inspection so as to confirm that the Third Party was not implicated, in any manner, as a source or as a coconspirator in the charged conspiracy related to the cocaine seized on May 1, 2000.

(B) the Honorable Chief Probation Officer Robert L. Capers, U.S. Probation Office (E.D.N.Y.), be directed to produce copies of the Pre-Sentence Investigation Reports only as to the codefendants Gustavo Martinez, Carlos Echeverri, Carlos Renz, and Raymond Gutierrez, to the Private Chambers of the Honorable U.S. District Court Judge Eric N. Vitaliano for *in camera* inspection to confirm that the Third Party was not implicated, in any manner, as a source or as a coconspirator in the charged conspiracy related to the cocaine seized on May 1, 2000;

11

(E) the Court, upon confirming that defendants Gustavo Marquez, Carlos Echeverry, Carlos Ruiz, and Raymond Gutierrez, identified others unrelated to the Third Party as the source of the cocaine seized on May 1, 2006, grant the motion to unseal the nine sealed documents in their entirety.

(D) to the extent any redactions are ordered, the Court should articulate the grounds for redactions, supplying sufficient basis for appellate review on the record, and

(E) the Court direct the Clerk's Office to make available for public access on Pacer all of the "judicial documents" filed, but not sealed, in Case No. 06-CR-818-18 (DLI) only, as to codefendants Gustavo Marquez, Carlos Echeverry, Carlos Ruiz, and Raymond Gutierrez, which are not currently available on Pacer, including the related complaint filed under Docket 06-mj-00748-RLM-6 (RLM) (E.D.N.Y.)

Respectfully submitted,

Joaquin Mario Valencia-Trujillo
Register Number 03450-748
FCI Oakdale II
Federal Correctional Institution
P.O. Box 5010
Oakdale, Louisiana 71463

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a true and correct copy of the foregoing *THIRD PARTY'S REPLY TO THE GOVERNMENT'S RESPONSE TO THIRD PARTY'S VERIFIED MOTION TO INTERVENE AND UNSEAL* on the United States Attorney's Office for the Eastern District of New York by mail sent to 271 Cadman Plaza East, Brooklyn, NY 11201 on this 19th day of August, 2025.

Joaquin Mario Valencia-Trujillo

# EXHIBIT A.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Case No. 8:03-CR-307-T-17

UNITED STATES OF AMERICA

          Plaintiff,

     v.                                   May 17, 2006

JOAQUIN MARIO VALENCIA TRUJILLO

          Defendant.

          TRANSCRIPT OF TRIAL PROCEEDINGS
     BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
          UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:       Joseph Ruddy
                          MARIA CHAPA-LOPEZ
                          Assistant U.S. Attorney
                          U.S. Attorney's Office
                          400 North Tampa St.,
                          Ste. 3200
                          Tampa, FL 33602


For the Defendant:        Daniele Fabbri, Esq.
                          Tampa, Fitzgerald
                          101 E. Kennedy Dr
                          Tampa Division 33602-3144

                          Jamil Hoffidani, Esq.
                          Kipperman Hoffidani PA
                          400 1st Ave S Ste 208
                          St. Petersburg, FL 33701

Requested by:                    Sandra A. Lee, RDR
                                 Official Court Reporter
                                 U.S. District Court
                                 801 North Florida Avenue
                                 Tampa, FL 33602
                                 813-301-5894

COMPUTERIZED REPORTED
COMPUTER AIDED TRANSCRIPTION

INDEX

| WITNESS: | PAGE |
|---|---|
| JOHN KANE | |
| DIRECT EXAMINATION | |
| BY MS. CHAPA-LOPEZ: | |
| CROSS-EXAMINATION | |
| BY MR. RODRIGUE | |
| REDIRECT EXAMINATION | |
| BY MS. CHAPA-LOPEZ: | |
| MAUREEN CRAIG | |
| DIRECT EXAMINATION | |
| BY MS. CHAPA-LOPEZ: | |
| CROSS-EXAMINATION | |
| BY MR. RODRIGUE: | |
| JUSTO GAY | |
| DIRECT EXAMINATION | |
| BY MS. KOTHY | |
| CROSS-EXAMINATION | |
| BY MR. PLUMER | |

\*\*\*\*\*

EXHIBITS                ADMITTED

EXHIBITS:                IN EVIDENCE

A.   They arranged ... the location. And then they asked the van to bring a van or a truck so that he could load it up for her, and he hoped to express his ... at the ... theater.

Q.   ... Did you make those arrangements and get a U-Haul van?

A.   ...

Q.   What exactly -- what exactly did you do with the U-Haul van and make -- to make those arrangements?

A.   Well, we actually had rented the van about four days prior in anticipation of that delivery.

Q.   All right.

A.   ... had reached out to one of ... a member, and he owned the van. So we reached out to him ... and he brought the van later that night. About 9 o'clock that night, he brought it over to that location.

Q.   What location was that, again?

A.   It was the movie theater ... from the ... hall in ...

Q.   Okay. And what, if anything, did you see ... that evening?

A.   Well, we ... surveillance. We had the ... And we observed Gustavo Martinez ...

A    Well, we maintained surveillance all through the night. Probably sometime around midnight, we observed a green Montero circling the area, probably [can go from there].

Q    All right. And what, if anything, did you see this Montero do other than circling?

A    Well, the Montero was circling. We could definitely see that there were at least two only appearing in it. One appeared to be in the [rear] plate. We were able to copy down the license plate.

Q    Okay. And what, if anything, happened next?

A    Well, we waited through the night. At about 6:30 in the morning, the team that was on Montero Martinez observed him come out of the apartment building that we were [at] the night before.

Q    Okay. And where did he go?

A    Well, he met — he met another male Hispanic in the Montero. They got into a car that was registered to [Zeferino Silva], and they departed the area.

Q    And where did they go?

A    [...] He just... was [engaged] in the car that Martinez was driving to the [...] [location].

Q.   All right.   So what, if anything, did you see occur next?

A.   Well, about [illegible] later. [illegible] arrived at that location. He got into the car that we had surveilled him in the night before, and he drove back to the Green Point industrial [illegible].

Q.   [illegible] was that [illegible]?

A.   That was to me about a block [illegible] by her [illegible] probably arrived at a time between 5:00 and 6:00.

Q.   Okay.   So then what happened next?

A.   He parked his car a couple blocks away from the Green Point industrial center, and he walked [illegible].

Q.   All right.   And what, if anything, did you [illegible]?

A.   Well, I [illegible] surveillance in the car. As [illegible] agents [illegible] in the area. [illegible] within 30 minutes or half an hour, I observed the same Korean from the night before being parked behind [illegible].

Q.   All right.   And what else did you see?

A.   Then I saw [illegible] actually get out of the [illegible], which was a [illegible].

Q.   All right.   So [illegible] got out of the

morning [illegible] the Expressway, the Montero and the
Altima make a left turn. Bradley heads to the
B-2?

Q.   The B-2 being the --

A.   The Brook or Queens Expressway.

Q.   All right.

A.   And Kobrovsky made a right turn, heading
back towards [illegible].

Q.   All right.  So then what happened next to
the Montero?

A.   Well, I maintained surveillance on
Kobrovsky, and the rest of the team followed the
Montero.  Eventually it's stopped and they [illegible]
gauge on the Montero.

Q.   All right.  It's [illegible] may be on, on May
1st?

A.   May 1st?

Q.   Is it on May 1st now?

A.   Yes.

Q.   All right.  What, if anything, happened the
rest of the day?

A.   Well, immediately I closed [illegible]. [illegible]
Kobrovsky made contact.  I about back to the
warehouse.  I have her transported back to our
office.

At the same time, Gustavo Martinez is
somebody coming out of the warehouse, getting into
the U-haul that he parked the night before, and
driving that into the warehouse.

Q     Okay.  And this is the warehouse that's
located in Green Point?

A     Green Point industrial center.

Q.    Green Point industrial center.  Okay.  So
then what do you observe happening with the U-haul?

A     Just before I arrived, he had backed out of
the warehouse.  The agents and detectives stopped
him, and they found additional cocaine in the
U-haul.

Q     Okay.  Do you know how much cocaine was
found in the U-haul?

A     I believe 250 kilograms.

Q     Okay.  Do you know how much was found in the
Mercedes?

A     20 kilograms.

Q     Okay.  So these vehicles are owned by
who... Is anything happening about the seizure of
these vehicles?

A     Well, I'm advised by my partner that Gustavo
Martinez is cooperating, and he told my partner
that there was additional cocaine --

Q    Okay.   [illegible]

A    Yes.

Q    [illegible]

A    Well, [illegible]

[illegible lines]

Q    [illegible]

A    [illegible]

Q    [illegible]

A    [illegible]

Q    [illegible]

A    [illegible]

Case 1:25-mc-01479-HG-E    Document 9    Filed 03/24/25    Page 31 of 94 PageID #: 130

# EXHIBIT B.

Case: 8:02-cr-00329-SDM-SPF Document 6 Filed 09/05/02 Page 1 of 2 PageID 907

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

02 SEP -5 PM 2:49

UNITED STATES OF AMERICA

vs.                                          Case No. 8:02-CR-329-T-17EAJ

JOAQUIN MARIO VALENCIA-TRUJILLO,
        a/k/a "Oscar Martinez",
        a/k/a "El Javco",
        a/k/a "El Abogado",

# SEALED

## SEALED ORDER

THIS CAUSE comes on for consideration of the following matter:

Motion: Government's Motion to Correct Arrest Warrant

Filing Date: September 5, 2002

Disposition: GRANTED. The clerk is directed to issue the attached Warrant of Arrest.

DONE and ORDERED at Tampa, Florida this ____ day of September, 2002.

ELIZABETH A. JENKINS
United States Magistrate Judge

cc:      Counsel of record

I certify the foregoing to be a true
and correct copy of the original
SHERYL L. LOESCH, Clerk,
United States District Court
Middle District of Florida
By: _____
        Deputy Clerk

# United States District Court

MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

JOAQUIN MARIO VALENCIA TRUJILLO
a/k/a "Oscar Martinez,"
a/k/a "El Joven," a/k/a "El Abogado"

**WARRANT FOR ARREST**

CASE NUMBER: 8:02-CR-329-T-17EAJ

# SEALED

To: The United States Marshal and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest JOAQUIN MARIO VALENCIA-TRUJILLO, a/k/a "Oscar Martinez," a/k/a "El Joven," a/k/a "El Abogado," and bring him forthwith to the nearest magistrate to answer an INDICTMENT charging him with operating a continuing criminal enterprise, conspiracy to import cocaine, conspiracy to possess with intent to distribute and distribute cocaine, and conspiracy to engage in money laundering.

In violation of Title 21, United States Code, Sections 848(a), 963, 846, and Title 18, United States Code, Section 1956(h).

SHERYL L. LOESCH
Name & Title of Judicial Officer

Signature of Issuing Officer

(By) Deputy Clerk

CLERK, U.S. DISTRICT COURT
Title of Issuing Officer

SEP 05 2002    Tampa, Florida
Date and Location

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida

By: _____

Bail fixed at $ _____    by _____
Name of Judicial Officer

| RETURN |
| --- |
| This warrant was received and executed with the arrest of the above-named defendant at: |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| --- | --- | --- |
| DATE OF ARREST | | |

## AFFIDAVIT

Your affiant, Rodries D. Huff, being duly sworn, states the following:

1.     I am a citizen of the United States of America and reside in the State of Florida.

2.     I am a Special Agent of the Federal Bureau of Investigation (FBI), assigned to the Tampa, Florida Division. I have been a Special Agent of the FBI since August 7, 1989.

3.     The FBI conducts investigations of violations of certain criminal laws of the United States, including violations of Titles 18 and 21 of the United States Code (USC). USC, Title 18 prohibits, among other illegal activities, the laundering of monetary proceeds derived from specified unlawful activity, including drug trafficking. USC, Title 21 prohibits, among other illegal activities, the production, transportation, importation, distribution and possession of illegal drugs, including cocaine.

4.     During the past twelve years, my primary responsibility as a Special Agent of the FBI has been to conduct investigations of organizations and individuals involved in the illegal drug trade. Accordingly, I have developed a certain degree of expertise in conducting these investigations and the illegal methods of operation utilized by drug trafficking organizations and individuals involved with the organizations.

### Background of the Investigation

5.     Since in or around 1999, the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), and the United States Customs Service (USCS) have conducted an investigation of an international cocaine smuggling and

1

F/V Laynoy D, which was managed by Navarrete, for the benefit of Valencia and his criminal organization, forms a substantial part of the factual basis for Counts One, Two and Three (Predicate Acts 35 and 36) of the Indictment.

**Valencia Supplied Large Quantities of Cocaine**

**To a Colombian Distribution Organization Operating In New York City,**

**Until United States Law Enforcement Authorities Began Dismantling**

**The Organization on May 1, 2000**

446. During the course of this investigation, your affiant and other law enforcement agents learned of a United States Customs Service (USCS) task force investigation which had successfully targeted and dismantled a cocaine distribution organization operating in New York City. Reports initially available to your affiant and other law enforcement agents indicated that the leaders of that organization were Hernan Barrera Dorado and Ramon Orozco, both Colombian citizens, and that one of their primary sources of cocaine was "Mario Valencia," of Cali, Colombia.

447. After learning of the New York USCS investigation, your affiant and other law enforcement agents traveled to New York City and discussed the investigation with the case agents and prosecutors. Your affiant and other law enforcement agents reviewed the USCS reports and evidence collected during the investigation, and interviewed cooperating witnesses who had worked within the cocaine distribution organization. Based upon this review, your affiant provides the following information regarding the USCS investigation.

448. Beginning in April, 2000, the USCS task force began investigating Hernan

Barona Dorado (hereinafter referred to as Dorado), also known as Fernando Zapata, and his cocaine distribution organization. The USCS had received information indicating that Dorado had been involved in the distribution of significant quantities of cocaine for more than ten years.

449. As a part of their investigation, the USCS case agents conducted surveillance of several members of Dorado's organization. They identified one member of the organization as a money courier and made a covert approach on this subject on or around April 6, 2000.

450. This subject, a Colombian national, consented to a search of his/her apartment and directed the case agents to currency in the amount of approximately $350,000.00 USD which was hidden in the apartment. He/she admitted that this money was derived from the distribution of cocaine by Dorado's organization. The subject was arrested and agreed to cooperate with the USCS case agents in their continuing investigation. (This cooperating witness hereinafter will be referred to as CW #10.)

