# 26-777

*To Be Submitted*

# United States Court of Appeals
**For the Second Circuit**

JOAQUIN MARIO VALENCIA-TRUJILLO,

*Plaintiff-Appellant,*

—against—

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

**On Appeal From The United States District Court**
**For The Eastern District of New York**

## BRIEF FOR THE UNITED STATES

JOSEPH NOCELLA, JR.,
*United States Attorney*,
*Eastern District of New York*
271-A Cadman Plaza East
Brooklyn, New York 11201
(718) 254-7000

SUSAN CORKERY,
BROOKE THEODORA,
*Assistant United States Attorneys*,
*Of Counsel*.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

I. Factual Background ........ 3

II. Procedural History ........ 5

SUMMARY OF ARGUMENT ........ 10

ARGUMENT ........ 12

I. Applicable Law ........ 12

1. Standard of Review ........ 12

2. Sealing Requests ........ 13

3. Disclosure of PSRs ........ 16

II. The District Court Did Not Err in Declining to Unseal Certain Filings ........ 18

A. The Court Applied the Correct Standard ........ 18

B. The Court's Findings Were Sufficient To Justify Sealing ........ 20

III. The District Court Did Not Err in Denying Disclosure of PSRs ........ 23

IV. The District Court Properly Denied the Rule 59(e) Motion ........ 27

CONCLUSION ........ 30

# TABLE OF AUTHORITIES

Page

## CASES

*Brady v. Maryland*,
373 U.S. 83 (1963) ........ 24

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ........ 12, 28

*Doe v. Lerner*,
688 F. App'x 49 (2d Cir. 2017) ........ 16, 23

*Dorsett v. County of Nassau*,
No. CV 10-1258,
2011 WL 130324 (E.D.N.Y. Jan. 14, 2011) ........ 14 n.7

*Fund For Animals v. Williams*,
311 F. Supp. 2d 1 (D.D.C. 2004) ........ 28

*In re NBC Universal, Inc.*,
426 F. Supp. 2d 49 (E.D.N.Y. 2006) ........ 13

*In re The City of New York*,
607 F.3d 923 (2d Cir. 2010) ........ 12

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006) ........ 14

*Mirlis v. Greer*,
952 F.3d 51 (2d Cir. 2020) ........ 14, 24

*Napue v. Illinois*,
360 U.S. 264 (1959) ........ 24

*Newsday LLC v. Cnty. of Nassau*,
730 F.3d 156 (2d Cir. 2013) ........ 13, 15

*Nixon v. Warner Communications, Inc.*,
435 U.S. 589 (1978) .......... 13

*Rutledge v. United States*,
517 U.S. 292 (1996) .......... 5, 6

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) .......... 28

*United States v. Alcantara*,
396 F.3d 189 (2d Cir. 2005) .......... 16

*United States v. Alexander*,
860 F.2d 508 (2d Cir. 1988) .......... 17

*United States v. Amodeo*,
44 F.3d 141 (2d Cir. 1995) .......... 13-14 n.7, 16

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) .......... 14, 16

*United States v. Caicedo Velandia*,
No. 10-CR-00288-01,
2019 WL 6913524 (E.D.N.Y. Dec. 19, 2019) .......... 22-23

*United States v. Charmer Indus., Inc.*,
711 F.2d 1164 (2d Cir.1983) .......... 16, 17, 25, 27

*United States v. Corbitt*,
879 F.2d 224 (7th Cir. 1989) .......... 17, 27

*United States v. Doe*,
63 F.3d 121 (2d Cir. 1995) .......... 16

*United States v. Greenwood*,
145 F.4th 248 (2d Cir. 2025) .......... 13, 14 n.7, 15, 20

*United States v. Haller*,
837 F.2d 84 (2d Cir. 1988) .......... 16

*United States v. Molina*,
356 F.3d 269 (2d Cir. 2004) .......................................................... 12, 17

*United States v. Nichols*,
56 F.3d 403 (2d Cir. 1995) ........................................................ 19-20, 22

*United States v. Pena*,
227 F.3d 23 (2d Cir. 2000) ................................................................ 27

*United States v. Sattar*,
471 F. Supp. 2d 380 (S.D.N.Y. 2006)............................................ 14 n.7