451. Thereafter, CW #10 was extensively debriefed and recorded numerous telephonic and face-to-face conversations between himself/herself, Dorado and other members of Dorado's criminal organization.

452. In his/her debriefings, CW #10 advised that he/she first became involved as a money courier for cocaine traffickers in or around 1996. He/she was recruited by an acquaintance he/she knew from Cali, Colombia, and successfully delivered approximately $500,000.00 from New York City to Palm Beach, Florida. After this currency transportation operation, CW #10 returned to Colombia.

453. In or around late 1996 or early 1997, CW #10 permanently moved from

-20

distributors working for Orozco and Dorado, and to deliver it to whomever they designated.

459    During this time period, Orozco was constantly striving for a better source of supply for cocaine. He wanted much larger quantities, which he believed he and Dorado could distribute, and financial terms which would allow them to get better established.

460    In or around mid-1993, Orozco traveled to Cali, Colombia, to negotiate with a significant supplier of cocaine. His purpose was to convince this subject that their organization could successfully receive and distribute large shipments of cocaine in New York City.

461.    Initially, CW #10 was not aware of the identity of the cocaine supplier with whom Orozco was negotiating. However, soon after Orozco met with this subject, Dorado bragged openly about establishing a huge connection. He called their new supplier "El Abogado" and described him as "one of the Valencias."

462.    CW #10 told Dorado that he/she was a personal acquaintance of Mario Valencia from Cali. Further, he/she knew Valencia's wife and children. Dorado was surprised and confirmed that this was their organization's new source of supply for cocaine. Dorado told CW #10 that Valencia had agreed to send them 600 kilograms of cocaine as a test of their organization's abilities.

463.    While waiting for this first large shipment of cocaine from Valencia, the organization continued distributing smaller quantities which they were regularly receiving. CW #10 continued to retrieve and count currency, and deliver as directed by Dorado.

122

Case 2:01-cr-00626-RCS-AJ... Document... filed ... Page ... PageID ...

regularly insured. The USCS agreed to deliver the currency to preserve the integrity of the investigation.

498. On or around April 16, 2000, Dorado traveled from the United States to Cali, Colombia. From that point on, he talked with CW #10 from Cali.

499. On or around April 19, 2000, during a recorded telephone conversation, Dorado informed CW #10 that he was in negotiations with "Victoria" to resolve 400 kilograms of cocaine. "Victoria" told Dorado that his organization had the cocaine in New York City and was ready to deliver it. CW #10 agreed to stand by for further instructions.

500. On or around April 20, 2000, during a recorded telephone conversation, Dorado again directed CW #10 to retrieve a payment from one of his distributors. However, Dorado did not give CW #10 instructions regarding delivery of the money. At the direction of the USCS, CW #10 made this pick up and turned the money, approximately $143,000.00 USD, over to the USCS.

501. On or around April 24, 2000, during a recorded telephone conversation, Dorado instructed CW #10 to have another member of the organization rent a U-Haul truck to receive the next shipment of cocaine.

502. On or around April 25, 2000, during a recorded telephone conversation, Dorado advised CW #10 that he and Orozco were with Valencia, whom he referred to as "El Abogado," at his office, and that they were negotiating terms for purchasing 900 kilograms of cocaine. Dorado said that he would pass CW #10's telephone number to Valencia's representatives in New York City and that they would contact him/her to make delivery arrangements. CW #10 asked whether Dorado still intended to receive

the shipment from "Victoria" and Dorado said that that deal had been postponed

503. On or around April 26, 2000, during a recorded telephone conversation, Dorado confirmed to CW #10 that he had canceled the order for the shipment of cocaine from "Victoria." Dorado stated that the organization would definitely receive the shipment cocaine from Valencia, whom he referred to as "El Abogado." Dorado told CW #10 to stand by for contact by Valencia's representative in New York City.

504. On or around April 27, 2000, during a recorded telephone conversation, CW #10 advised Dorado that he/she had still not received a call from Valencia's representative. Dorado told him/her to be patient and that he was in regular contact with Valencia, whom he referred to as "El Abogado."

505. On or around April 27, 2000, during another recorded telephone conversation that day CW #10 spoke with both Orozco and Dorado. They reiterated that they were in regular contact with Valencia, whom they referred to as "El Abogado," and that they expected the delivery of cocaine would take place very soon.

506. On or around April 27, 2000, during another recorded telephone conversation that day, Dorado spoke with CW #10 and told him/her to expect a call from Valencia's representative the next day. Dorado also confirmed that Valencia's organization was sending them 900 kilograms of cocaine in the upcoming shipment.

507. On or around April 29, 2000, during a recorded telephone conversation, Dorado told CW #10 that he had spoken with Valencia, whom he referred to as "El Abogado," and that he expected the cocaine would be delivered later that day or the next day.

508. On or around April 30, 2000, CW #10 received a numeric page and called

131

the number indicated. He/she spoke with an unknown subject, later identified as Gustavo Martinez Ruiz (hereinafter referred to as Martinez). CW #19 and Martinez exchanged code words previously provided by Valencia to Dorado, and from Dorado to CW #10. CW #10 and Martinez agreed to meet later that day.

509. Later on April 30, 2000, CW #10 and another member of Dorado's organization met with Martinez. Martinez told them that he had a 144 kilogram shipment of cocaine to deliver and that he needed them to provide a vehicle for the delivery. CW #10 told Martinez that their organization was expecting 900 kilograms in two shipments of 450 kilograms each. Martinez told him/her to call the "office" because he was only authorized to deliver 144 kilograms.

510. Later on April 30, 2000, during a recorded telephone conversation, CW #19 explained to Dorado that Valencia's representative, Martinez, was only offering to deliver 144 kilograms. Dorado instructed him/her to accept the shipment and surmised that the organization would ultimately receive the balance of the promised 900 kilograms of cocaine.

511. Later April 30, 2000, CW #10 and another member of Dorado's organization met Martinez and followed him to an area near a warehouse district in New York City. Once there, CW #10 and the other member of the organization parked and left a rented U-Haul truck. They agreed with Martinez that they would return the next day and retrieve the truck after it had been loaded with cocaine.

512. The USCS case agents set up surveillance on the U-Haul. Later, Martinez moved the truck and drove another vehicle to a nearby apartment. For the remainder of that night, the USCS maintained surveillance of both the U-Haul truck and

137

the apartment.

513    Later that night, the USCS case agents who were watching the U-Haul truck observed two unknown subjects in a Mitsubishi Montero repeatedly drive by the U-Haul truck. While driving by, the unknown subjects appeared to be using a cellular telephone.

514    Early the next day, May 1, 2000, the USCS case agents who were watching the apartment observed Martinez leave and drive another vehicle to the area where the U-Haul truck was parked. Martinez parked his vehicle near the U-Haul truck and walked to a nearby warehouse.

515    Shortly thereafter, the USCS case agents observed the Mitsubishi Montero, observed the night before, park at the warehouse. When it rolled, the Mitsubishi Montero, accompanied by two other vehicles, began to drive away. The USCS case agents reported that the Mitsubishi Montero appeared to be carrying a heavy load, part of which was visible in the rear of the vehicle. The Mitsubishi Montero was stopped out of the vicinity of the warehouse and the USCS case agents discovered 293 kilograms of cocaine in the rear of the vehicle.

516    Meanwhile, the USCS case agents watching the U-Haul truck observed Martinez return and enter the truck. He drove it to the same warehouse and parked it at a loading dock. Approximately fifteen minutes later, Martinez drove the rented U-Haul truck away from the warehouse. The USCS followed the vehicle out of the immediate area, stopped it and discovered approximately 140 kilograms of cocaine packed inside the truck.

517.    The USCS case agents arrested Martinez and escorted him back to the

133

Case 85-bc-00320-RFS ABS   Document of document Filed 00/00/00 Page 3 730

warehouse. He agreed to cooperate with the USCS and admitted that there was a significant amount of cocaine remaining in the warehouse.

518   The USCS case agents secured the warehouse and obtained a search warrant. They executed the search warrant and discovered another 615 kilograms of cocaine and records regarding the receipt and distribution of cocaine.

519   Later, on or around May 1, 2000, during a recorded telephone conversation, CW #10 was directed by the USCS to inform Dorado that he/she could not reach any of the members of their organization and that he/she had observed law enforcement authorities near the residences of two members of the organization.

520.   On or around May 2, 2000, during two recorded telephone conversations, Dorado and CW #10 discussed the possible origins of the law enforcement problem. Dorado also told CW #10 that he had informed Valencia, whom he referred to as "El Abogado," about the problem and was waiting for a call from him. All consensually monitored and recorded calls were then discontinued.

521   Based upon the USCS investigation, Dorado, Martinez and approximately 15 other subjects were indicted in the United States District Court for the Eastern District of New York. All of the subjects who were arrested, except one, pleaded guilty to federal drug violations. One subject was released on a bond and fled. Dorado was never captured and is residing in Colombia.

522.   When your affiant and other law enforcement agents interviewed CW #10 after the conclusion of the USCS investigation in New York City, CW #10 positively identified Valencia in a photograph which depicted more than fifty other subjects. He/she advised that Valencia was the person whom he/she, Dorado and Ordaz

134

referred to as "El Abogado."

523. Your affiant and other law enforcement agents also interviewed Martinez regarding his role in the cocaine transactions described above. Martinez, a Colombian national from Valle, admitted that he had been responsible for receiving and distributing two shipments of cocaine from his organization while in New York City. Martinez further admitted that two weeks before he was arrested, his organization had delivered 1450 kilograms to the warehouse he had rented. His boss in the organization gave him a list of customers and quantities of cocaine that he was to deliver to those customers. Martinez was in the process of distributing that 1450 kilogram shipment of cocaine, when he received an additional 800 kilograms of cocaine with similar instructions. Martinez admitted that one of the customer contacts on the list for the second shipment of cocaine was CW #10.

524. Martinez explained to your affiant that there were approximately 1040 kilograms of cocaine seized on the day of his arrest because his organization had not yet finished distributing all of the first shipment of cocaine.

525. Martinez also explained that the Colombian organization for whom he worked always sent the cocaine via the sea from Colombia to Mexico. From Mexico, the cocaine would be transported across the border into the United States and delivered by truck to New York City and other locations.

526. During his interview, Martinez appeared extremely nervous and was visibly shaking. He expressed fear of the most extreme retaliation for his cooperation and either could not or would not identify the leaders of the drug trafficking organization for whom he worked.

135

Case 1:25-cv-03175-REP   Document 6   Filed 38-24-35   Page 1 of 9a PageID # 143

# EXHIBIT C.

Case 1:25-mc-01426-BPB    Document 9    Filed 08/04/25    Page 48 of 91 PageID #: 135



SANDRA K. LEE, RMR, OFFICIAL UNITED STATES COURT REPORTER

Case 1:26-cv-01479-GLR   Document 1   Filed 06/26/26   Page 51 of 94 PageID # 159

# EXHIBIT D.

SANDRA K. LEE, RPR, OFFICIAL UNITED STATES COURT REPORTER



SANDRA K. LEE, RPR, OFFICIAL UNITED STATES COURT REPORTER

Case 1:25-rc-01879-RHB     Document 8     Filed 06/24/25     Page 37 of 94 PageID # 16x

# EXHIBIT E.



U.S. Department of Justice
United States Attorney
Middle District of Florida

December 30, 2003

Eric E. Morales
Assistant United States Attorney
United States Attorney's Office
99 N.E. 4th Street
Miami, Florida 33132

Re:    Barry Carter Moss

Dear Mr. Morales:

Exhibit No.__    ____

for the conviction of Valencia-Trujillo of all charges. Orozco-Mejia's testimony, in my Office and including several other jury Special Agents considered Orozco-Mejia one of the most important witness the government presented during the four month trial. He further estimated that the jury relied heavily upon Orozco-Mejia's testimony in reaching their verdict.

Pending the Valencia-Trujillo trial, Orozco-Mejia was brought to the Middle District of Florida and for his safety was housed in the Special Housing Unit of the Hillsborough County Jail in 24-hour lockdown for approximately three weeks. Despite this inconvenience he remained positive and eager to assist. Throughout my contact with him, Ramon Orozco-Mejia was completely candid, forthright and consistent in his account of the events to which he ultimately testified.

Based upon the aforementioned, I would request that you and your Office favorably consider the significant cooperation provided by Ramon Orozco-Mejia as substantial assistance in support of a sentence reduction. I leave the extent of any recommended departure to your sound judgement and Office policy. No promises were made to him for his cooperation except that I would make the nature and extent of that cooperation known to you. In support of this letter, I stand ready to appear at a Rule 35 hearing on behalf Mr. Orozco in the event you deem it necessary.

Eric E. Nimbus
December 30, 2008
Page Three

Should you have questions please feel free to contact me at (813) 274-6343.