*United States v. Valencia-Trujillo*,
573 F.3d 1171 (11th Cir. 2009)................................................ 3, 4, 5, 26

RULES

U.S.S.G. § 5K1.1 ........................................................................................ 21

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 26-777

JOAQUIN MARIO VALENCIA-TRUJILLO,

*Plaintiff-Appellant*,

-against-

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BRIEF FOR THE UNITED STATES

## PRELIMINARY STATEMENT

Plaintiff-Appellant Joaquin Mario Valencia-Trujillo, proceeding pro se, appeals from orders entered by the United States District Court for the Eastern District of New York (Reyes, J.) on February 25, 2026, and May 11, 2026. In those orders, the district court (i) granted in part and denied in part Valencia-Trujillo's motion to intervene and unseal and (ii) denied his motion to alter judgment under

Federal Rule of Civil Procedure 59(e), respectively. Valencia-Trujillo argues that the district court improperly refused to unseal certain records and disclose presentence investigation reports relating to four defendants in an unrelated criminal matter and further erred in declining to reconsider those rulings after his Rule 59(e) motion.

As we show below, these arguments are without merit.

## STATEMENT OF FACTS

### I. Factual Background

From the late 1980s through the early 2000s, Valencia-Trujillo, a Colombian citizen, "organized and led" a vast international cocaine trafficking organization operating throughout South and Central America. *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1173-74 (11th Cir. 2009); *see generally United States v. Valencia-Trujillo*, No. 02-CR-329 (MSS) (M.D. Fla.). Over the course of several years, the investigation of Valencia-Trujillo's sprawling criminal enterprise resulted in the seizure of more than 600 tons of cocaine, valued at approximately $8 billion, and over 1,200 convictions. *Valencia-Trujillo*, 573 F.3d at 1173.

In August 2002, Valencia-Trujillo was indicted in the Middle District of Florida for several drug crimes, including operating a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848(a), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1), (a)(2), and (h).[1] *Id.* at 1174. In connection with the CCE

[1] The indictment also charged Valencia-Trujillo with conspiracy to import five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii) and 963, and

charge, the indictment listed 36 predicate acts relating to 18 "alleged [drug] smuggling events, each of which was charged as both an importation offense under 21 U.S.C. § 952 or § 963 and a possession with intent to deliver offense under 21 U.S.C. § 841(a)(1) or § 959." *Id.* In March 2004, Valencia-Trujillo was extradited from Colombia to stand trial on these charges. *Valencia-Trujillo*, No. 02-CR-329 (MSS), ECF No. 13 (M.D. Fla. Mar. 19, 2004).

On October 25, 2006, following a 66-day jury trial in Tampa, Florida, Valencia-Trujillo was convicted of all counts. *Id.*; *see also Valencia-Trujillo*, No. 02-CR-329 (MSS), ECF Nos. 766-67 (M.D. Fla. Oct. 25, 2006). As for the CCE charge, the jury found that Valencia-Trujillo had committed 22 of the 28 predicate acts ultimately listed on the verdict form. *Valencia-Trujillo*, 573 F.3d at 1177. On February 1, 2007, Valencia-Trujillo was sentenced principally to 480 months' imprisonment. *Id.*; *see also Valencia-Trujillo*, No. 02-CR-329 (MSS), ECF No. 817 (M.D. Fla. Feb. 1, 2007) (Judgment). Valencia-Trujillo appealed,

---

conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 959 and 963. *Valencia-Trujillo*, 573 F.3d at 1174.

and the Eleventh Circuit affirmed his sentence and conviction in July 2009. *See Valencia-Trujillo*, 573 F.3d at 1185.[2]

II. Procedural History

In 2011, Valencia-Trujillo initiated an over ten-year, pro se crusade for post-conviction relief under 28 U.S.C. § 2255 in the Middle District of Florida. *See Valencia-Trujillo v. United States*, No. 11-CV-428-T-17 (EAJ) (M.D. Fla.). He asserted 36 grounds for relief. *See id.* at ECF No. 194 at 60. On August 4, 2017, the district court denied Valencia-Trujillo's motion on all grounds except for one and ordered that he be resentenced pursuant to *Rutledge v. United States*, 517 U.S. 292 (1996) (holding that conspiracy under 21 U.S.C. § 846 is a lesser-included offense of operating a CCE under 21 U.S.C. § 848). *Id.* at 24-25, 60.[3]

---

[2] The Supreme Court denied Valencia-Trujillo's petition for certiorari in March 2010. *Valencia-Trujillo v. United States*, 559 U.S. 987 (2010).