Sincerely,

A. BRIAN ALBRITTON
United States Attorney

By: _____

MANUEL E. LOPEZ
Assistant United States Attorney

cc:    Robert Reginald Dunlap, Esq.
       Suite 730
       2937 S. Bayshore Drive
       Miami, Florida 33133
       Attorney for Syrian Oronco-Nieja

# EXHIBIT F.

NOTARIA 26 OF CIRCULO DE MEDELLIN

## 26 NOTARY OF THE CIRCUIT OF MEDELLIN

ABG. ABOGADOS CLIENTES
26 NOTARY OF THE CIRCUIT OF MEDELLIN

CERTIFIED OFFICIAL TRANSLATION FROM SPANISH
INTO ENGLISH

Edwin Andrés Rodríguez Vásquez
Traductor e Intérprete Oficial
Inglés - Español - Inglés
Cert. de Idoneidad No. 0-003 de 20/05/2014

Case 1:25-cr-00479-PGB   Document 7   Filed 05-28-2025   Page 05 of 94 Page ID # 265



# REPÚBLICA DE COLOMBIA
### MINISTERIO DE RELACIONES EXTERIORES
# APOSTILLE
(Convention de La Haye du 5 Octobre 1961)

País:     REPÚBLICA DE COLOMBIA

El presente documento público

Ha sido firmado por:     RIOS C.FUERTES LELIA ABIGLA

Actuando en calidad de:     NOTARIO ENCARGADO

Lleva el sello estampila de:     NOTARIAS ANTIOQUIA

Certificado

En:     BOGOTA - EN LINEA

El:     15.15.2024 18.50.30

Por:     Ministerio de Relaciones Exteriores de Colombia - APOSTILLA / LEGALIZACION

No:     A2YKK18030BB21

Firmado Digitalmente por   Central Signature
Ministerio de Relaciones Exteriores de Colombia



Nombre del Titular:     JHON EDELBER CANU CORREA

Tipo de documento:     DECLARACION EXTRAPROCESO

www.cancilleria.gov.co/apostilla

Case 1:25-mc-02430-PHE    Document 1    Filed 06/24/25    Page 68 of 84   Page ID #187

## NOTARIA 26 DEL CIRCULO DE MEDELLIN

*Twenty-sixth notary*
Nestor Gil Rojas

# 26 NOTARY OF THE CIRCUIT OF MEDELLIN



# REPÚBLICA DE COLOMBIA
### MINISTERIO DE RELACIONES EXTERIORES
# APOSTILLE
(Convention de La Haye du 5 Octobre 1961)

**País:** REPÚBLICA DE COLOMBIA

El presente documento público

**Ha sido firmado por:** RIOS CIFUENTES LELIA ABIGLIA

**Actuando en calidad de:** NOTARIO ENCARGADO

**Lleva el sello/estampilla de:** NOTARIAS ANTIOQUIA

Certificado

**En:** BOGOTA - S4 L4EA

**El:** 10/11/2024 12:04:48

**Por:** Ministerio de Relaciones Exteriores de Colombia - APOSTILLA / LEGALIZACIÓN

**No:** A2YKL124532300

Firmado Digitalmente por   Digitaly Signed by
Ministerio de Relaciones Exteriores Colombia
RU TEM BY CANCILLERIA CO
Reason: DOCUMENT AUTHENTICITY
BOGOTA - COLOMBIA

Firma:

**Nombre del Titular:** 1004

**Tipo de documento:** DECLARACION EXTRAPROCESO

www.cancilleria.gov.co/apostilla



Case: 26-777, 07/07/2026, DktEntry: 26.1, Page 282 of 393

Case [illegible] Document [illegible] Filed [illegible] Page [illegible] of [illegible] PageID #: [illegible]

<u>Violation Two</u>
Distribution of and Possession with
Intent to Distribute Cocaine

11. On or about and between September [illegible], [illegible] and November [illegible], [illegible], both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant [illegible], also known as "[illegible]," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section [illegible] and Title 18, United States Code, Section 2.

<u>Violation Three</u>
Distribution of and Possession with
Intent to Distribute Cocaine

[illegible]. On or about and between May [illegible], [illegible] and July [illegible], [illegible], both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant [illegible], also known as "[illegible]," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of

-[illegible]-

A-[illegible]

together with others, and knowingly and intentionally conspired to conduct financial transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery of United States currency, which in fact involved the proceeds of specified unlawful activity, to wit: mail/wire fraud/bribery, in violation of Title 21, United States Code, Section 841 et seq., knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956 and 1957 et seq..)

### COUNTS TWENTY-ONE through TWENTY-EIGHT
#### (Money Laundering)

26. The allegations contained in paragraphs 1 through 25 are realleged and incorporated as if fully set forth in this paragraph.

27. On or about and between the dates listed below, each date being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants listed below, together with others, did knowingly and intentionally conduct

18.

A29

Case 2:03-cr-00324-HdLH   Document 9   Filed 08/24/05   Page 58 of 94 Page ID #: 185

FORFEITURE ALLEGATION AS TO COUNT TWO

The United States hereby gives notice to the defendant charged in Count One that, upon his conviction of such offense, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853, which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense; and any of his interest and claims against, and property or contractual rights in the, possession of control over, the continuing criminal enterprise, including but not limited to, the following:

Money Judgment

A sum of money equal to $50,000,000 in United States currency.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the court;

-58-

A 2.

a.   has been substantially diminished in value, or

b.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Section 853)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS 1A THROUGH TWENTY-TWO

13.   The United States hereby gives notice to the defendants charged in Counts Two through Twenty-two that, upon their conviction of any such offense, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853, which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as the result of such offense; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense, including but not limited to, the following:

#### Money Judgment

A sum of money equal to $4,543,000 in United States currency for which the defendants are jointly and severally liable.

-14-

Case 2:25-cr-01279 RGK   Document 9   Filed 06/26/25   Page 91 of 94  Page ID #:93

(a)   ... of the above-described forfeitable property, as a result of any act or omission of the defendants:

        1.   cannot be located upon the exercise of due diligence;

        2.   has been transferred or sold to, or deposited with, a third party;

        3.   has been placed beyond the jurisdiction of the court;

        4.   has been substantially diminished in value; or

        5.   has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

Title 21, United States Code, Section 853

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS TWENTY-SIX THROUGH TWENTY-EIGHT

All the United States hereby gives notice to the defendants charged in Counts Twenty-Six through Twenty-Eight that, upon conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982, of all property, derived or constituting, traceable to proceeds obtained, directly or indirectly, as a result of such offense, and conspiracy in violation of Title 18, United States Code, Section

-91-

Case: 25-cr-01579-ATP    Document 9    Filed 26-20-25    Page 35 of 14 PageID # 152

whose property or such defendant up to the value of the
replacer's property described in this forfeiture allocation.

Title 18, United States Code, Section 372

A TRUE BILL

_____
FOREPERSON

_____
RICHARD B. MERRETT
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

18

A-294

# UNITED STATES DISTRICT COURT

_____ District of _____ NEW YORK _____

THE UNITED STATES OF AMERICA

vs.

## SUPERSEDING INDICTMENT

U.S. Department of Justice

Eastern District of New York

November 10, 2025

By Email and ECF

The Honorable Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: In re Moments Unseal
Miscellaneous Docket No. 25-1479 (RER)

Dear Judge Reyes:

The government respectfully writes regarding the Court's Order dated October 29, 2025 (the "Order"), which directed that the Clerk of Court to partially unseal certain documents in *United States v. Unseal, et al.*, 25-CR-265-51-SJ, and further required the government to respond within seven days of receiving those documents with its position on whether they should be unsealed to permit Joaquin Moses Valencia to file.

Pursuant of its response the government has filed DCF Nos. 136, 167, 172, 173, 176, 261, 262, and 264 from the docket on October 16, 2025, but the undersigned inadvertently failed to respond with the government's position on those documents within the seven-day deadline for submitting the government's response. Additionally, when the government requested the documents from the Clerk of Court, the Clerk provided two copies of DCF No. 264, and did not produce DCF No. 265, as the Court's Order erroneously listed DCF No. 264 twice. The Clerk represented to the government that it could subsequently unseal DCF No. 265 and provide us with a copy without it being included in the record of the order.

Case 1:23-cr-01473-PDB    Document 18    Filed 11/18/23    Page 2 of 2 PageID #: 299

The government apologizes for its oversight in failing to serve the Court's
decision and respectfully request that the Court extend its deadline to respond to the documents
we have already received to this Friday, November 18, 2023. The government also respectfully
requests that the Court review so that Order to correct the typographical error that resulted in ECF
No. 264 being removed from the list of documents that the Clerk was expected to partial's access,
so that the government may obtain ECF No. 264 from the court's Office and make its timely
response.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: _____
Brooke Theodora
Assistant U.S. Attorney
(718) 254-8345

cc:    Jacques Maria Vasseur Iregbu Inmate No. 93460-745 (by certified mail)
       FCI Oakdale II
       P.O. Box 5010
       2105 East Whatley Road
       Oakdale, LA 71463

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE MOTION TO INTERVENE AND UNSEAL.

Case No. 25-MC-1479

## THIRD PARTY'S REPLY TO THE GOVERNMENT'S OPPOSITION

The Third Party Joaquin Mario Valencia-Trujillo (Third Party), pro se, hereby replies to the government's opposition to his Motion to Intervene and Unseal filed under seal on November 30, 2025. See ECF Doc. 11. Said opposition was hand-delivered to the Third-Party by his counsel at the place of confinement as "legal mail" on Sunday, December 7, 2025. This Reply is timely filed within the seven (7) days allowed by the Local Rules of the Eastern District of New York

## ARGUMENT
## SEALING SHOULD NOT BE MAINTAINED WHERE DEFENDANTS' COOPERATION IS ALREADY KNOWN AND A MATTER OF RECORD

As explained and documented in the Third-Party's papers, ECF Docs. 1, 6 (most re-filed to cure missing argument) and 9, the cooperation of codefendants Carlos Echeverry, Raymond Gutierrez, Gustavo Martinez, and Carlos Ruiz, with the government is a matter of record. Since the cooperation of the four (4) codefendants was revealed long ago, maintaining the sealing regarding their cooperation is futile. See United States v. Doe, 891 F.Supp.2d 296, 300 (E.D.N.Y. 2012) (citing United States v. Sattar, 2006 U.S. Dist. LEXIS 9832 (S.D.N.Y.) (refusing to keep under seal documents as to the defendant's cooperation where fact of cooperation known)).

Moreover, to the extent revealing the identities requested would reveal the names of *other* cooperators and/or informants, the government's privilege to withhold their names is trumped where their identity is "relevant and helpful to the defense of the accused or is essential to a fair determination" of a case. *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957). Disclosure may be ordered by the Court, where, as here, it is shown that the informant's testimony is essential to proving "actual innocence." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (disclosure of the identity of a confidential informant required where the informant's testimony is "shown to be *material to the defense*") (emphasis added); *see also United States v. Roviaro*, 740 F.2d 955, 959 (2d Cir. 1984) ("essential to defense"); *United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (same); *United States v. Jimenez*, 824 F. Supp. 351, 365 (S.D.N.Y. 1993). Where two co-defendants in Case CR No. 02-518 SJS-SJ have provided declarations under the penalty of perjury that they both entered guilty pleas as to the May 1, 2000 conspiracies at issue here, and that they never heard of the Hard Party's involvement, Exhibit 1 (Declarations of Juan Izidelle, Cano Correa and Juan Carlos Giraldo Franco), the need for the disclosures is essential to the claim of the Hard Party of "actual innocence" as to the separate May 1, 2000 conspiracies. Any remaining concerns can be satisfied by redactions properly applied by the Court and/or summaries properly drafted by the Court, as explicated infra.

## REDACTIONS AND/OR SUMMARIES SATISFY ANY CONCERNS

In *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995), the Court wrote

We have recognized the law enforcement privilege as an interest worthy of protection. *See In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988). This privilege is designed to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation. *Id.* at 484

While we think that it is proper for a district court, after weighing competing interests, *to edit and redact a judicial document in order to allow access to appropriate portions of the document*, we consider it improper for the district court to delegate its authority to do so ... It seems to us that the district court should make its own redactions, supported by specific findings, after a careful review of all claims for and against access.

[emphasis added; citations omitted]. The Third Party respectfully submits that there exists no risk of interference with an investigation that has been closed by arrests and convictions almost a quarter century ago.

In *United States v. Amodeo*, 71 F.3d 1044 ... 1052 (2d Cir. 1995), the Second Cir. Court addressed the concern that, "[i]f such informants in the present or future cases anticipate that their cooperation will likely become a matter of public knowledge, valuable cooperation might cease" [brackets added], and concluded that the district court's *redactions* satisfied the concern. *Id.*; *United States v. All Funds on Deposit in Wells Fargo Bank*, 643 F.Supp.2d 577, 585 (S.D.N.Y. 2009) (citing cases where redacted data were redacted); *In re Sealing of Senator Baker Corp.*, 65, 876 F.Supp. 526 (E.D.N.Y. 1995) ("If full disclosure of documents is denied, the court should consider alternatives, such as disclosure of redacted versions.").

"Without a representative sample of the detailed evidence in the [requested judicial documents], and some reasonable summarization of the [exculpatory version in the PSRs of the 4 defendants], [the Third Party is] deprived of the most important source of evidence needed by [him] to [buttress his claim of actual innocence]", so held in *United States v. Smith* 985 F.2d 88, 90 (2nd Cir. 1993) (brackets added), as to the separate conspiracies to import and distribute approximately a metric ton of cocaine in the Eastern District of New York on May 1, 2000.

## CONCLUSION

For all of the foregoing reasons, Third Party Joaquin Maria Valencia-Trujillo requests that:

(A) the Honorable Brenna B. Mahoney, Clerk of Court, be directed to open the vault containing the sealed documents requested (ECF Dkts. 146, 147, 152, 153, 190, 261, 262, 263 and 264) in Case No. 00-CR-0051F 2(D) as to codefendants Gustavo Martinez, Carlos Echeverry, Carlos Ruiz and Raymond Gutierrez only, and produce copies of said sealed documents to the Private Chambers of the Honorable U.S. District Court Judge Ramon Reyes for in camera inspection to confirm that the Third Party was not implicated, in any of the requested documents, either as a source or as a co-conspirator in the conspiracies related to the cocaine seized on May 1, 2000.

(B) the Honorable Chief Probation Officer Robert L. Rogers, U.S. Probation Office of EDNY, be directed to produce copies of the Pre-Sentence Investigation Reports only as to the codefendants Gustavo Martinez, Carlos Echeverry, Carlos Ruiz, and Raymond Gutierrez, to the Private Chambers of the Honorable U.S. District Court Judge Ramon Reyes for in camera inspection to confirm that the Third Party was not implicated, in any of the requested portions of the PSRs, either as a source or as a co-conspirator in the conspiracies related to the cocaine seized on May 1, 2000.

(C) the Court, upon confirming that defendants Gustavo Martinez, Carlos Echeverry, Carlos Ruiz, and Raymond Gutierrez, identified others as the source of the cocaine seized on May 1, 2000 rather than the Third Party, grant the motion to unseal the nine sealed documents, disclosing them in their entirety without redactions.

Case 1:25-cr-00439-RCB    Document 12    Filed 07-18-25    Page 5 of 25 PageID #: 210

(D) to the extent redacted disclosures are ordered and/or summaries are provided instead of full disclosure, the Court should articulate the grounds for redactions and/or summaries, supplying sufficient basis for appellate review on the record.