[3] Subsequently, on December 13, 2017, the district court vacated Valencia-Trujillo's convictions under Count One and Count Two (relating to the drug trafficking conspiracy) but resentenced him to the same sentence of incarceration (480 months) on Counts Three and Four. *See Valencia-Trujillo*, No. 02-CR-329 (MSS), ECF No. 1470 (M.D. Fla. Dec. 13, 2017). In so doing, the district court stated that "I don't think it's an exaggeration on [the government's] part to say that this was the most serious case of this nature that was ever tried in the Middle District

In April 2025, Valencia-Trujillo filed the instant motion to intervene and unseal in the Eastern District of New York. Specifically, Valencia-Trujillo sought leave to intervene as a third party in *United States v. Dorado*, No. 00-CR-515 (E.D.N.Y.) ("*Dorado*"), an unrelated criminal prosecution conducted 25 years earlier involving a cocaine trafficking conspiracy based in Brooklyn, New York. (DE:1 at 1).[4] He requested disclosure of presentence investigation reports ("PSRs") and the unsealing of filings relating to four *Dorado* defendants (collectively, the "*Dorado* Defendants"). (*Id.*). Each defendant was convicted in 2001 of conspiracy to possess with intent to distribute cocaine—approximately five years before Valencia-Trujillo's trial. (*Id.*).

Specifically, Valencia-Trujillo requested unsealing of the following *Dorado* filings:

1. ECF No. 136: a letter requesting postponement of sentencing;

---

of Florida." *See id.* at ECF No. 1476 ("Resentencing Tr.") 36:3-5 (M.D. Fla. Feb. 20, 2018).

[4] References to "Br.," "SPA," "GSA," and "DE" are to Valencia-Trujillo's brief, special appendix, the government's sealed appendix, and district court docket entries in *Valencia-Trujillo v. United States*, No. 25-mc-1479 (E.D.N.Y.), respectively.

2. ECF No. 147: a letter response to a sentencing letter submitted under United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1;

3. ECF No. 152: a § 5K1.1 sentencing letter;

4. ECF No. 195: a § 5K1.1 sentencing letter;

5. ECF No. 199: a § 5K1.1 sentencing letter;

6. ECF No. 261: an application made by Valen[ci]a-Trujillo's trial attorney to unseal plea transcripts;

7. ECF No. 262: a letter opposing ECF No. 261;

8. ECF No. 263: an administrative court document notifying the Clerk's office to seal ECF No. 261; and

9. ECF No. 264: a court endorsed copy of ECF No. 262 denying the application to unseal, (ECF No. 261).

(SPA:2, 7-8).

On August 14, 2025, the government filed an opposition to Valencia-Trujillo's motion as it related to the PSRs and requested that the district court provide the government with copies of the above filings so that it could articulate its position as to their unsealing. (DE:8 at 1; *see* SPA:7-8). On November 20, 2025, after receiving and reviewing the sealed documents, the government filed under seal another opposition to

Valencia-Trujillo's motion in which it opposed the unsealing of certain filings relating to the *Dorado* Defendants' sentencing and cooperation (*Dorado* ECF Nos. 136, 147, 152, 195, and 199), but did not object to the unsealing of the other unrelated filings (*Dorado* ECF Nos. 261-264), which concerned an unsuccessful unsealing request made by Valencia-Trujillo's trial attorney in 2006. (GSA 1-7).[5]

On February 25, 2026, after reviewing the sealed filings in camera, the district court granted in part and denied in part Valencia-Trujillo's motion. (SPA:1-10). The court granted Valencia-Trujillo's request to unseal the filings that the government did not oppose (*Dorado* ECF Nos. 261-264) (*id.* at 9), and otherwise denied Valencia-Trujillo's requests for disclosure of PSRs and to unseal the remaining filings at issue (*Dorado* ECF Nos. 136, 147, 152, 195, and 199) (*id.* at 7-9).