If I am a prisoner, the Court should provide an order/judgment declaring that the *factual innocence of Joaquin Mario Valencia-Trujillo, either as a source or as a coconspirator in the conspiracies related to the approximate metric ton of cocaine seized on May 1, 2000 in the Eastern District of New York, shall be taken to be established"*

(F) The Court direct the Clerk's Office to make available for public access on Pacer all of the "federal Documents" filed but not sealed, in Case No. 00-CR-0653 (IF) (, only as to codefendants Gustavo Martinez, Carlos Echeverry, Carlos Ruiz, and Raymond Gutierrez, which are not currently available on Pacer, *including the related complaint filed under Docket 00-mj-00748-RLM-6 (RLM) (E.D.N.Y.)*

Respectfully submitted

Joaquin Mario Valencia-Trujillo
Register Number 02109-748
FCI Oakdale II
Federal Correctional Institution
P.O. Box 5050
Oakdale, Louisiana 71463

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a true and correct copy of the foregoing *THIRD PARTY'S REPLY TO THE GOVERNMENT'S OPPOSITION* on the United States Attorney's Office for the Eastern District of New York by mail on this 18th day of December, 2025

Joaquin Mario Valencia-Trujillo

Case 1:25-cv-11048-RGS    Document 17    Filed 04/15/25    Page 5 of 13 PageID #: 311

## EXHIBIT E — APOSTILLED DECLARATIONS IN SPANISH AND ENGLISH

**26** notaría veintiseis & onna
Nestor Gil Rojas

## NOTARÍA 28 DEL CIRCULO DE MEDELLÍN

DECLARACIÓN EXTRAJUICIO

Case 1:23-cr-00779-RER    Document 13    Filed 12/15/25    Page 3 of 35 PageID #: 264

A-221

## *Twenty-sixth notary*
### Nestor Gil Rojas

Central Cámara de Translación y Reproducción
Artículo 17 de Reproducción, Agosto 18 2024 11:00:25
...

Versión cértifica del Instrumento Español (S.)
...
...
...
Contenido ...

...
...
...

*Fabio Andrés Rodríguez Vásquez*
**Traductor e Intérprete Oficial**
**Inglés – Español – Inglés**
Cert. de Mercadeo No. 0483 de 2013-2014

Case 1:25-mc-00709-RER    Document 13    Filed 12/03/25    Page 10 of 16 PageID #: 215

## 7ª NOTARY OF THE CIRCUIT OF MEDELLIN





# REPÚBLICA DE COLOMBIA
### MINISTERIO DE RELACIONES EXTERIORES
# APOSTILLE
(Convention de La Haye du 5 Octobre 1961)

País:      REPÚBLICA DE COLOMBIA

El presente documento público

Ha sido firmado por.      RÍOS CIFUENTES LELIA ABIGLA

Actuando en calidad de     NOTARIO ENCARGADO

Lleva el sello/estampilla de.   NOTARÍAS ANTIOQUIA

Certificado

En      BOGOTA - EN LÍNEA

El.      10/10/2024 13:00:25

Por     Ministerio de Relaciones Exteriores de Colombia - APOSTILLA - LEGALIZACIÓN

No.     A2YKK180303921



Nombre del Titular     JHON EIDELBER CAÑO CORREA

Tipo de documento.      DECLARACIÓN EXTRAPROCESO

# www.cancilleria.gov.co/apostilla





## NOTARÍA 28 DEL CÍRCULO DE MEDELLÍN



FIRMA DEL COMPARECIENTE

## *Twenty-sixth notary*
### Nestor Gil Rojas



**Edén André Rodríguez Vásquez**
Traductor e Intérprete Oficial
Inglés · Español · Inglés
Cert. de Idoneidad No. 0403 de 20/08/2014

## 26 NOTARY OF THE CIRCUIT OF MEDELLIN



# REPÚBLICA DE COLOMBIA
## MINISTERIO DE RELACIONES EXTERIORES
# APOSTILLE
(Convention de La Haye du 5 Octobre 1961)

País: REPÚBLICA DE COLOMBIA

El presente documento público

Ha sido firmado por: RIOS CIFUENTES LELIA ABIOLA

Actuando en calidad de: NOTARIO ENCARGADO

Lleva el sello/estampilla de: NOTARIAS ANTIOQUIA

Certificado

En: BOGOTA - EN LINEA

El: 10/11/2024 12:04:48

Por: Ministerio de Relaciones Exteriores de Colombia - APOSTILLA/LEGALIZACIÓN

No.: AZYKL124532300

Firmado Digitalmente por - Digitally Signed by:
Ministerio de Relaciones Exteriores de Colombia
...
...
BOGOTA - COLOMBIA

Firma:

Nombre del Titular: 1004

Tipo de documento: DECLARACIÓN EXTRAPROCESO

www.cancilleria.gov.co/apostilla



Case 1:25-mc-01479-RER    Document 15    Filed 03.23.26    Page 1 of 41 PageID #: 232

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW Y

## IN RE: MOTION TO INTERVENE AND UNSEAL,

## Case No. 25-MC-1479-RER

_____

## THIRD PARTY'S VERIFIED RULE 59(e) MOTION TO ALTER ORDER

The Third Party, Joaquin Marie Valencia-Trujillo, proceeding pro se, hereby timely moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter the Court's "Memorandum & Order" Order dated 2-25-2026 because 1) the Court misread a critical record showing a Tampa federal prosecutor clearly urging that the pros could convict the Third Party on all four of charged counts based only on the alleged E.D.N.Y. conspiracy, and 2) the Court overlooked or misapprehended, inter alia, that the "trend in this Circuit and around the country has been to accord § 3K1.1 materials a presumptive right of access under the First Amendment or, at minimum, the common law." U.S. v. Saxe, 2019 U.S. Dist. LEXIS 121749, *5, fn 5.

### The "Memorandum and Order" dated February 25, 2026

The Court canceled ECF Nos. 263-264, but at concluded that the requested judicial documents (ECF Nos. 135, 157, 152, 198, Dkt in Case No. 00-cr-90015-JG)

[footnote text illegible]

related to 4 defendants - Gustave Martinez, Carlos Echeverry, Raymond Gutierrez and Carlos Baez - and their respective PSRs should remain sealed. See Order.

The Court overlooked that none of these 4 defendants nor anyone mentioned in the requested documents has objected to the unsealing based on privacy concerns, a quarter century after-the-fact. Moreover, the Court overlooked that the Third Party has a compelling need to show his actual innocence of the alleged N.Y. conspiracy, as well as both Constitutional and Common Law rights to all of the requested judicial documents, including all letters/memoranda submitted pursuant to 1 U.S.C. § 5K1.1 based on these 4 defendants' known substantial assistance.

### A. ECF Nos. 136, 147, 152, 195, 199 in Case No. 00-cr-00515-JG

#### "(1) ECF No. 136: a letter requesting postponement of sentencing" (Order at 2).

ECF No. 136 is the only sealed document that was docketed before Martinez's sentencing. Exhibit B (Martinez's Docket Sheets); Exhibit C (sentencing transcript). The Order identified ECF No. 136 as merely "a letter requesting postponement of sentencing", see Order at 2, but such a request asking a court to exercise its discretion to postpone a sentencing is a judicial document that need _not_ be sealed, raising the possibility that the court inadvertently misidentified the document. Even if correctly identified, there is no valid justification to keep such a judicial document under seal.

The sentence... was original filed May 19, 20.. ...with a date... as Martinez's sentencing on May 19, 20.1. ... request for... 5K1... the postponement of sentence. See Martinez' docket entry... ...sealed... this ECF No. 136 by sealing order docketed on the same day. ECF No. 136, 137... (docket sheet)...

iix

"The Court finds that ECF No. 135 should remain under seal. *This filing concerns **scheduling matters** related to a sentencing hearing*, which holds little weight against the Court's exercise of its Article III functions, and the contents do not contain any information relevant to Valencia-Trujillo's request."

*See* Order at 8 (emphasis added). As the Court considers ECF No. 135 as pertaining to "scheduling matters," there is no proper basis to seal such a judicial document nor to keep it sealed a quarter century after-the-fact, irrespective of whether it "contain[s] any information relevant to Valencia-Trujillo's request." *Id.* (brackets added).

If the entries in the docket, Exhibit B, were chronologically ordered, one could reasonably believe ECF No. 136 ("Letter dated 4/24/01" docketed April 30, 2001) is the government's 5K1 Letter for Martinez, as it is the only document that appears "sealed" on the docket before the sentencing of Martinez, who was identified during the Third Party's trial as his "representative" in the delivery of approximately a ton of cocaine seized in this district on May 1, 2000. However, fifth in the chronological order of the docket, Exhibit B, evaporates upon review of the transcript of Martinez's sentencing, when the Court relied upon the government's letter dated May 10, 2001 and the defense stated that it also filed on the "Wednesday" before sentencing (i.e. May 16, 2001) Pelsker ... at 2-3 of 5, VC-SA. The government's letter details the manner in which Mr. Martinez's cooperation was useful to the government", ... at 5-6 (addressing defense letter) ... at 8 ("Your cooperation accomplished some significant results for the government") (46-month prison sentence despite guideline range of 135 to 168 months)

Case 1:15-cv-03479-RE9    Document 15    Filed 12/23/2026    Page 5 of 54 PageID #: 250

Fifth, in the chronological order of the docket entries, Exhibit B evaporates because said docket does not show any filings in Martinez's case on **May 10, 2001** or **May 16, 2001**. Compare Exhibit B w/ Exhibit C at 2. Given the known cooperation of the 5 defendants, the docket of Case No. 00-cr-00515-JG must therefore contain 4 government 5K1.1 letters, but the Court identifies only 3 government 5K1.1 letters and a letter response to a 5K1.1 letter, as explicated infra to facilitate court review:

"(2) ECF No. 147: a letter response to a 5k1.1 letter; (3) ECF No. 152: a 5k1.1 sentencing letter; (4) ECF No. 193: a 5k1.1 sentencing letter; (5) ECF No. 194: a 5k1.1 sentencing letter" (Order at 2).

As noted, Martinez was sentenced on May 17 or May 18, 2001. See n. 2, supra (comparing Exhibits B & C). Echeverry was sentenced on June 5, 2001, Exhibit D (ECF No. 150); Gutierrez was sentenced on June 7, 2011, Exhibit E (ECF No. 353), and Ruiz was sentenced on June 8, 2011 (Exhibit F (ECF No. 18)).

The Court identified ECF No. 147 as a "letter response to a 5K1.1 letter." See Order at 2. The docket sheets of all 5 defendants show that ECF No. 147 was entered on the docket of Case No. 00-cr-00515-JG on "05 23 2001." If ECF No. 147 is the letter response filed by Martinez's defense on Wednesday, May 16, 2001, Exhibit C at 2, it was entered out of chronological order after his sentencing. But ECF No. 147 may be a "letter response to a 5K1.1 letter" for one of the 5 other defendants who were all sentenced in June 2001, i.e., after ECF No. 147 was entered "05 23 2001."

Next, ECF No. 147 will remain sealed. This document, a letter in response to a 5K1.1 statement, not only *contains detailed information about a cooperating individual in the case, but it also includes private and sensitive details about others not involved in the trial.* The Court agrees with the Government that *the competing privacy considerations outweigh the public's presumption of access.* See Order at 5 (emphasis added). The Court overlooks that none of the 4 defendants nor any "others" mentioned in the requested documents has objected to the unsealing based on any "competing privacy considerations", a quarter century after the fact. It is submitted that the Court overlooked or misapprehended the law of the Circuit. U.S. v. Amodeo, 71 F.3d 1044, 1050-1051 (2d Cir. 1995) (court may weigh whether access to documents would infringe on the "privacy interest of the person resisting disclosure"). There is __no__ "person resisting disclosure" here. Id.

The Court has also overlooked or misapprehended the law of the Circuit by ordering that ECF No. 147 "remain sealed," even though it identified the document as "a letter in response to a 5K1.1 letter." Notes, supra, *5. In 3 C° tried in this Circuit and around the country has been established, 5K1.1 memoranda a presumptive right of access under the First Amendment or, at a minimum, the common law. No ruling of any court, as yet in this Circuit, Section 5K1.1 memorandum, being a "filed item" does not enjoy the same immunity from the common law and First Amendment right of access that sealed court documents do" (citation omitted).

The same carries and as to the portion of the Order that denied the motion to unseal ECF Nos. 152, 193, 194 (the "5K1.1 sentencing letters"):

"Finally, the Court denies Valencia-Trujillo's request to unseal [ECF Nos. 152, 195, and 196]. The weight given to the presumption of access of a SK1.1 letter may well tip in favor of unsealing because these [sic] document plays a role 'in determining litigants' substantive rights.' However, the competing consideration of protecting the _privacy interests of cooperating defendants' identities and details of their cooperation. In a particularly serious case like this one, outweighs any potential value of that information to those monitoring federal courts_." Although Valencia-Trujillo correctly argues that the Court lacks power to seal information that, although once sealed, has been publicly revealed, _these documents contain sensitive information not only about individuals who cooperated in the case but others._"

Order at 8-9 (emphasis added; citations omitted). The Court once again overlooked or misapprehended the law of the Circuit. See _Amodeo_, 71 F.3d at 1050-1053 (court may weigh whether the access would intrude on the "privacy interest of the person resisting disclosure"). There is _no_ "person resisting disclosure" here, a full quarter century after-the-fact. See also _U.S. v. Doe_, 891 F.Supp.2d 296, 304 (E.D.N.Y. 2012); _In re U.S. v. Sprecher_, 2004 U.S. Dist. LEXIS 19020 (S.D.N.Y.) (refusing to keep under seal documents as to the defendant's cooperation where cooperation known).

The Court overlooked or misapprehended the law of the Circuit by not unsealing [ECF Nos. 152, 195, and 196, through it identified each of the documents as "a SK1.1 sentencing letter." Mem. at 10-11. Trend in this Circuit and around the country has been to accord Section 5K1.1 memoranda a presumptive right of access under the First Amendment, or, at minimum, the common law." (citing a string of cases)

The Order kept the sealing, "in a particularly serious case like this case," Order at 9 which is a "[b]road and general finding[] ... not sufficient to justify closure." See _Lugosch v. Pyramid Co._, 435 F.3d 110, 120 (2d Cir. 2006) (brackets added).

The Court did not consider court redactions or summarization as suggested in *Bowles, supra*. The Court addressed a concern that, if "informants in the present or future cases anticipate that their cooperation will likely become a matter of public knowledge, valuable cooperation might cease" and concluded that court redactions would satisfy said concern. *In re XX Foodservice Deposit at Wells Fargo Bank*, 945 F.Supp.2d 877, 885 (S.D.N.Y. 2009)(citing cases where redactions were ordered: *In re Sizzler or Sizzler Indus. Corp.*, 64, 876 F.Supp. 426 (S.D.N.Y. 1948)("if full disclosure of documents is denied, the court should consider alternatives like disclosure of redacted versions"); *In re Application of United States*, 596 F.2d 48, 56 (2nd Cir. 1979)("party is ... deprived of the most important source of evidence needed" without "some reasonable summarization").