On March 25, 2026, Valencia-Trujillo filed a "Rule 59(e) Motion to Alter Order" in which he asked the district court to reconsider its ruling on his motion to unseal. (DE:15 at 1). The district court denied this motion on May 11, 2026. (DE:19 at 1).

---

[5] This sealed document is submitted separately.

This appeal, in which Valencia-Trujillo challenges both district court orders, followed.

## SUMMARY OF ARGUMENT

The district court's orders on Valencia-Trujillo's (i) motion to intervene and unseal and (ii) motion to alter judgment under Federal Rule of Civil Procedure 59(e) should be affirmed in all respects.

With respect to the motion to intervene and unseal, the district court did not err in declining to unseal filings relating to the *Dorado* Defendants' sentencing and cooperation. Contrary to Valencia-Trujillo's arguments, the court applied the proper First Amendment framework and adequately explained, on a document-by-document basis, why continued sealing was warranted. The court's findings appropriately accounted for the dangers posed by the international drug-trafficking enterprise Valencia-Trujillo led, the serious risks disclosure would create for cooperating witnesses and their families, and the government's compelling interest in safeguarding both cooperators and the efficacy of the cooperation process.

The district court likewise acted well within its discretion in denying Valencia-Trujillo's request for the *Dorado* Defendants' PSRs. The court reasonably concluded that Valencia-Trujillo failed to establish the requisite need for disclosure. His speculation that the *Dorado*

Defendants may have implicated someone other than Valencia-Trujillo—or no one at all—in a single instance of drug smuggling in their PSRs amounted to a mere fishing expedition.

Finally, the district court did not err in denying Valencia-Trujillo's Rule 59(e) motion. Valencia-Trujillo identified no controlling decisions or data that the court overlooked. Rather, his motion sought to relitigate arguments that the district court had already carefully considered and rejected.

The orders should be affirmed in their entirety.

## ARGUMENT

## THE DISTRICT COURT CORRECTLY DENIED THE MOTIONS

### I. Applicable Law

#### 1. Standard of Review

When reviewing a district court's decision to seal a filing or maintain such a seal, this Court "examine[s] the [district] court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019).[6] Likewise, "a district court's decision as to disclosure of a presentence investigation report is reviewed for an abuse of discretion." *United States v. Molina*, 356 F.3d 269, 274 (2d Cir. 2004). "A district court abuses its discretion if it (1) bases its ruling on an erroneous view of the law, (2) makes a clearly erroneous assessment of the evidence, or (3) renders a decision that cannot be located within the range of permissible decisions." *In re The City of New York*, 607 F.3d 923, 943 (2d Cir. 2010).

---

[6] Unless otherwise noted, all case quotations accept alterations and omit internal quotation marks and citations.

2. Sealing Requests

When determining whether a document may be filed—or remain filed—under seal, this Court applies "two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013); *see also In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 56 (E.D.N.Y. 2006) ("The First Amendment demands broader disclosure than the common law.") (emphasis omitted).

Under federal common law, there is a "presumption…in favor of public access to judicial records," which include documents filed in connection with sentencing. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 602 (1978); *United States v. Greenwood*, 145 F.4th 248, 255 (2d Cir. 2025). This Court has set out a three-step inquiry to determine whether the common law presumption of access attaches to a particular record: (i) whether the documents to which access is sought constitute "judicial documents" giving rise to a presumption of access;[7] (ii) if so, the

[7] The test for whether an item is a "judicial document" is not whether it is filed with the court, *United States v. Amodeo*, 44 F.3d 141,

weight accorded the presumption; and (iii) whether there are any factors which legitimately counsel against disclosure of the judicial document and, if so, whether they outweigh the presumption of access. *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020); *see also Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006). The central focus of this inquiry is the relationship of the documents to the judicial process rather than the motivations of those seeking access. *See Logusch*, 435 F.3d at 123; *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*").