## B. Court conducted "common law analysis" of the merits rather than subject the merits to analysis under the "stronger" First Amendment protection

The Order shows that the merits of the motions to unseal were subjected only to common law analysis, rather than under the "stronger" First Amendment right:

Having determined that [SKLI letters] are judicial documents and therefore that at least a common law presumption of access applies to them, we would ordinarily continue with the common law analysis and determine the weight of the presumption and measure it against competing considerations. *See Lugosch*, 435 F.3d at 119-20. This case, however, does *not* require such an approach. *Since we find that [SKLI letters] are subject to a First Amendment right of access, which is stronger and can only be overcome under more stringent circumstances than the common law presumption, we need not, and do not, engage in such a common law analysis.*

*U.S. v. Erie County*, 763 F.3d 235, 241 (2d Cir. 2014 (emphasis and brackets added).

*Id.* at \*\* (merits need only be analyzed under "stronger" First Amendment rights

Here, the Order mentions the First Amendment right. Order at 4. But the Court only conducted "common law analysis" as to ECF Nos. 116, 145, 153, 191, and 199. See Order at 8 ("These filings were submitted as part of the sentencing process. [A]s such, they are judicial documents subject to the common law right of access."); *Lugosch v. Pyramid*, 542 F. Supp. 2d 233, 237 (N.D.N.Y. 2008) (prefacing Court's common law analysis); *id.* at 8-9 (Court conducting common law analysis).

## C. The Court misread the record showing the Third Party's compelling need

"[I]t is the obligation of any party that requests sealing or its continuation to supply a concrete and particularized basis for the request." *See Stern* at *13. Here "[t]he government argues against unsealing these documents because they identify certain individuals who cooperated with the government and contain sensitive information about the nature and extent of that cooperation, the disclosure of which would place these individuals at risk, compromise law enforcement's ability to secure future cooperation, and undermine investigative efforts." Order at 7 (citing Opp. 2 at 5"). But *see Amodeo, supra* (concluding that court redactions satisfy some concerns, *Doe*, *supra* (refusing to keep documents under seal showing defendant's cooperation where fact of cooperation is known); *U.S. v. Doe*, 893 F.2d 1067, 1073 (2d Cir. 1985) (disclosure of identity of confidential informant required where the informant's testimony is "shown to be material to the defense"); *id; see also Cuter of United States, supra* (favoring "reasonable redactions" of sealed documents)

The Court overlooked or misapprehended "the premise that unsealing may constitutionally be required 'even in the face of compelling interests for continued secrecy, if those interests are outweighed by an even more compelling need for disclosure'". Order at *20, and its analysis was skewed by its misreading of the record that clearly shows the Third Party's "even more compelling need for disclosure."

The Court's misreading of the record is reflected in several ways, including its misreading of the closing at the Third Party's trial. Order at 6 ("Valencia-Trujillo's argument that the Government sought conviction "based only" on the [illegible] conspiracy is ***contradicted*** by the transcript excerpt he includes") (emphasis added). The court's interpretation of what constitutes exculpatory evidence in this case reads like sophistry. See Order at 6 ("absence of involvement does not prove his actual innocence in either his role in that specific conspiracy or his overall conviction").

[illegible]

The motion to unseal, at pp. 3-4, ¶ 11, quoted the materially false trial testimony repeatedly given by "star witness" Orozco-Mejia at the Third Party's trial claiming "Johnny Curiel" only became his cocaine supplier after May 2008. Orozco-Mejia testified that he only used Curiel (a.k.a. Santa, Santiago, Vicki, Victoria) and others of the "Nogik Valley Cartel" as his cocaine sources after May 1, 2008. See also Motion to Unseal, Exhibit F (excerpts of Orozco-Mejia's testimony at the Third Party's trial repeatedly denying that Curiel was his source as of May 1, 2008).

As argued by the Third Party, Steph. I at 9, Curiel's guilty plea to the conspiracy responsible for the May 1, 2008 drug delivery proves that Orozco-Mejia committed perjury during the Third Party's trial. The requested unsealing of ECF Nos. 136, 147, 152, 165 and 180 would corroborate the declarations of Juan Lie Joher Curia Gomez-Curiel and Israel Jobes Giraldo Franco (Franco establishing that both men pleaded guilty to the conspiracy responsible for the May 1, 2010 load and exculpating the Third Party of involvement. See Reply 3, Exhibit E (declarations under penalty of perjury and the corresponding sealed consent, Reply 2, Exhibit E same declarations). The court overlooked the exculpatory declarations as its Order makes no mention of either declaration. It is false that the Third Party made "no effort to explain how the perjured testimony of Orozco-Mejia and any prosecutorial misconduct relates to the 4 defendants, and that he proffered no argument" as to how the government's failure to correct Orozco-Mejia's perjury relates to his innocence of the May 1 conspiracy.

or law that relates to the 4 defendants – Martinez, Echeverry, Gutierrez, and Ruiz. Reply 1 at iv (attaching as Exhibit A the testimony of federal agent John Kane at the Third Party's 2006 trial as to the direct involvement of Martinez, Echeverry, and Ruiz with the approximate 5kg of cocaine seized on May 1, 2006; and attaching as Exhibit B the affidavit of FBI case agent identifying Martinez as the Third Party's "representative" for the delivery of the cocaine load seized in N.Y. on May 1, 2006). The court is wrong in finding that "even if" the 4 defendants' cooperation showed the Third Party's lack of involvement, the information would not support his actual innocence claim. See Order at 6 ("absence of involvement does not prove his actual innocence in either his role in that specific conspiracy or his overall conviction"). The Third Party's purported "representative" Martinez was rewarded for truthful cooperation which implicated others, but did not implicate the Third Party with the N.Y. group. The "absence of involvement" does "prove his actual innocence" and Orozco-Mejia's trial perjury. See also Reply 1 at iv-v (attaching as Exhibits C and D the government's closing at the Third Party's trial urging jury to count each person involved with the N.Y. group related to the May 1, 2006 seizure toward the 5 persons needed to convict the Third Party of a "continuing criminal enterprise" and asserting that the "N.Y. distribution cell" was the necessary evidence of his criminal conduct occurring after December 17, 1997). The Third Party underscored the materiality of the information suppressed by the sealing of the judicial documents, as their content

would show that the government knowingly presented the perjured trial testimony of Orozco-Mejia that the source of the cocaine load seized on May 1, 20[0]4 was the Third Party, and that Johnny Cano only became his source after May 1, 20[0]4. See Reply 1 at 19. According to the information that the jury foreman conveyed to the government after the Third Party's trial, quoted in Reply 1, "the jury relied heavily upon Orozco-Mejia's testimony in reaching the verdict." See id. at 1[0] (attaching as Exhibit 1, the government letter summarizing the jury foreman's communication).

The Order noted that the government argues that the Third Party's conviction was based on at least 22 acts of drug smuggling and distribution over many years. See Order at 6. However, the Court failed to note the Third Party's argument that, under Eleventh Circuit law, which will govern the Third Party's habeas petition, the government's failure to correct perjured testimony violates the constitutional right to a fair trial and constitutes "prosecutorial misconduct" meriting a retrial. Reply 1 at 8 (citing U.S. v. Alzate, 47 F.3d 1103, 1110-1111 (11th Cir. 1995) (ordering retrial as defendant "entitled to put his defense forward free of prosecutorial misconduct.") The Court also overlooked the effect of the combined Brady and Napue violations embodied in concealing exculpatory information available from the 4 cooperating defendants to facilitate Orozco-Mejia's trial perjury. The court misread the record.

Case 1:25-cr-20347-PPA   Document 15   Filed 03/25/26   Page 19 of 34 PageID #: 111

## CONCLUSION

The objective of the motion was to "confirm that the Third Party was never implicated by these four cooperating codefendants in any way as either a source or exculpation in the conspiracy related to the approximate ton metric ton of cocaine seized on May 1, 2000." *See* Reply 1 at 2. The Third Party requested that, upon confirming that four defendants, including Martinez (his alleged "representative"), did not implicate him in the May 1, 2000 conspiracy, the Court should allow full access to the sealed judicial document as such evidence of his non-involvement in the May 1, 2000 conspiracy is "exculpatory evidence suppressed under the sealing." *Id.* at 2. Law and justice require no less, regardless of the alleged crimes. Order at 9 ("protecting the privacy interests of cooperating defendants' identities and details of that cooperation, in a particularly serious case like this one, outweighs any potential value of that information"); *but see U.S. v. Martinez*, 2013 U.S. Dist. LEXIS 182959 at *7 ("Although courts consider the defendant's privacy interest, it is generally the privacy interests of *innocent third parties* that weigh heavily in a court's balancing equation") (emphasis added; citations, quotation marks, and alterations omitted).

*WHEREFORE*, for all the foregoing reasons, this Court should alter its Order entered on February 25, 2026 pursuant to Rule 59(e), Fed R.Civ.P. and unseal all requested judicial documents as well as the relevant portions of the PSRs requested based on the Third Party's compelling need to prove his entitlement to a new trial

Case 1:25-mc-01479-RER    Document 15    Filed 03/25/26    Page 14 of 14 PageID #: 225

In the event that the Court denies this motion, all of the requested documents, including the PSRs of the 4 defendants must be transmitted to the Second Circuit under seal, for the higher court's appellate review.

Respectfully submitted,

Joaquin Mario Valencia-Trujillo
Register Number 04450-748
FCI Oakdale II
Federal Correctional Institution
P.O. Box 5010
Oakdale, Louisiana 71463

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION

The undersigned hereby certifies that the instant motion complies with the 8,750 word-count limitation specified in Local Civil Rule 7.1(c). The word count of the Word program used to prepare this motion shows a total 4,012 words.

Joaquin Mario Valencia-Trujillo

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing "Third Party's Verified Rule 59(e) motion to alter Order" to the United States Attorney's Office, Eastern District of New York by mail sent to 271 Cadman Plaza East, Brooklyn, NY 11201 on March 25, 2026.

Joaquin Mario Valencia-Trujillo

Case 1:25-mc-01479-RLR    Document 15    Filed 03/25/25    Page 15 of 54 PageID #: 248

## VERIFICATION

I verify under penalty of perjury that the foregoing is true and correct and that

the attached Exhibits are true and correct copies of their originals.

Executed on 25th of March, 2026

Joaquin Maria Valencia Trujillo

Case 1:25-cr-00349-PKC    Document 15    Filed 12/05/26    Page 26 of 64 PageID #: 762

**EXHIBIT A**



FARMER &
FITZGERALD, P.A.

May 5, 2007

The Honorable Tom Joseph
United States Magistrate Judge
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    United States v. Haroon Zorede, et al.
       Case No. 1:05-cr-06313 (E.D.N.Y.) (Transcript of December 4, 2000 guilty plea
       hearing of codefendant Giulino Martinez)

Dear Judge Assil:

My name is Matt Farmer, and I have been appointed by United States District Judge
Elizabeth Kovachevich to represent the defendant in United States v. Johnny Marie Valez, a.
Trujillo, Case No. 5:03-cr-00078-E...05-AT (M.D. Fla.)

Judge Kovachevich has granted my motion for transcripts of the guilty plea hearings and
sentencing in the above case. Today, the court reporter, Ms. Francis, called to inform me that
the December 4, 2000 guilty plea hearing is sealed, and that I should request by letter that you
unseal the proceedings.

Mr. Martinez is a probable government witness in our June 5, 2006 trial, as my client is
charged, among other things, with an offense of the same conspiracy in which Mr. Martinez
pleaded guilty. Accordingly, a transcript of his guilty plea hearing is vital for cross examination.

Please contact me if you have any questions.

Respectfully,

Matthew P. Farmer

cc: AUSA Dan R. Rogers (E.D.N.Y.)
    AUSA Joseph Ruddy (M.D. Fla.)
MPF/kms



U.S. Department of Justice

United States Attorney
Eastern District of New York

May 10, 2006

The Hon. Joan Azrack
United States Magistrate Judge
Eastern District of New York
Brooklyn, New York 11201

Re:    United States v. Gustavo Martinez
       Cr. No. 00-503 (JG)

Dear Judge Azrack:

The government respectfully submits this letter opposing, at this time, the unsealing of the plea proceedings in the above-captioned case. We understand that Matthew Farmer, Esq., an attorney involved in the trial captioned United States v. Raul Valencia Cr. 00-339 (Fla.) has requested the unsealing of these transcripts as well as a copy of plea proceedings for Martinez's other co-defendants. I am uncertain as to the reason for the request or whether Mr. Farmer is entitled to these plea proceedings.

Therefore, I would request that we be permitted time to inquire of the U.S. Attorney's Office in Florida for details on the issue. If it appears that any or all of these individuals are government witnesses and therefore their prior statements are properly disclosed pursuant to the government's Brady or Giglio obligations, we will not hesitate to forward to the Court an unsealing application and/or to unseal the plea transcripts.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

By:  _____
     Elaine S. Banar
     Assistant U. S. Attorney
     (718) 254-6212

*[Handwritten note in left margin:]* The application to unseal is refused... as premature in... the government submission.

*[Handwritten signature]* Joan M. Azrack
U.S.M.J.
5/11/06



FARMER &
FITZGERALD, P.A.



May 3, 2006

The Honorable Joan Azrack
United States Magistrate Judge
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Renae Drayton, et al.,
      Case No. 1:00-cr-00153 (E.D.N.Y.)(Transcript of December 4, 2000 guilty plea
      hearing of codefendant Gustavo Martinez)

Dear Judge Azrack:

My name is Matt Farmer, and I have been appointed by United States District Judge
Elizabeth Kovachevich to represent the defendant in United States v. Ignacio Mario Valentin-
Trujillo, Case No. 8:02-cr-02755-17EAJ (M.D. Fla.)

Judge Kovachevich has granted my motion for transcripts of the guilty plea hearings and
sentencings in the above case. Today, the court reporter, Ms. Franco, called to inform me that
the December 4, 2000 guilty plea hearing is sealed, and that I should request by letter that you
unseal the proceedings.

Mr. Martinez is a probable government witness in our June 5, 2006 trial, as my client is
charged, among other things, with involvement in the same conspiracy in which Mr. Martinez
pleaded guilty. Accordingly, a transcript of his guilty plea hearing is vital for cross-examination.

Please contact me if you have any questions.