Under the First Amendment, "a qualified…right of access, understood to be stronger than its common law ancestor and counterpart,

---

145 (2d Cir. 1995) ("*Amodeo I*"), but rather whether the item is "relevant to the performance of the judicial function and useful in the judicial process." *Id.* As discussed above, this Court has held that documents submitted in connection with sentencing are "judicial documents" that trigger the common law presumption of access. *See, e.g.*, *Greenwood*, 145 F.4th at 255. On the other end of the spectrum, courts in this Circuit have rejected claims that documents turned over in discovery are "judicial documents," *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500 (E.D.N.Y. 2011), and have questioned whether scheduling submissions qualify as such, *United States v. Sattar*, 471 F. Supp. 2d 380, 389-90 (S.D.N.Y. 2006) (finding that qualified public right to access court documents either does not apply to scheduling letters or is entitled to "little weight" as the letters were "far removed from the exercise of a judicial function").

also attaches to certain judicial documents," including sentencing "memoranda and exhibits." *Greenwood*, 145 F.4th at 255. This Court uses two approaches to determine whether the First Amendment right of access has attached to particular material. *Newsday*, 730 F.3d at 164. The first approach, which is known as the "experience-and-logic approach" and applies "to both judicial proceedings *and* documents," asks "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* The second approach, which applies only to judicial documents, "asks whether the documents at issue are derived from or are a necessary corollary of the capacity to attend the relevant judicial proceedings." *Id.*

"Because the First Amendment right of access attaches to…sentencing submission[s], sealing of [these documents] must be justified by 'specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.'" *Greenwood*, 145 F.4th at 256. In determining whether any countervailing factors outweigh the presumption of access, courts have considered the following "higher values," among others:

(i) danger to individuals, *United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988); *see also United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995), and, in particular, cooperators, *Doe v. Lerner*, 688 Fed. App'x 49, 50 (2d Cir. 2017); (ii) the danger of impairing law enforcement activities, *Amodeo II*, 71 F.3d at 1050; (iii) the need to protect law enforcement techniques and procedures, *Amodeo I*, 44 F.3d at 147; (iv) the safety of witnesses and law enforcement personnel, *id.*; (v) the integrity of ongoing investigations and the need to prevent interference, flight, and other obstruction, *id.*; *Haller*, 837 F.2d at 88; and (vi) the ability of law enforcement officers to secure current and future cooperation from persons desiring confidentiality, *Amodeo II*, 71 F.3d at 1050.

3. Disclosure of PSRs

"Courts have generally held…that there is no First Amendment right of access to pre-sentence reports." *United States v. Alcantara*, 396 F.3d 189, 197 n.6 (2d Cir. 2005). Likewise, there is no common law right of access to PSRs. *See United States v. Charmer Indus., Inc.,* 711 F.2d 1164, 1175 (2d Cir.1983) ("[I]n light of the nature of the presentence report as a court document designed and treated principally as an aid to the court in sentencing, we conclude that the

report may not properly be disclosed without authorization by the court.”). In contrast to judicial records, “presentence investigation reports…are generally viewed as confidential so as not to impede the free flow of information needed to assist the sentencing judge.” *Molina*, 356 F.3d at 274.

Given the strong interest in maintaining the confidentiality of PSRs, this Court has held that PSRs “are unavailable to persons other than the court, the parties, and the probation office, except on a showing of compelling need.” *United States v. Alexander*, 860 F.2d 508, 514 (2d Cir. 1988). Specifically, a third party seeking access to a PSR bears the burden of making “a compelling demonstration that disclosure of the report is required to meet the ends of justice.” *Charmer Industries, Inc.*, 711 F.2d at 1175. “Only where a compelling, particularized need for disclosure is shown should the district court disclose the report; even then, however, the court should limit disclosure to those portions of the report which are directly relevant to the demonstrated need.” *United States v. Corbitt*, 879 F.2d 224, 239 (7th Cir. 1989).

## II. The District Court Did Not Err in Declining to Unseal Certain Filings

Valencia-Trujillo argues that the district court erred by declining to unseal certain filings concerning the *Dorado* Defendants' cooperation and sentencing. It did not. Valencia-Trujillo challenges the court's analysis on two grounds, each of which is unavailing.