Respectfully,

Matthew Z. Farmer

cc:   AUSA [illegible] (E.D.N.Y)
      AUSA Joseph Ruxley (M.D. Fla.)
MZF/[illegible]



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

May 10, 2006

The Hon. Joan Azrack
United States Magistrate Judge
Eastern District of New York
Brooklyn, New York 11201

Re:   United States v. Gustavo Martinez
      Cr. No. 05-___ (JA)

Dear Judge Azrack:

The government respectfully submits this letter opposing, at this time, the unsealing of the plea proceedings in the above-captioned case. We understand that Esther Farmer, Esq., an attorney involved in the trial captioned *United States v. Mazio Martinez* Cr. 02-321 (JBW) has requested the unsealing of these transcripts as well as a host of plea proceedings for Martinez's other co-defendants. I am uncertain as to the reason for the request or whether Ms. Farmer is entitled to these plea proceedings.

Therefore, I would request that we be permitted time to inquire of the U.S. Attorney's Office in Florida for details on the case. If it appears that any or all of these individuals are government witnesses and therefore their prior statements are properly disclosed pursuant to the government's *Brady* or *Giglio* obligations, we will more hesitate to forward to the Court an unsealing application in order to unseal the plea transcripts.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

by: _____
Elaine D. Banar
Assistant U. S. Attorney
(718) 254-6234

*[handwritten note]* The application to unseal the transcript is denied based on the government submission.

*[handwritten signature]*
Joan Azrack
5/11/06

Case 1:25-mc-01429-RER    Document 25    Filed 02-25-26    Page 26 of 54 Page ID #:51

# EXHIBIT B

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:08-cr-00515-JG-7

Case title: USA v. Peralta et al.

Date Filed: 08-18-2008

Date Terminated: 08-27-2009

Assigned to: Judge John Gleeson

**Defendant (7)**

**Gustavo Martinez**
TERMINATED 08-27-2009

represented by **Joel Kenneth Dranove**
Joel Dranove
115 Broadway
Suite 1804
New York, NY 10006
212-608-4700
Fax: 212-619-7371
Email: jdranove@gmail.com
TERMINATED 08-27-2009
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**Pending Counts**

21:846 and 841(b)(1)(A)(ii) & 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1s)

**Disposition**

Sentence 40 months imprisonment, 5 years
supervised release w conditions, $100.00
special assessment

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

21:846 and 841(b)(1)(A)(ii) & 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1)

**Disposition**

Dismissed on Government motion

21:846 and 841(b)(1)(A)(ii), 18:2
and 3551 et seq - DISTRIBUTION AND

Dismissed on Government motion

A-47

Case 1:25-mc-01409-FLR    Document 15    Filed 03-25-25    Page 2 of 5, PageID #: 252

POSSESS WITH INTENT TO
DISTRIBUTE A KILOGRAM OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(20)

**Highest Offense Level (Terminated)**

Felony

| Complaints | Disposition |
|---|---|
| None | |

**Plaintiff**

USA                                    represented by **John P. Kroger**
                                       United States Attorney's Office
                                       Criminal Division
                                       One Pierrepont Plaza
                                       Brooklyn, NY 11201
                                       718-000-0000
                                       718-000-0000 (fax)

| Date Filed | # | Docket Text |
|---|---|---|
| 05-15-2008 | | Magistrate Judge has been designated by rule or selection to handle any matters that may be referred in this case. (Redd, Gwen) (Entered: 05-15-2008) |
| 05-22-2008 | 12 | SUPERSEDING INDICTMENT as to ... (Redd, Gwen) (Entered: 05-22-2008) |
| 06-10-2008 | 13 | CALENDAR ENTRY as to ... (Redd, Gwen) (Entered: 06-10-2008) |

A-267

EXHIBIT C

FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BROOKLYN OFFICE

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        CR 00-515 (JG)

                    :

        -against-                .

                                 United States Courthouse
                                 Brooklyn, New York
GUSTAVO MARTINEZ                 :

                                 May 18  2001
        Defendant                :  10:30 o'clock a.m

- - - - - - - - - - - - - X

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE JOHN GLEESON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        NIKKI KOWALSKI
                           Assistant United States Attorney
                           One Pierrepont Plaza
                           Brooklyn, New York

For the Defendant:         JOEL DRANOVE  ESQ.

Court Reporter:            Gene Rudolph
                           225 Cadman Plaza East
                           Brooklyn, New York
                           (718) 260-2538

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

GR        DCR        CM        CRR        CSR

2

THE CLERK: United States versus Martinez

(The interpreter is duly sworn.)

THE COURT: Are you ready to proceed?

MR. DRAHOVE: Yes

MS. KOWALSKI: Yes

THE COURT: Okay. I see no reason not to accept the recommendation that I accept the plea of guilty, having reviewed these minutes before Judge Azrack

Is there any reason I shouldn't accept the plea?

MS. KOWALSKI: No Your Honor.

MR DRAHOVE: No, Your Honor.

THE COURT: Okay. I accept it

Is there any objection to the presentence report or the addendum to it?

MR DRAHOVE: No, Your Honor

MS KOWALSKI: No, Your Honor

THE COURT: Okay. Do you want to be heard?

I have Ms. Kowalski's letter of May 10th.

MR DRAHOVE: Yes Your Honor. I wrote a letter forwarded it on Wednesday. It may not have been received by Your Honor. I read it to Ms. Kowalski. I am offering a copy of it up to Your Honor.

THE COURT: Thank you

MR DRAHOVE: The original was signed.

THE COURT: All right. Would you like to be heard

3

ary further?

MR. DRANOVE: Yes, Your Honor

I want to inform the Court that my client for many weeks after I first met him, when I was in his presence, was shaking and ultimately -- physically just shaking, and ultimately I discovered it was from the fact that as a result of his awareness of what he was in the midst of he had begun drinking extraordinarily and in fact using cocaine at the same time. He saw no way out and he went forward and he, middle-aged gentleman, turned his life around and -- in a criminal manner.

After coming to this country, working here, becoming a citizen, he returned home in 1999 to Armenia, Colombia, where there had been a terrible earthquake and for reasons we will -- we can conjecture about, he made a decision, that was a catastrophe for himself and his family and he understands this.

The complete record before Your Honor is understood by all. My client is ready to proceed. He wishes to make a statement on his own behalf.

That's the conclusion of my remarks, Your Honor.

THE COURT: All right. Mr. Dranove. Thank you.

MR. DRANOVE: You are welcome.

THE COURT: Sir you have a right to speak. Is there anything you would like to say?

GR    DCR    APR    CRR    CSR

THE DEFENDANT: Yes.

THE COURT: Go ahead

THE DEFENDANT: Am I going to tell you and then you tell the judge?

THE COURT: No. Speak directly to me.

THE DEFENDANT: I am very nervous. I write it in Spanish.

THE COURT: That's all right. Everybody is nervous You should be nervous Don't let it get in the way of reading your statement.

THE DEFENDANT Your Honor, I want to tell you that I am very ashamed because of my mistakes and all the pain I have caused to those who love me It hurts to remember the decisions, the decisions that I have made that have destroyed my life and my family's I feel bad to know that I was a victim and a slave to the vices of alcohol and drugs. They dragged me and seduced me to do things I had never done before when I had a clear mind. Thank God that in prison I have had time to reflect and to realize all the harm that I have caused to this country, to my wife and my children, who have supported me so much during this time

I was scared to make decisions that possibly could have changed my life but I was never able to make those decisions because I feared for my life and my family's, because I was surrounded by people who are capable of doing

anything

I want to say something to the government and to Your Honor, that I have tried to cooperate and give all the information possible regarding my case because I recognize that I made a mistake and it is my duty to try to fix it in some way. I ask forgiveness to God and to Your Honor. I know that I deserve to be in prison and to repay my debt to society.

I also ask if I can be given an opportunity to be with my family as soon as possible.

That is it, but thank you.

I would like to add that I would like to go to a prison in Miami or close to Miami where my family lives, so that I can have contact with them there.

THE COURT: All right. Thank you.

Ms. Kowalski?

MS. KOWALSKI: Your Honor, the government's letter details the manner in which Mr. Martinez's cooperation was useful to the government.

The only thing that I would like to add now is, I participated in many of the interview sessions with Mr. Martinez as we prepared for the trial against Mr. Ruiz. Just to, I suppose, add some credence to the contents of Mr. Dranove's letter, it was apparent to everybody who participated in those meetings that Mr. Martinez was genuinely

struggling between a sincere desire to be helpful and what appeared to be a very, very real fear about the consequences of part of what he had to say to us. He participated but it was -- he did seem to have to overcome a great deal of fear in order to do that.

THE COURT: Okay. Do you have any recommendation as to the appropriate sentence?

MS. KOWALSKI: I do not, Your Honor.

THE COURT: All right. Can someone tell me whether this is just -- on page nine of the presentence report it says the defendant has one criminal history point. Is that --

PROBATION OFFICER: That is a mistake. It should read no criminal history points.

I apologize, Your Honor.

THE COURT: He is a naturalized citizen, correct?

MS. KOWALSKI: Yes.

MR. ORANDVE: Yes, sir.

THE COURT: All right. While it is on my mind, it wasn't the first thing I intended to say but I will say it because it is on my mind.

I am about to confer a sentence on you that reflects substantial leniency because of your cooperation. I think you believe in your heart what you say about how you got all this behind you. I even think you might be right. But in a way I wish you could have been here 15 minutes ago. I had someone

Case: 25-cr-00345543-2    Document 128    Filed 07/35/24    Page 304-15-00 Page ID# 393

7

before me whose guideline range was like yours, was even lower than yours. Yours is 135 to 168. I had someone before me who five years ago had the same kind of guideline range, except it was a little less, and he got a lenient sentence and then they let him out and then he immediately got back into violating the law and he was back before me. I haven't sentenced him yet but as he left I'm sure I ruined his day because I told him I was considering imposing a very lengthy jail sentence on him in part because he cooperated, earned the trust of the Court in the form of a very lenient sentence, and then abused that trust and violated the law again after he got out.

As I say, it wasn't the first thing I intended to mention to you. I didn't intend to start out by threatening you. I don't mean that to be a threat. But it's something I want you to remember down the road. You very much want this to be your last appearance before me ever. It matters to you because your fortunate, you are not going to have the INS swoop in and send you somewhere else. You are going to be on supervised release. You are going to be answerable to me for a substantial period of time after you get out of prison.

Let me get to where I would have started had I not had that other case on right before yours. There is a lot to be said that's good about you. I am sure you appreciate how serious this criminal activity was that you got involved in. I have no reason not to credit the argument, the assessment

advanced here, that you got involved in it because of your substance abuse. That doesn't excuse your crime but it makes it slightly more understandable. It is a very serious crime.

One of the things you have going for you is your family, and I hope you appreciate how many families like yours got just torn to shreds, ripped to pieces by these drugs. It is why this seemingly endless war against drugs keeps getting fought. No matter whether it's succeeding or not, the fact of the matter is on this end, in cities like ours, there are families that are just obliterated by these drugs.

But every other part of your life strikes me as belonging on the positive side of your ledger, including your family situation; certainly your cooperation with the government. You have an Assistant U.S. Attorney who comes into this courtroom with significant credibility who spoke strongly on your behalf. That's why you are being sentenced as leniently as you are about to be sentenced, and the fact that she says so and the things that she says strike me as favoring a lenient sentence. You put yourself at risk. Your cooperation accomplished some significant results for the government.

So from your guideline range of 135 to 168 months, I am departing downward to a sentence of 40 months in the custody of the Attorney General, to be followed by a five-year term of supervised release, a special condition of which is

9

that you receive substance abuse treatment as directed by the Probation Department. I am not imposing a fine but I am imposing a special assessment, as I must.

You may well not regard this -- and I don't begrudge you if this is true -- you may not regard this as an especially lenient sentence because what, you have been in for one year correct?

MR. DRANOVE: Yes, sir.

THE COURT: All right. So it seems to me you probably have got 24, roughly 24 months left.

MR. DRANOVE: Yes.

THE COURT: I know that is painful for you, to have to deal with the fact that you are going to be away from your family for another 24 months. But whether you do or do not regard it as a lenient sentence, that is the sentence. It seems to me just in light of the severity of your offense. I hope some day you regard today as the next chapter in your life. You are not as young as some people that appear before me but you've got plenty ahead of you, plenty to live for, and I wish you well.

There is a right to appeal, probably.

MS. KOWALSKI: Yes.

THE COURT: You have a right to appeal, but I wouldn't lie awake at night wondering about whether to appeal. If you appealed you'd probably get your appeal dismissed, but

GR          OCR          RMR          CRR          CSR

10

you do have a right to appeal to a higher court.

If you want to do that, you have to file a notice within ten days in this courthouse or you lose that right. If you can't afford a lawyer to represent you on appeal, one will be appointed for you

Do you understand what I have said about that?

THE DEFENDANT: Yes.

THE COURT: Is there anything further today?

MS. KOWALSKI: There are some open counts. Counts two and three remain open and the government moves to dismiss them

THE COURT: All right. Granted.

Anything further?

MR. DRANOVE: No, Your Honor.

Thank you very much

THE COURT: I recommend to the Bureau of Prisons that the defendant be incarcerated as close as possible to the Miami metropolitan area. I don't know if they can do that sir, but I will certainly recommend to them that they do so so you can be close to your family for the next couple of years before you are released.

Anything further?

MR. DRANOVE: No, Your Honor

THE DEFENDANT: Thank you.

(Matter concludes.)

G9        OCR        CM        CRR        CSR

Case 1:25-cr-01472-RCR    Document 15    Filed 03-25-25    Page 35 of 51 PageID #: 267

CLOSED

# EXHIBIT D

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-12

Case title: US v. Ponce, et al.                     Date Filed: 05-19-2000

Magistrate judge case number: 1:00-mj-00735        Date Terminated: 05-16-201

Assigned to: Judge John Gleeson

__Defendant (12)__

__Carlos Echeverry__                    represented by __Richard J. Rosenkrantz__
TERMINATED: 02-22-2010                                 32 Court Street
                                                       Room 908
                                                       Brooklyn, NY 11201
                                                       718-855-8350
                                                       Fax: ...
                                                       LEAD ATTORNEY
                                                       ATTORNEY TO BE NOTICED
                                                       Designation: CJA Appointment

                                                       __Roy Raymond John Kulcsar__
                                                       Law Office of Roy R. Kulcsar
                                                       25 Sheuer Square West
                                                       Suite 303
                                                       New York, NY 10013
                                                       212-587-3735
                                                       Fax: 201-659-2615
                                                       Email: rcklaw@aol.com
                                                       TERMINATED: 02-22-2010
                                                       LEAD ATTORNEY
                                                       ATTORNEY TO BE NOTICED
                                                       Designation: Retained

__Pending Counts__                                  __Disposition__

21:846=ND.F=Illegal Narcotic; 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1ss)

Receives 240 months imprisonment, 5 years
supervised release w/conditions, $100.00
special assessment.