### A. The Court Applied the Correct Standard

Valencia-Trujillo first argues that the district court failed to "explicitly apply the First Amendment right-of-access framework" to the sentencing-related documents that it declined to unseal. (Br.29; *see generally id.* at 22-29). That contention is belied by the record. The district court expressly identified the First Amendment right of access as the governing standard in the "Legal Standard" section of its order, citing several decisions of this Court, and correctly described the applicable framework. (SPA:4 (citing *Newsday* and *Lugosch*)). Moreover, after determining that each of the sealed filings was a judicial document to which the presumption of access applied, the court expressly weighed the presumption of access against the competing safety and privacy interests of the *Dorado* Defendants, exactly as required under the First Amendment. (SPA:14).

In any event, even assuming arguendo that the district court's original order did not sufficiently explain its application of the First Amendment framework, any purported error was resolved by the court's subsequent order denying Valencia-Trujillo's motion for reconsideration under Rule 59(e). There, the court expressly confirmed that it had analyzed each document under the appropriate First Amendment right of access standard and had concluded that the presumption of access was overcome by countervailing higher values, including the privacy and safety interests of the *Dorado* Defendants and the need to protect sensitive information concerning their cooperation. (SPA:14). Thus, the district court made clear that it had applied the correct legal standard.

Accordingly, Valencia-Trujillo's assertion that the district court failed to apply the First Amendment framework cannot be reconciled with either the original sealing order or the subsequent order denying reconsideration. And to the extent the latter order clarified the district court's application of the correct legal standard, this was well within the bounds of the district court's authority. *See United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995) (holding that a district court has

discretion to issue a supplemental finding clarifying the basis for a prior ruling).

B. The Court's Findings Were Sufficient To Justify Sealing

Valencia-Trujillo next argues that the district court failed to make the requisite findings under the First Amendment to justify the continued sealing of the filings relating to the *Dorado* Defendants' cooperation and sentencing. Specifically, Valencia-Trujillo contends that the district court failed to conduct the required document-by-document analysis (Br.30; *see generally id.* at 30-36), and that the district court failed to adequately consider narrower alternatives to complete sealing, including by failing to explain why redactions, summaries, in camera findings, or "sealed appellate review" would be insufficient (*id.* at 26; *see generally id.* at 37-44).

Valencia-Trujillo's arguments are again belied by the record. The district court's order explained in detail why the First Amendment and common-law presumptions of access were overcome and why continued sealing in full was necessary with respect to each sealed document. And the district court expressly addressed each document individually. For *Dorado* ECF No. 136, a letter seeking an adjournment

of sentencing, the court concluded that the presumption of public access was overcome by the *Dorado* Defendants' privacy interests and by the fact that the filing was a scheduling-related submission that "holds little weight against the [c]ourt's exercise of its Article III functions." (SPA:8; *see also* SPA:14). The district court engaged in a similar written analysis of *Dorado* ECF No. 147, a letter in response to a § 5K1.1 sentencing letter, holding that the presumption of access was overcome given that it contained "detailed information about a cooperating individual" and "private and sensitive details about others not involved in the trial." (SPA:8).

With respect to *Dorado* ECF Nos. 152, 195, and 199, the district court likewise sufficiently explained why the presumption of access was overcome and full sealing was justified. The district court concluded that,

> [A]lthough the "weight given to the presumption of access of a 5k1.1 letter may well lean in favor of unsealing because these document[s] play[] a role in determining litigants' substantive rights…the competing consideration of protecting the privacy interests of cooperating defendants' identities and details of that cooperation, in a particularly serious case like this one, outweighs any potential

> value of that information to those monitoring federal court.

(SPA:8-9). Further, the district court expressly found that continued sealing was warranted even though the *Dorado* Defendants' cooperation had become public because the filings "contain sensitive information not only about individuals who cooperated in the case *but others*" as well. *Id.* (emphasis added). These findings easily satisfy the First Amendment analysis required by *Lugosch* and its progeny.

Moreover, to the extent Valencia-Trujillo contends that the district court needed to analyze these three § 5K1.1 letters separately instead of together, "district courts need not provide granular justifications for each redaction or even each sealing, as such a requirement would place an unworkable burden on district courts." *Greenwood*, 145 F.4th at 257.