__Highest Offense Level (Opening)__

Felony

A-26

**Terminated Counts**                                              **Disposition**

21:846 and 841(a)(A) et ff. 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1)

Open counts dismissed on government's
motion

21:846 and 841(a)(A) et ff. 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1s)

Open counts dismissed on government's
motion

21:841 and 841(a)(A) et seq. 18:2
and 3551 et seq - DISTRIBUTE AND
POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(2s)

Open counts dismissed on government's
motion

## Highest Offense Level (Terminated)

Felony

**Complaints**                                                     **Disposition**

None

**Plaintiff**

USA                                          represented by   **John R. Kruger**
                                                              United States Attorney's Office
                                                              Criminal Division
                                                              One Pierrepont Plaza
                                                              Brooklyn, NY 11201
                                                              718-6128
                                                              (718) 254-6456
                                                              ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 05/01/2009 | 1 | COMPLAINT as to Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Castillo, Raymond Martinez, Carlos Arturo Ruiz, Carlos Enriquez, Sergio Tobar, Alexis Fernandez-Vasquez, Hector Casillas (Joaquin - 48 ) (Palacio, Manuel) (Entered 05/01/2009). |
| 05/01/2009 | | ARREST of Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Casillo, Raymond Martinez, Carlos Arturo Ruiz, Carlos Enriquez, Ernesto Tobar, Alexis Fernandez- |

CLOSED

# EXHIBIT E.

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-10

Case title: USA v. Brooks et al

Date Filed: 08/14/2000

Date Terminated: 08/07/2002

Assigned to: Judge John Gleeson

**Defendant (10)**

Raymond Gutierrez
TERMINATED: 08/07/2002

represented by Alan M. Nelson
Alan Nelson Esq
3000 Marcus Avenue
Lake Success, NY 11042
(516) 328-6300
Fax: (516) 328-6104
Email: anelson@aol.com
TERMINATED: 08/07/2002
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Retained

**Pending Counts**

21:846 and 841 B=B1 A=841(b)(1)(A) et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1s)

**Disposition**

Received 41 months imprisonment, 4 years
supervised release w/ conditions, $100.00
special assessment.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

21:846 and 841 B=B1 A=841(b)(1)(A) et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1)

**Disposition**

Dismissed on government's motion

21:846 and 841 B=B1 A=841(b)(1)(A)
and 841 et seq - DISTRIBUTE AND
POSSESS WITH INTENT TO

Dismissed on government's motion

DISTRIBUTE/POSSESS AND/OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(2)

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

| USA | represented by | **John R. Kruger** |
|---|---|---|
| | | United States Attorney's Office |
| | | Criminal Division |
| | | One Pierrepont Plaza |
| | | Brooklyn, NY 11201 |
| | | 718-254-6323 |
| | | ATTORNEY TO BE NOTICED |

| Date Filed | # | Docket Text |
|---|---|---|
| 05/19/2026 | | Magistrate Judge has been selected to run the selection to handle any matters that may be referred in this case. (Reddy, Lisa) (Entered: 05/19/2026) |
| 05/22/2026 | 12 | SUPERSEDING INDICTMENT as to Carlos Cisneros (Executive 1), Hernan Becerra Peralta (Treasurer 1), Jose Peralta (Executive 1), Juan Morales (Executive 1, Dara Leon Macuta de Valencia (Counsel 1), Jose Gonzalez (Accountant 1), Jose M. Rodriguez (Treasurer 1), Gustavo Martinez (Executive 1), Juan Carlos Garza (Executive 1), Manuel F. Fernandez (Counsel 1), Raymond Gutierrez (Executive 1), Carlos Amaya Ruiz (Counsel 1), Zurets Tobar (Executive 1), Alexis Fernandez-Vasquez (Jr counsel ), Hector Lasso Lasso (Executive 1). (Reddy, Lisa) (Entered: 05/22/2026) |
| 06/02/2026 | 13 | CALENDAR ENTRY as to Hernan Becerra Peralta, Jose Peralta, Julian Morales, Dara Leon Macuta de Valencia, Jose Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garza, Manuel F. Fernandez, Raymond Gutierrez, Carlos Amaya Ruiz, Carlos Echeverry, Zurets Tobar, Alexis Fernandez-Vasquez, Hector Lasso Lasso case called before Judge John Gleeson 2:00 for arraignment AUSA Liang Jiang and defendants present with counsel except for Peralta, a fugitive, and J.M. Rodriguez, not present. Court Reporter: Holly Driscoll. Defendants plead Not Guilty. Jose Cisneros (ct 1), Julian Morales (Executive 1), Dara Leon Macuta de Valencia (Executive 1), Jose Gonzalez (Counsel 1), Jose M. Rodriguez (Exec), AUSA Gustavo Martinez (Executive 1), Juan Carlos Garza (Counsel 1), Manuel F. Fernandez (Executive 1), Raymond Gutierrez (Counsel 1), Carlos Amaya Ruiz (Counsel 1), Carlos Echeverry (1), counsel exempt ), Dr. Ernesto Peltier (Executive 1), Atty David Goldstein standing in for arraignment purposes for AUSA James Kaskosous and Ron Kalisek. Next conference set for 7/01/06 at 3:00. (Reddy, Lisa) (Entered: 06/02/2026) |
| 06/15/2026 | 20 | LETTER as to Hernan Donado, dated dated 6/14/06 from AUSA Liang H. Jiang to Counsel providing and requesting discovery. (No attachments) (Reddy, Lisa) (Entered: ... ) |

Case 1:25-mc-0?-379-BDP    Document 15    Filed 03-25-26    Page 57 of 58 PageID #: 253

CLOSED

# EXHIBIT F

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-11

Case title: USA v. Rosado, et al

Date Filed: 09/19/2000

Date Terminated: 06/08/2001

Assigned to: Judge John Gleeson

## Defendant (1)

**Carlos Arturo Ruiz**
TERMINATED: 06/08/2001

represented by **Ismael Gonzalez**
Ismael Gonzalez & Associates P.C.
49 West 34th Street
Ste. 201
New York, NY 10418
212-465-1981
Fax: 212-111-1140
TERMINATED: 06/08/2001
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Retained

## Pending Counts

21:846 and 841(b)(1)(A)(ii), 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1s)

## Disposition

Receives 62 months imprisonment, 3 years
supervised release w/conditions, $100.00
special assessment

## Highest Offense Level (Opening)

Felony

## Terminated Counts

21:846 and 841(b)(1)(A)(ii), 18:3551 et
seq - CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE
(1)

## Disposition

Dismissed on government's motion

21:846 and 841(b)(1)(A)(ii), 18:3551 et
seq - Conspiracy to distribute and possess
with the intent to distribute five kilograms

Dismissed on government's motion

(1ss)

or more of a substance containing cocaine, a
Schedule II controlled substance
(1ss)

21:841 (a)(1) and 841(b)(1)(A)vii, 846 and 853
et seq - DISTRIBUTE AND
POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE            Dismissed on government's motion
OF A SUBSTANCE CONTAINING
COCAINE
(1ss)

21:841(a)(1) and 841(b)(1)(A)viii, 846
and 853 et seq - Knowingly and
intentionally distribute and possess with the
intent to distribute five (5) grams or more of
a substance containing cocaine, a Schedule
II narcotic drug controlled substance
(2ss)                                         Dismissed on government's motion

**Highest Offense Level (Terminated)**

Felony

**Complaints**                               **Disposition**

None

**Plaintiff**

USA                        represented by  **John B. Kroger**
                                           United States Attorney's Office
                                           Criminal Division
                                           One Pierrepont Plaza
                                           Brooklyn, NY 11201
                                           718-555-xx
                                           Email: xxxxxxx
                                           LEAD ATTORNEY
                                           ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 03/13/2001 | | Magistrate Judge has been selected by random selection to handle any matters that may be referred in this case. (Reddy, Frank) (Entered: 03/13/2001) |
| 03/20/2006 | 12 | SUPERSEDING INDICTMENT as to Carlos Pelaez (my) (Entered: ) ... Herman Ramos Burgos (1) count ss; Jose Peralta (3) count ss; Julian Morales (4) count ss; Jane Leon Martinez-Vizcaino Vizcaino (5) count ss; Jose Gonzalez (6) count ss; Jose M. Rodriguez (7) count ss; Gustavo Martinez (8) count ss; Juan Carlos Garcia (9) count ss; Manuel F. Fernandez (10) count ss; Raymond Gomez (11) count ss; Carlos Arturo Ruiz (12) count ss; Ignacio Leon (13) count ss; Alexis Fernandez-Vasquez (14) count ss; Hector Tahia Leon (15) count ss. (Reddy, Frank) (Entered: 03/23/2006) |
| 03/22/2006 | 14 | CALENDAR ENTRY as to Herman Ramos Burgos, Jose Peralta, Julian Morales, Jane Leon Martinez-Vizcaino Vizcaino, Jose Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Manuel F. Fernandez, Raymond Sanchez, Carlos Arturo Ruiz, Carlos ... |

| | | |
|---|---|---|
| 03/19/2006 | 203 | Sealed Letter placed in vault as per order of Mag. Watck. (Paper Document Entered on 03/20/06) |
| 03/19/2006 | 204 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Watck. (Paper Document dated 03/19/2006) |

Case 1:25-mc-01479-RER    Document 16    Filed 03/2026    Page 1 of 1 PageID #: 266

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YO

IN RE MOTION TO INTERVENE AND UNSEAL,

Case No. 25-MC-1479-RER

## NOTICE OF APPEAL

The Third-Party Joaquin Maria Valencia-Trujillo (Third Party L ereze, hereby respectfully gives timely notice of his intention to appeal the Orders of this Court, ECF Doc. No. 14 ("Memorandum and Order" filed February 23, 2026), the Order of February 18, 2026, and the pending Order on the Third-Party's Rule 35(c) motion, to the U.S. Court of Appeals for the Second Circuit.

Respectfully submitted,

Joaquin Maria Valencia-Trujillo
Register Number 02440-748
FCI Oakdale II
2105 East Whatley Road
Oakdale, Louisiana 71463

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have served a true and correct copy of the foregoing *NOTICE OF APPEAL* on the U.S. Attorney's Office for the Eastern District of New York by mail sent to 271 Cadman Plaza East, Brooklyn, NY 11201 on this 25th day of March, 2026.

Joaquin Maria Valencia-Trujillo



U.S. Department of Justice

United States Attorney
Eastern District of New York

April 18, 2026

**BY E-mail and ECF**

The Honorable Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     In re Motion to Unseal
        Miscellaneous Docket No. 25-016-A-RPR

Dear Judge Reyes:

The government respectfully submits this letter in response to the Court's order dated March 21, 2026, which directed the government to respond to any of plaintiff Jeague's "Motion Addendum and New Verified Rule 59(e) Motion to Alter or Amend," filed on March 28, 2026. See ECF No. 15 ("Mot."). In this new motion, the plaintiff requests that the Court vacate its Order denying his motion to unseal. See Mot. at 13. The Court should deny the plaintiff's motion.

As an initial matter, Federal Rule of Civil Procedure 59(e) applies only to motions to alter or amend a judgment, and no judgment has been entered in this case. Construed liberally, the plaintiff's motion is more properly treated as a motion for reconsideration under Local Civil Rule 6.3. In any event, regardless of whether the Court construes the plaintiff's motion as a motion to alter judgment or a motion for reconsideration, the standard for granting such a motion is strict. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Indeed, such motions are generally denied unless the moving party can point to controlling decisions or data that the court overlooked, or "an intervening change in the law or availability of new evidence." Espinoza v. Trans Union, 762 F.3d 1209, 1216 (D.C. Cir. 1989) (per curiam), or "the need to correct a clear error or prevent manifest injustice." Id. (internal quotation marks omitted). Importantly, a Rule 59(e) motion "does not provide a vehicle to simply an opportunity to reargue facts and

―――――――

The government notes that a motion for reconsideration under Local Rule 6.3 "must be served within 14 days after the entry of the court's order being challenged." SDNY-EDNY Local Civ. Rule 6.3. The plaintiff failed to comply with this provision of the rule, filing his "Motion to Alter or Order" on March 28, 2026 — 3 months after the Court's order denying his second motion to unseal. See ECF No. 12. This is additional grounds to deny his motion

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: _____
Brooke Theodora
Assistant U.S. Attorney
(718) 254-6212

Case 1:25-cr-00479-RER    Document 26    Filed 04-23-26    Page 1 of 5 PageID #: 289

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

IN RE: MOTION TO INTERVENE AND UNSEAL    Case No.    25-cr-479-RER

## THIRD PARTY'S VERIFIED REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS RULE 59(e) MOTION TO ALTER ORDER

The Third Party, Joaquin Manzi Contreras ("Third"), proceeding pro se, hereby timely replies to the government's opposition to his motion under Rule 59(e) Fed. R. Civ. P. to alter the Court's "Memorandum & Order" (the "Order") dated February 25, 2026. See Local Civil Rule 6.3(b).