In short, the district court adequately explained why full sealing was warranted given the extraordinary danger posed by the criminal enterprise Valencia-Trujillo led, the substantial risks that disclosure would pose to cooperating witnesses and their families—especially as it relates to "notoriously violent international drug

traffickers," *United States v. Caicedo Velandia*, No. 10-CR-00288-01, 2019 WL 6913524, at *2 (E.D.N.Y. Dec. 19, 2019)—and the government's compelling interests in protecting both the identities of cooperators beyond the *Dorado* Defendants and the integrity of the cooperation process, *see Doe v. Lerner*, 688 F. App'x 49, 50 (2d Cir. 2017) ("[T]here is a strong interest in secrecy because both John Doe's safety as a cooperator and the [g]overnment's interest in protecting the identity of cooperators are implicated."). Requiring the district court to provide a more detailed public explanation of the cooperation described in these filings would have risked revealing the very information that sealing was intended to protect.

Accordingly, the district court committed no legal error and acted well within its discretion in sealing the five cooperation and sentencing-related filings in full.

## III. The District Court Did Not Err in Denying Disclosure of PSRs

Valencia-Trujillo next contends that the district court abused its discretion in denying his request for disclosure of the *Dorado* Defendants' PSRs, challenging the court's analysis with respect to the PSRs on two grounds—each of which is unavailing.

First, Valencia-Trujillo argues that the district court "undervalued" his "particularized need" for these documents. (*Id.* at 53; *see generally id.* at 53-60). Although he acknowledges that no public right of access attaches to PSRs, Valencia-Trujillo contends that he demonstrated a compelling need for disclosure because the PSRs *might* reveal whether the *Dorado* Defendants identified him, someone else, or no one at all as the source of more than 1,000 kilograms of cocaine seized in New York in May 2000. (*Id.* at 13, 28, 54). According to Valencia-Trujillo, this seizure was a central issue in both the *Dorado* case and his own trial. (*Id.* at 55). As such, Valencia-Trujillo argues that such information—should it exist—*could* support a potential claim under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and/or *Napue v. Illinois*, 360 U.S. 264 (1959), to the extent it implies that a government witness at his trial lied under oath about Valencia-Trujillo's involvement in that particular drug shipment. (Br.55-56.)

Valencia-Trujillo's asserted need for this information amounts to nothing more than a fishing expedition based solely on speculation that the *Dorado* Defendants' PSRs *might* contain information supporting potential post-conviction theories. Indeed, he identified no

concrete basis for believing that these PSRs—issued in an unrelated prosecution years before he was even extradited to the United States—contained exculpatory information concerning him, nor did he point to any evidence suggesting that the *Dorado* Defendants possessed unique information bearing on his criminal responsibility. Instead, Valencia-Trujillo merely hypothesized that the PSRs might contain statements that could prove useful in collateral proceedings. Such conjecture falls far short of the particularized showing necessary to overcome the longstanding presumption of confidentiality afforded to PSRs. *See Charmer Indus., Inc.*, 711 F.2d at 1174 (finding courts have discretion to deny disclosure of PSRs "in the absence of the most compelling reasons or, when sought by a defendant, absent a showing that the report is absolutely essential to effective presentation of a defense").

But even assuming Valencia-Trujillo is correct that the *Dorado* Defendants' PSRs do not implicate him in the May 2000 seizure, he has not established a compelling need for disclosure. As the district court correctly noted, the absence of Valencia-Trujillo's "involvement does not prove his actual innocence in either his role in that specific conspiracy or his overall conviction." (SPA:6). Likewise, even if the

*Dorado* Defendants implicated someone else as the source of the drugs in connection with the May 2000 seizure, that does not establish that any government witness who *did* implicate Valencia-Trujillo lied under oath.

And despite Valencia-Trujillo's arguments to the contrary (*see* Br.55-56), the government's purported emphasis on the May 2000 cocaine seizure at Valencia-Trujillo's trial does not alter the analysis. Even assuming the seizure featured prominently at Valencia-Trujillo's trial, Valencia-Trujillo ignores that the government's proof was not limited to any single cocaine shipment or theory regarding its source. Rather, the jury found that Valencia-Trujillo was responsible for 22 of the 28 predicate acts listed on the verdict form, which related to many different drug smuggling acts. *Valencia-Trujillo*, 573 F.3d at 1177.