## A. The New Evidence and The Need to Correct Clear Error or Prevent Manifest Injustice

The Third Party asserts (1) that **the Court _provided_ new _evidence_** that at least two of the requested internal documents related to Sam ex-Defendants Gustavo Martinez, Carlos Echeverry, Raymond Gutierrez, and Carlos Ruiz (in Case No. 1:cr-00963, Docket Nos. 117, 252, 259, 280) were **"DOJ memoranda"** that are so closely related to the issues in this Case that exposed the country has been exercising a **DOJ** investigation, a presumptive right of access under the First Amendment or the common law, _FOIA_ v. Kane, 2019 U.S. Dist. LEXIS 12 1749, *8, (2) that there is consulting clear error by denying the presumptive right of access, and (3) that the Court misread a record showing a foreign federal prosecutor urging that the jury convict the Third Party on 3 of the charged counts _solely_ on the alleged FCPA conspiracy, therefore committing clear error in analyzing the Third Party's need to open a partial unsealing to prevent manifest injustice, access to the information contained in all documents requested should be granted to the Third Party

---

¹ The is the _new evidence provided by the Court, early_ citing as DOJ Nos. 117, 252, 259, for the first time as a "DOJ memoranda," and documents inter alia consist of: (1) a letter from DOJ to SDNY requesting a stay a Management Finance Company (order inter alia corrected to DOJ Nos. 117 as a letter requesting a stay) DOJ Docket (252) No. 252 as a DOJ correspondence; and DOJ No. 259 as a letter requesting, and DOJ No. 280 as a list of the jury request. Number from DOJ at 8 that "these related to orders from a DOJ Deputy a copy of the associated docket in the 280 request for all sealed records at SDNY." See _enclosed_. See also Document order

In *Schaefer v. Newton Bartmeer*, No. 12-1,595,221, 222, 2d Cir. 2024, the Circuit panel explained that "the court is authorized to grant a Rule 59(e) motion to alter or amend the judgment only when the [moving party] identifies *the availability of new evidence, or the need to correct a clear error or prevent manifest injustice*" (quoting *Wealth Assurance GmbH v. Gigova Mason Capital Inc.*, 470 F. 3d 336, 337 (3d Cir. 2006) (internal marks omitted) (emphasis added) (reviewed at 332, citing 11 Wright & Miller, Fed. Practice and Procedure § 2810.1 (3d ed. 2012))).

Second, it must also be noted here that Rule 59(e) is not a vehicle to relitigate matters already decided or to raise arguments or present evidence that could have been raised before the entry of the order. See *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("a Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment" (quoting *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (11th Cir. 1998))). The Third Party has not been given an opportunity to invoke his presumptive right of access under the First Amendment to all documents the criminal case, (*State* at 6, 8, citing *BCP Star* 14-, 151, 595, 596 ), at *Case No. -mc-00905*-RDA, *because the new evidence identifying these four sealed documents as §SK11.1 memoranda was provided by the Court for the first time ever in an Order* (*see Order p. 1* )

As this case has been converted for the first time by the Court's own Order, the Third Party could not have raised his right of access to *§SK11.1 memoranda* prior to the entry of the Order which identified the four sealed documents for the first time as *§SK11.1 memoranda*.

[Footnote text illegible due to page degradation.]

## B. Additional Clear Errors in the Court's Order in Need of Correction
### (1) No person in resisting the requested disclosure

**(2) The Court Should Apply Redactions or Summarize the Information Outright**

As the Third Party has a presumptive right of access under the First Amendment or, at minimum, the common law as to § 3553 *memoranda*. Note at fn 5, the court should apply redactions or summarization. In analyzing cases, the Court addressed a concern that, if references in the present or future cases indicate that their cooperation will likely become a matter of public knowledge, valuable cooperation might cease. But the possibility exists that redactions applied to the court would satisfy the concern. ... et al [...] Disperately fulfil *Page Rent* Act, F.Supp.2d 777, 788 (S.D.N.Y.), (even in cases where redactions were ordered by the courts ... *Nunez v. Sentis Bailes ... Co.*, ... 876 F.Supp. 424 (E.D.N.Y. 1994)) effect disclosure of documents under of the court should consider alternatives. "The disclosure of redacted versions ... *Sellers ... New ... Grand ... ...* 994 F.2d 95, ... (2nd Cir. 1993) (parties ... deprived of the most important source of evidence needed" without ... some reasonable summarization").

**(3) Common law analysis was conducted instead of analysis under the First Amendment right**

The Court committed clear error because it conducted common law analysis only at the government's invitation, rather than analyze the merits under the stronger First Amendment right:

> Having determined that [the letters] are judicial documents and therefore that at least a common law presumption of access applies to them, we would ordinarily continue with the *[citation]* law analysis and determine the weight of the presumption and measure it against competing considerations. *See [citation], 435 F.3d at 119-20.* This case, however, does not require such an approach. *Since we find that [the letters] are subject to a First Amendment right of access, which is stronger and can only be overcome under more stringent circumstances than the common law presumption, we need not, and do not, engage in such a common law analysis.* *[citation], New York, 435 F.3d 233, 241 (2d Cir. 20..)* (emphasis and brackets added). Note at fn 5 "...ments need only be analyzed under 'stronger' First Amendment protections".

Case 1:22-cr-00479-PLR    Document 14    Filed 2023.26    Page 5 of 6 PageID #: 293

**(4) The Court reviewed the record showing the Third Party's compelling need for disclosure**

As fully explained by the Third Party in Rule 59 of Motion in pp 8-12, the Court reviewed the record showing the Third Party's compelling need for disclosure to prove his entitlement to possess certain relief as a Tampa federal prosecutor need the jury to convict the Third Party on all the charges levied based only on the alleged FDNY conspiracy, thereby committing a fatal error in analyzing the Third Party's need to prove against the charge as to that separate conspiracy. See *U.S. v. Adams*, 171 F.3d 1296, 1315-17; 128 S. Ct. 1949 to safeguard stated a defendant is entitled to present a defense free of prosecutorial misconduct. To prevent a manifest injustice, access to the information contained in all the documents requested should be granted to the Third Party.

**CONCLUSION**

For all the foregoing reasons and a further reasons stated in A 1 for the Third Party's papers filed heretofore, this Court should alter its Order entered on February 28, 2026 under Rule 59(e) Fed. R. Civ. P. and unseal all requested relief and documents as well as the relevant portions of the PSRs requested based on the Third Party's compelling need to provide new evidence for a new trial in the Middle District of Florida, Tampa Division, Case Number cr-2024.

Respectfully submitted,

Eugene Marie Vincent-Truglie
Register Number 02466744
FCI Oakdale II
Federal Correctional Institution
PO Box 5010
Oakdale, Louisiana 71463

5

293

Case 1:2... ...154...RLR    Document 1...    Filed 0...23.26    Page ... of ... PageID #: 25...

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION

The undersigned hereby certifies that the instant motion complies with the word count limitation specified in Local Civil Rule 7.1(c). The word count of the Microsoft Word software used to prepare this motion shows it has 6,708 countable words, excluding the caption and certificates.

_Joaquin Mario Valencia-Trujillo_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing Third Party's Verified Reply to the Government's Rule 59(e) Motion to Alter Order ... to the U.S. Attorney's Office, Eastern District of New York, by mail service 271 Cadman Plaza East, Brooklyn, NY 11201 on Apr ..., 2026.

_Joaquin Mario Valencia-Trujillo_

## VERIFICATION

I swear, under penalty of perjury, that all of the foregoing is true and correct.

Executed on ...3rd of April, 2026.

_Joaquin Mario Valencia-Trujillo_

Case 1:25-cr-00594-ER    Document 51    Filed 05/05/26    Page 2 of 3 PageID #: 500

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand twenty-six.

Joaquin Mario Valencia Trujillo,

    Plaintiff-Appellant,

    v.

United States of America,

    Defendant-Appellee.

**ORDER**

Docket No. 26-777

On April 13, 2026, the Court issued a notice pursuant to Fed. R. App. P. 3(a)(2), staying this appeal due to a pending motion in the district court. The district court having denied the motion in an order dated May 11, 2026.

IT IS ORDERED that the stay of this appeal is hereby lifted.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

CERTIFIED COPY ISSUED ON 06/05/2026

Case 1:25-mc-00479-RER   Document 21   Filed 05/13/26   Page 1 of 3 PageID #: 300

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

IN RE MOTION TO INTERVENE AND UNSEAL

Case No. 1:25-mc-00479-RER

(Mag. Ramon E. Reyes, Jr.)

### AMENDED NOTICE OF APPEAL

Joaquin Mario Valencia-Trujillo, pro se, hereby respectfully gives notice that he appeals to the United States Court of Appeals for the Second Circuit, Case No. 26-777, from the following orders of the United States District Court for the Eastern District of New York:

1. The Memorandum and Order entered February 25, 2026, ECF No. 14, granting in part and denying in part Appellant's motion to intervene and unseal.

2. The Order entered February 18, 2026, referenced in Appellant's original Notice of Appeal filed March 27, 2026; and



A 28

Case 1:25-cv-01447-RHR    Document 21    Filed 05/18/26    Page 2 of 3 PageID #: 39

3. The Memorandum and Order entered May 11, 2026, ECF No. 19, denying Appellant's motion for reconsideration under Federal Rule of Civil Procedure 59(e).

This Amended Notice of Appeal is filed pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) to clarify Appellant's intent to appeal the May 11, 2026 Memorandum and Order, ECF No. 19, after its entry. Appellant's original Notice of Appeal, filed March 27, 2026, referenced the then-pending Rule 59(e) order. This Amended Notice of Appeal designates that order now that it has been entered.

No additional filing fee is required for this Amended Notice of Appeal. See Fed. R. App. P. 4(a)(4)(B)(iii).

Respectfully submitted,

_____

Joaquim Mario Valencia-Trujillo, pro se

Register Number 02440-748

FCI Oakdale II

2 of 3

P.O. Box 5014

Oakdale, Louisiana 71463

Dated: June 15, 1926 _____ .

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 15, 2026, I caused a true and correct copy of the foregoing Amended Notice of Appeal to be served on the United States Attorney's Office for the Eastern District of New York by Certified U.S. Mail, postage prepaid, addressed to

United States Attorney's Office

Eastern District of New York

271 Cadman Plaza East

Brooklyn, New York 11201

Joaquin Mario Valencia-Trejillo, pro se

Register Number 02440-748

FCI Oakdale II

P.O. Box 5010

Oakdale, Louisiana 71463



TO CLERK OF COURT
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 CADMAN PLAZA EAST
BROOKLYN NY 11201

THU - 19 JUN 5:00P
2DAY

8731 3824 1742

SA EGXA                11201
                       EWR

# EXTREMELY URGENT





# APPENDIX INDEX

## SPECIAL APPENDIX

| Page | Doc. No. | Description |
|---|---|---|
| | | |
| | | |

## REGULAR APPENDIX

| Page | Doc. No. | Description |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| A-147 to A-150 | Doc. 8 | [illegible] |
| A-151 to A-156 | Doc. 9 | Appellant Reply Declaration and Response [illegible] |
| A-159 | Exhibit N | [illegible] |
| A-157 | Exhibit O | [illegible] |
| A-160 | Exhibit P | [illegible] |
| A-162 | Exhibit Q | [illegible] |
| A-166 | Exhibit R | [illegible] |
| A-172 | Exhibit S | [illegible] |
| A-173 to A-177 | Doc. 1 | [illegible] |
| A-178 to A-208 | Doc. 11 | [illegible] |
| A-178 | Exhibit 2 | [illegible] |
| A-209 to A-80 | Doc. 15 | Rule 59(e) Motion [illegible] |
| A-83 | Doc. 16 | Original Notice of Appeal [illegible] |
| A-84 to A-85 | Doc. 17 | [illegible] |
| A-150 to A-[illegible] | Doc. 18 | [illegible] |
| A-200 | Doc. 21 | [illegible] |
| A-202 to A-205 | Doc. 21 | Amended Notice of Appeal [illegible] |

[illegible footnote text]

With respect to the appellate filing fee, the $605.00 appellate filing fee was submitted separately to the Clerk of the United States District Court for the Eastern District of New York by USPS money order, payable to Clerk, U.S. District Court. The payment was sent by UPS Next Day Air under tracking number 1ZXX XXXX XXXX XX XX and was delivered to the Brooklyn, New York mailroom on June 26, 2026 at 11 p.m. *Copies of the money order, cover note, receipt, and UPS proof of delivery are enclosed for administrative reference. As of the date of this filing, Appellant understands that the payment may not yet appear on the district court docket. Appellant respectfully requests that the Clerk apply the payment to the above-referenced case but refrain from docketing the money order instrument itself, as it contains the personal information of the third-party sender. Appellant respectfully requests that the Clerk process the enclosed brief and appendix, and advise if any additional action is required regarding the filing fee.*

Also enclosed herewith is Appellant's completed Form T-1180, Civil Appeal Transcript Information for Pro Se Appellants, submitted pursuant to this Court's order dated June 25, 2026 (Dkt. 21), which directed that this appeal may be dismissed by July 16, 2026 unless Form D-P is filed. Appellant previously mailed a completed Form D-P by first-class United States Mail on or about June 25, 2026, but includes an additional copy with this filing to ensure timely receipt prior to the July 16, 2026 deadline.

Thank you for your attention to this filing.

Respectfully submitted,

_Signature_

Regina Maria Valencia-Trujillo pro se
Reg. No. XXXXX-XXX

United States District Court
Eastern District of New York
Clerk's Office / Intake Department

Re: Payment of Notice of Appeal Fee
EDNY Case No. 1:25-mc-01479-RER

Dear Clerk,

Enclosed is a $605.00 money order payable to Clerk, U.S.
District Court.

Please apply this payment to the notice of appeal filing
fee in case no. 1:25-mc-01479-RER, related to
Second Circuit Appeal No. 26-777 (Joaquin Valencia Tijul

Respectfully,

Mario Valencia
marit001@gmail.com
371 W Julian St, Unit 264
San Jose, CA 95110





## Tracking Details

**Delivered**

**Tuesday, June 30** Actual Delivery at 2:43 PM



Joaquin Mario Valencia Trujillo
Reg. No. 70459-748
FCI Oakdale II
P.O. Box 5010
Oakdale, Louisiana 71463

Aug 01 2026

Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: Joaquin Mario Valencia Trujillo v. United States of America, No. 26-777

Dear Clerk of Court:

I am the pro se Plaintiff-Appellant in the above-captioned appeal. Enclosed for filing, please find the following:

- Plaintiff-Appellant's Opening Brief;
- Special Appendix (SPA-1 to SPA-__);
- Regular Appendix (A-1 to A-798);
- Appendix Index;
- Money order, cover note, UPS Next Day Air receipt, and UPS proof of delivery enclosed for administrative reference; and
- Form D-P Pro-se Appeal Transcript Information for Pro Se Appellants, submitted pursuant to the Court's order dated June 15, 2026 (Dkt. __).

I have enclosed the original of each document together with the number of additional paper copies I understand to be required: six total copies of the brief pursuant to Local Rule 31.1, and three total copies each of the Special Appendix and Regular Appendix pursuant to the pro se provisions of Local Rule 30.1. If the Clerk's office requires a different number of copies, please advise me at the address above and I will promptly provide them.

A Certificate of Service is enclosed within the enclosed brief reflecting my service on counsel for Defendant-Appellee by first-class United States Mail on this date.





D STATES
SERVICE®  |  PRIORI
MAIL

USPS CERTIFIED MAIL

PRIORITY MAIL