Valencia-Trujillo's argument that the district court abused its discretion by failing to consider whether it should issue "court-prepared summaries" and/or "in camera findings" concerning the PSRs also fails. (Br.61; *see generally* 61-67). Valencia-Trujillo cites no authority for the proposition that a district court is required to undertake such measures whenever a litigant seeks access to PSRs. Although courts have held that the disclosure of PSRs should be limited "to those portions of the report

which are directly relevant to the demonstrated need," *Corbitt*, 879 F.2d at 239, it is well established that third parties do not have a right to information within the PSR, whether that is directly from the PSR itself or in the form of a summary from the court, *see, e.g.*, *Charmer Indus., Inc.*, 711 F.2d at 1175-76. Accordingly, where, as here, a movant fails to make the threshold showing necessary to justify disclosure, a district court acts well within its discretion in denying the request without engaging in further review or preparing substitute disclosures.

In short, the district court was well within its discretion in determining that "Valencia-Trujillo's arguments do not override this Circuit's 'longstanding judicial view that confidentiality should be maintained,' because 'the public availability of presentence reports would likely inhibit the flow of information to the sentencing judge.'" (SPA:7 (quoting *United States v. Pena*, 227 F.3d 23, 26 (2d Cir. 2000))).

IV. The District Court Properly Denied the Rule 59(e) Motion

Finally, Valencia-Trujillo argues that the district court abused its discretion by denying his Rule 59(e) motion "to alter judgment," which was effectively a motion for reconsideration of the

district court's order on his motion to unseal. (*See generally id.* at 45-52). This argument likewise fails.

"The standard for granting…a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Importantly, "a Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled or a vehicle for presenting theories or arguments that could have been raised previously." *Fund For Animals v. Williams*, 311 F. Supp. 2d 1, 5 (D.D.C. 2004); *see also Shrader,* 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Valencia-Trujillo identifies no controlling authority or factual matter that the district court overlooked in denying his Rule 59(e) motion. Instead, he argues only that he was unaware the sealed filings included § 5K1.1 sentencing letters. (*See* Br.47-48). But, as the district court correctly explained, the relevant question is not whether the

information was new to Valencia-Trujillo, but rather whether it was new to the court. (*See* SPA:13). Because the district court reviewed all of the filings—including the § 5K1.1 submissions—in camera, this fact, although new to Valencia-Trujillo, does not qualify as new data for purposes of Rule 59(e). Far from being unaware that the sealed filings included § 5K1.1 letters, the court relied on the cooperation reflected in those submissions as a principal reason for concluding that continued sealing was warranted.

Rather than identifying new data or a manifest error of law, Valencia-Trujillo's motion simply sought to relitigate arguments that the district court had already carefully considered and rejected. Accordingly, the district court did not err in denying Valencia-Trujillo's motion under Rule 59(e).

## CONCLUSION

For the reasons stated above, the orders should be affirmed in all respects.

Dated: Brooklyn, New York
November 19, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.,
*United States Attorney,*
*Eastern District of New York.*

By: /s/ BROOKE THEODORA
BROOKE THEODORA
Assistant U.S. Attorney

SUSAN CORKERY,
BROOKE THEODORA,
*Assistant United States Attorneys,*
(*Of Counsel*).

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4) because the brief contains 4,942 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: Brooklyn, New York
November 19, 2026

/s/ SUSAN CORKERY
SUSAN CORKERY
Assistant U.S. Attorney

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

CAPTION:

In Re: Motion to Unseal

v.

**CERTIFICATE OF SERVICE***

Docket Number(s): 26-777

I, Wendell Bennett (print name), hereby certify under penalty of perjury that on November 24, 2026 (date), I served two copies of the Government's Brief and unpublished cases. (list all documents)

by (select all applicable)**

- [ ] Hand/Personal Delivery
- [x] United States Mail
- [ ] Federal Express or other Overnight Courier
- [ ] Commercial Carrier
- [ ] E-mail (on consent)
- [ ] Facsimile

on the following parties:

Joaquin Mario Valencia-Trujillo (Register No.: 02440-748) FCI OAKDALE II FEDERAL CORRECTIONAL INSTITUTION P.O. BOX 5010 OAKDALE, LA 71463

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| | | | | |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

November 19, 2026
Today's Date

/s/
Signature